## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Clint Rasschaert, Ed Risch,
Pamela Schiller, and Verna Schuna,

      Plaintiffs

v.

Frontier Communications Corporation,
Frontier Communications of America, Inc., and
Citizens Telecommunications Company of Minnesota, LLC

      Defendants.

**CLASS ACTION COMPLAINT**
**(JURY TRIAL DEMANDED)**

Court File No. _____

Plaintiffs Clint Rasschaert ("Rasschaert"), Verna Schuna ("Schuna"), Edward Risch ("Risch"), and Pamela Schiller ("Schiller") (collectively, "Plaintiffs"), by their attorneys, Nichols Kaster, PLLP, bring this action for damages and other legal and equitable relief against Defendants Frontier Communications Corporation, Frontier Communications of America Inc., and Citizens Telecommunications Company of Minnesota, LLC (collectively operating and referred to herein as "Frontier"). Plaintiffs state the following for their claims against Defendants:

## INTRODUCTION

1.    This case is about Frontier's illegal treatment of its customers through the imposition of state and local taxes and fees which Frontier is forbidden from collecting pursuant to its contractual obligations, the Federal Communications Act, the Internet Tax Freedom Act and state law.

1

2.      Frontier provides internet service and local and long distance phone service in non-urban areas.

3.      In direct violation of its contractual obligations and the Internet Tax Freedom Act, 47 U.S.C. 151, *et.seq*, and the Communications Act, 47 U.S.C. § 201, *et seq.*, Frontier has imposed, and collected, state tax on the portion of its customers' bills which relates solely to internet service.  Frontier has also imposed a variety of other inapplicable charges and fees on its internet customers, including 911 fees (in spite of the fact that the customers are unable to call 911 from the internet) and so-called Universal Service Fees (from which internet service is exempt).

4.      In addition to improperly imposing inapplicable governmental charges and fees, i.e. fees which exist but which were improperly applied to internet service, Frontier also has imposed a so-called "HSI surcharge" on its customers.  Despite Frontier's written representation that all surcharges on customers' bills are either governmentally required or specifically authorized by government agencies, the HSI surcharge is neither. Instead, it is merely a junk fee that Frontier imposes on customers.  The fee bears no relationship to any governmentally-imposed fee or regulation, and is nothing other than an effort by Frontier to increase prices above advertised prices under the false and misleading guise of governmental authority.

5.      Frontier's conduct is illegal and wrong.  By filing this Complaint, Plaintiffs seek to stop Frontier's unlawful conduct, and to recover unlawfully and illegally collected amounts on behalf of themselves and other putative class members.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, and also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court also has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because Plaintiffs and Defendants are citizens of different states, Plaintiffs have alleged a class action, and the amount in controversy exceeds $5 million.  *See* 28 U.S.C. 1332(d).

8.      Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Minnesota and because a substantial part of the events at issue in this lawsuit took place in Minnesota.

## PARTIES

**A.      Plaintiffs**

9.      Plaintiff Clint Rasschaert ("Rasschaert") is an individual residing in Minnetrista, Minnesota.

10.      Plaintiff Verna Schuna ("Schuna") is an individual residing in Scandia, Minnesota.  Plaintiff Schuna is seventy-two years old.

11.      Plaintiff Ed Risch ("Risch") is an individual residing in Farmington, Minnesota.

12.      Plaintiff Pamela Schiller ("Schiller") is an individual residing in Chester, New York.

**B.**     **Defendants**

13.     Defendant Frontier Communications Corporation ("Frontier Corporation") is a publicly-traded corporation that maintains headquarters in Stamford, Connecticut and was incorporated in Delaware.

14.     Frontier Corporation's principal place of business is Three High Ridge Park, Stamford, CT 06905.

15.     Defendant Frontier Communications of America, Inc. ("Frontier America") is a Delaware corporation and is a competitive local exchange carrier ("CLEC") providing local telephone and other telecommunications services to rural communities in parts of New York.

16.     Frontier America provides long distance services as a reseller to customers of all of the Frontier Corporation's subsidiary incumbent local exchange carriers ("ILECs") throughout the United States.

17.     Frontier America's principal place of business is Three High Ridge Park. Stamford, CT 06905.

18.     Frontier America was known as "Citizens Telecommunications Company" prior to March 31, 2003, on which date Citizens Telecommunications Company changed its name to Frontier Communications of America, Inc.

19.     Frontier America is a wholly owned subsidiary of Frontier Corporation.

20.     Defendant Citizens Telecommunications Company of Minnesota, LLC ("Citizens-MN") is a Delaware limited liability company and is the incumbent local

exchange carrier ("ILEC") as defined by 47 U.S.C. § 251 (h), providing local telephone and other telecommunications services to rural communities in parts of Minnesota.

21.    Citizens-MN's principal place of business is Three High Ridge Park Stamford, CT 06905.

22.    Citizens-MN is a wholly owned subsidiary of Frontier Corporation.

## FACTS

**A.  Facts Pertaining to Defendants' Corporate Organization.**

23.    Frontier Corporation is a communications company providing services predominantly to rural areas and small and medium-sized towns and cities.

24.    Frontier Corporation was incorporated in the state of Delaware in 1935, originally under the name of Citizens Utilities Company, and was known as Citizens Communications Company from 2000 until July 31, 2008.

25.    Frontier Corporation, in combination with its subsidiaries, including Frontier America and Citizens-MN, offers a variety of voice, data, internet, and television services and products, some that are available a la carte, and others that are available as bundled or packaged solutions.

26.    On July 1, 2010, Frontier Corporation acquired the defined assets and liabilities of the local exchange business and related landline activities of Verizon Communications Inc. ("Verizon").

27.    As of December 31, 2010, Frontier Communications Corporation, through its subsidiaries, including Frontier America and Citizens-MN, operated as an ILEC in 27 states.

28.    As of December 31, 2010, Frontier Corporation had over 7.4 million access lines and high speed internet subscribers.

29.    Frontier Corporation is identified as the copyright holder on the website www.frontier.com.

30.    The website www.frontier.com is a primary source of new customers for Frontier Corporation and its subsidiaries, including Frontier America and Citizens-MN.

31.    Customers seeking to speak with someone in order to set up service with Frontier, or to request assistance with an existing account are directed to call toll free numbers listed on the website www.frontier.com.

32.    Frontier America and Citizens-MN do not operate their own independent customer websites, nor do they operate their own independent customer service centers or call centers. Rather, these functions are outsourced, coordinated and centralized through Frontier Corporation.

33.    Frontier Corporation has numerous job postings on its website, including job postings for positions in sales, marketing, and analysis.

34.    Frontier Corporation is responsible for all of its subsidiaries' compliance with applicable tax laws, and controls the taxation policies that those subsidiaries employ. Frontier Corporation is currently advertising on its website for a Vice President of Tax to work in its Stamford, CT office.  (Exhibit 1.)

35.    Frontier Corporation is also responsible for customer billing for its subsidiaries, including Frontier America and Citizens-MN.  Frontier Corporation is currently advertising on its website for a Billing Specialist and a Residential Sales and

Service Consultant.  The job duties in each of these positions include interacting with customers regarding their bills.  The job duties of the Residential Sales and Service Consultant include quoting prices to customers.  (Exhibit 2.)

36.     Frontier Corporation employs uniform billing software and uniform billing practices for all Frontier customers throughout the United States.  Frontier's billing practices do not vary based on the customer's location.

37.     Frontier Corporation owns the trademarked service mark "Frontier" associated with the provision of "Internet connectivity services, namely, providing telecommunication connections to the Internet, transmission of video, image, voice, audio, text and data via wired and wireless computer networks; providing multiple user access to the Internet and to Intranets; providing high speed access to a global computer information network; high speed Internet services; electronic mail and messaging services."  (Exhibit 3.)  Frontier Corporation also owns the other trademarks associated with Frontier's business and public presentation of its image.

38.     Both Frontier America and Citizens benefit from the use of these trademarked service marks.

39.     Frontier America is the company currently listed at the top of the "General Terms and Conditions of Service" on the website www.frontier.com. [1]

40.     The long distance terms and conditions also refer to Frontier America.

41.     The high speed internet terms and conditions refer only to "Frontier."

---

[1] On information and belief, the portions of the Terms and Conditions cited and relied upon herein have not changed throughout the duration of Plaintiffs' service.

42.     Plaintiffs Rasschaert and Risch's bills refer only to "Frontier."  Plaintiff Schuna's bills refer to "Frontier" and "Frontier Com of America."  Plaintiff Schiller's bill refers to "Frontier" and "FCA" which, according to Frontier's website, stands for "Frontier Communications of America."

43.     The books and records of Frontier Corporation, Frontier America and Citizens-MN all allow the companies to reasonably identify the charges imposed on customers for Internet access, even when charges are stated on a customer's bill as a single charge imposed for bundled services.

44.     All of the ILEC subsidiaries of Frontier Corporation, including Frontier America, receive customer referrals from the same website, namely www.frontier.com, and receive customers via toll free numbers listed on the above website.

45.     All of the ILEC subsidiaries of Frontier Corporation, including Frontier America, offer service pursuant to the various Terms and Conditions and Billing FAQs located on Frontier's website, namely www.frontier.com.

46.     Frontier America has appeared as a consumer creditor in Bankruptcy Court when people to whom Frontier provides internet and/or phone service have filed for Bankruptcy protection.

**B.      Facts Relating to Plaintiff Rasschaert.**

47.     Plaintiff Rasschaert subscribed to Frontier stand-alone DSL high speed internet service in February 2010.

48.     Prior to September 2011, Rasschaert's bills always included charges for state and local tax, USF Contributions, 911/TELECOM/TAP fees, federal tax, and an HSI Surcharge.

49.     After September 2011, Rasschaert's bills continued to include all of the aforementioned charges, with the exception of state and local tax.

50.     Copies of Plaintiff Rasschaert's bills are attached here to as Exhibit 4.

**C.     Facts Relating to Plaintiff Risch.**

51.     Plaintiff Risch subscribed to Frontier phone and internet service approximately two years ago.

52.     Risch's package with Frontier was a "bundle," which also included satellite television from the Dish Network.

53.     When Risch subscribed to Frontier for phone and internet service, he was told that the total price he would pay for phone and internet would be $99.99 per month.

54.     Plaintiff Risch's bills have always included charges for USF Contributions, 911/TELECOM/TAP fees, federal tax, and an HSI Surcharge.   Risch's statements separate the state tax charged for Frontier services from the state tax charged for Dish Network services.

55.     The state tax amounts calculated for Plaintiff Risch are larger than the taxes that would have been charged to Plaintiff Risch if his internet service was not included in the base upon which the taxes were calculated.

56.     Plaintiff Risch relied on Frontier's bills to inform him of the amounts he owed.

57.     Copies of Plaintiff Risch's bills are attached hereto as Exhibit 5.

**D.      Facts Relating to Plaintiff Schiller.**

58.     Plaintiff Schiller has had Frontier phone service for at least the past six years.

59.     In approximately 2005, Plaintiff Schiller subscribed to Frontier's internet service and had it combined with the Dish Network for television service.

60.     Schiller's package with Frontier was a "bundle," which also included satellite television from the Dish Network.

61.     Plaintiff Schiller renewed her bundle subscription in June 2011.  At the time she renewed, Frontier did not disclose that they would require her to pay an HSI surcharge in addition to the stated price of the service.

62.     Plaintiff Schiller's bills have always included charges for state and local tax, USF Contributions, 911 fees, federal tax, and an HSI Surcharge.   Schiller's statements separate the state tax charged for Frontier services from the state tax charged for Dish Network services.

63.     The state tax amounts calculated for Plaintiff Schiller are larger than the taxes that would have been charged to Plaintiff Schiller if her internet service was not included in the base upon which the taxes were calculated.

64.     Plaintiff Schiller relied on Frontier's bills to inform her of the amounts she owed.

65.     A copy of Plaintiff Schiller's most recent bill is attached hereto as Exhibit 6.

**E.     Facts Relating to Plaintiff Schuna.**

66.     Plaintiff Schuna has had phone service with Frontier and its predecessor companies for at least the past six years.

67.     Schuna's account is currently listed in the name of her husband, Dale Schuna.   Mr. Schuna passed away in 2010.   Plaintiff Schuna has assumed the responsibility for paying the bills associated with the account.

68.     Plaintiff Schuna lives on a fixed income.

69.     Schuna's son assisted her with adding internet service to her account in approximately July 2010.

70.     At the time Schuna's son called to set up Frontier service for her, he was quoted a price for the addition of internet service.  This price did not include the $1.00 HSI surcharge which subsequently appeared on Ms. Schuna's bills.

71.     Plaintiff Schuna's bills have always included charges for state and local tax, as well as an HSI Surcharge.

72.     Plaintiff Schuna relied on her bills to inform her of the amount she owed.

73.     Copies of Plaintiff Schuna's bills are attached hereto as Exhibit 7.

**F.     Facts Relating to All Plaintiffs.**

74.      None of the Plaintiffs hand-signed a written contract with Frontier; instead, they all signed up for service after contacting Frontier via its toll-free phone number. Plaintiff Rasschaert viewed Frontier's website prior to calling for service.

75.     Some or all of the Plaintiffs may have electronically signed terms and conditions with Frontier at the inception of service.

11

76.    At all applicable times, Frontier has maintained a version of its currently in-effect terms and conditions on its website.

77.    None of the terms and conditions in effect at any time during the duration of Plaintiffs' service have ever accurately described the HSI surcharge.

78.    All of the terms and conditions in effect during the duration of Plaintiffs' service have stated that Plaintiffs were responsible for paying "taxes, surcharges, fees and assessments imposed" in connection with their service.

79.    At all applicable times during the duration of Plaintiffs' service, Frontier's Billing FAQs have indicated that the taxes and surcharges listed on its bills are "Taxes and Surcharges [that] are mandated by state, local and/or federal requirements" or "authorized by local, state or federal agencies."  (Exhibit 8.)

**G.    Facts Relating to Improper Collection of State and Local Taxes**

80.    Internet service is not subject to tax by local and state authorities under the federal Internet Tax Freedom Act, 47 U.S.C. § 151 *et seq.*.  As the Minnesota Department of Revenue recently wrote, "Internet access charges are not taxable.  Charges to access the Internet are not taxable when they are separately stated from other taxable charges. Charges for telephone line access used only for Internet access are not taxable."  *See Sales Tax Fact 119,* Minnesota Department of Revenue *"Telecommunications, Cable Television, Direct Satellite and Related Services."*  (Exhibit 9.)

81.    New York recognizes this principle as well, stating "In January 1997, the Tax Department announced that, effective February 1, 1997, Internet access service would not be subject to State and local sales taxes or the telecommunications excise tax.

That policy was subsequently codified in statutory exemptions for Internet access from the sales and excise taxes.  For purposes of the exemption, 'Internet access service' was defined as 'the service of providing connection to the Internet" by means of accepted Internet protocols, and included software and services provided in conjunction with and incidental to the Internet access services (e.g., navigation software, e-mail, news headlines, etc.).'"  JAMIE WOODWARD, N.Y. DEP'T OF TAXATION & FIN., REPORT ON THE TAXATION OF THE TELECOMMUNICATIONS INDUSTRY IN NEW YORK STATE 30 (2009) (citing N.Y. DEP'T OF TAXATION & FIN., INTERNET ACCESS CHARGES NOT SUBJECT TO SALES TAX & TELE. EXCISE TAX, TSB-M-97(1.1)C,(1.1)S (Nov. 15, 1999); N.Y. Tax Law §§ 179, 1115(v)).  (Exhibit 10.)

## H.    Facts Related to Improper Imposition of Other Taxes and Fees on Internet-Only Customers.

82.    The "federal tax" amount imposed by Frontier on customers who only receive internet service from Frontier is also not legitimate because there is no federal tax imposed on internet service, and customers who only receive internet service from Frontier are not subject to the federal telephone excise tax.

83.    The Federal USF (Universal Service Fund) Recovery Charge also was improperly imposed by Frontier on customers who received internet service, as the FCC has explicitly ruled that revenue received for broadband internet service is not subject to contributions to the Universal Service Fund.

84.    Specifically, the FCC has ruled, "To calculate universal service contribution obligations, providers must report their revenues to USAC using the FCC

Form 499, segregating their non-telecommunications revenues (such as revenues from sales of information services) from their telecommunications revenues[.]"  *In the matter of Universal Service Contribution Methodology*, 25 F.C.C.R. 4652, 4654 (2010).

85.     The 911 surcharge also was improperly collected by Frontier from internet-only customers, as 911 surcharges may only be imposed on customers who actually receive services which are capable of originating a 911 call.  Plaintiff Rasschaert did not receive such service and therefore could not be required to pay this fee.

86.     The Telephone Access Program ("TAP") and Telecommunications Relay ("TELERELAY") surcharges also were improperly collected by Frontier from Plaintiff Rasschaert and other internet-only customers, as internet service is not subject to these surcharges.

87.     TAP and TELERELAY are both references to state mandated programs (also referred to as "TRS") that provide services to the deaf and hearing-impaired to allow them to use a telephone "relay call" service to place telephone calls to other non-communication-impaired persons.

88.     Individuals who receive only internet service are not required to pay charges for these programs because they are not capable of originating a telecommunications relay call. *See, e.g.* Minn. Stat.  § 237.52.

89.     There is no exception to the Internet Tax Freedom Act for contributions to TAP or other similar programs.

**I.     Facts Related to Improper Addition of HSI Surcharges**

90.     All Plaintiffs were subject to HSI surcharges.

91.     Defendants' "HSI Surcharge" appeared on the section of Plaintiffs' bills entitled "State and Other Charges."

92.     The HSI Surcharge is not mandated by state, local and/or federal requirements.  Nor is it authorized by any local, state or federal agency or agencies.

93.     The $1.00 HSI fee is also not disclosed in any of Frontier's advertisements showing the price for internet service, and is consistently excluded from the advertised price of Defendants' stand-alone and bundled internet access offerings.  The first time any customer learns about the fee is when the customer receives a bill from Frontier.

94.     The HSI Surcharge is a classic example of what is commonly referred to as as "partitioned pricing."  Partitioned pricing is intended to affect a consumer's purchase decision by swaying the consumer's evaluation and perception of the offer's value, making the offer seem more valuable than it is because the consumer's price sensitivity is keyed to the base price, not the total price, inclusive of surcharges.

95.     Partitioned pricing can be misleading if the information regarding the base price and surcharges are not honestly communicated.  *See* B. Burman & A. Biswas, Partitioned Pricing: Can We Always Divide and Prosper?, 38 J. Retailing 4, 423-36 (2007).

**J.     Facts Relating to Frontier's Knowing and Intentional Continuing Violation of the Law.**

96.     Prior to August 2, 2011 Plaintiff Rasschaert complained to Frontier about Frontier's assessment of state and federal tax, as well as Frontier's assessment of various

other hidden fees and surcharges on his bill.   Rasschaert's specifically mentioned the Internet Tax freedom Act in his communications with Frontier.

97.   Rasschaert's complaints were directed to Scott Bohler ("Bohler"), a Frontier employee whose title is "Manager, Government and External Affairs." On August 2, 2011, Rasschaert sent Bohler a written email cataloging his complaints.

98.   On August 2, 2011 Rasschaert also inquired of Bohler as to the "official business entity name" for Frontier in Minnesota.

99.   On August 3, 2011, Bohler responded that, "The operating company here in Hennepin County area [sic] is Citizens Telecommunications Company of Minnesota, LLC."

100.   On August 4, 2011, Bohler informed Rasschaert that Rasschaert's account had been credited in the amount of $96.48.   This credit was represented as being "for sales taxes paid" by Rasschaert.

101.   In that same email, Bohler, represented to Rasschaert that "Going forward, changes have been made so that sales tax will not apply."

102.   While Frontier removed state tax from Rasschaert's September bill, Frontier has continued to charge its other customers, including Risch, Schiller and Schuna, state and local tax on internet service.  (Exhibit 4, 5, 6 and 7.)

103.   Rasschaert's paper bill for September also indicates that Frontier continues to charge him 911, TELERELAY and TAP surcharges.  The bill also shows that Frontier is continuing to charge Rasschaert for federal tax.

104.    Rasschaert's most recent billing statement includes "current charges" of $57.88.  The page of the Rasschaert's bill which normally includes a full break down of all charges was, for September, notably different than previous bills.  It included no breakdown of Rasschaert's service charges, instead including only the total charges for service (on page 1 of 4) and a "Detail of Taxes and Other Charges" (on page 4 of 4).  Page 3 of 4 of Rasschaert's September bill was blank.  (Exhibit 4.)

105.    The "Detail of Taxes and other charges" included on page four of Rasschaert's September 2011 bill included the following amounts:

| | |
|---|---|
| Federal Tax | $0.03 |
| Federal USF Recovery Charge | $0.94 |
| 911/Telecom | $0.92 |
| HSI Surcharge | $1.00 |
| **Total Taxes and Other Charges** | **$2.89** |

106.    Presumably, the total charge amount of $57.88 on Plaintiff Rasschaert's September 2011 bill was the result of his being charged $54.99 for his standalone DSL service, as he had in previous months, as well as $2.89 for the taxes, fees and surcharges outlined above.  However, from viewing the bill alone, there is no way to tell what the basis is for the total charge.

107.    Viewing the "My Current Services" portion of Frontier's website for Mr. Rasschaert's account sheds no further light on the question of the origin or nature of

Rasschaert's current charges as the charges detailed there bear little relation to those on Rasschaert's paper bill.

108.   The on-line statement of "current services" for Plaintiff Rasschaert's account shows a completely different set of currently applicable charges and services.

109.   Specifically, Defendants' website indicates that Plaintiff Rasschaert is being charged the following amounts for the following items per month.  (Exhibit 11.)

| | |
|---|---|
| Standalone HSI Max | $26.48 |
| Access Line-Flat SAVE! | $22.01 |
| End User Access Line Surcharge | $6.50 |
| 911, TELERELAY, & TAP Surchg | $0.92 |
| **Total Monthly Charges** | **$55.91** |

110.   Regardless of whether Rasschaert's current bill is $57.88 or $55.91, he is still being charged fees and charges which do not rightfully apply to his account.

111.   To the extent the charges imposed on Rasschaert actually include any amount for an "end user access line surcharge," those charges are also in violation of the law and any applicable terms and conditions of service as no end user access line surcharge may be imposed on a customer who only receives internet service.

112.   Frontier is aware of the fraudulent nature of its conduct and made these misrepresentations knowingly.   Frontier is well aware of the distinction between information services and telecommunications services, and is aware that the latter are not subject to state/local taxation or USF contributions.  For example, in its most recent 10-K

18

filing with the SEC, Frontier Corporation noted "At the federal level, the FCC generally exercises jurisdiction over facilities and services of common carriers, such as our company, **to the extent those facilities are used to provide, originate or terminate interstate or international telecommunications services**." (emphasis added).

113.    Frontier has also participated in, and commented on, various aspects of the FCC's conduct and proposed rules, and as a sophisticated and large telecommunications company, employs full time staff and legal counsel to assist it in complying with the FCC's regulations and orders, as well as full time staff and legal counsel to assist it in complying with various tax and accounting laws.  It is inconceivable that Frontier would be unaware of the Internet Tax Freedom Act and/or unaware of the FCC's consistent policy refusing to regulate and/or impose restrictions on information services.

> **K.    Facts Related to Frontier's False Advertisements.**

114.    Frontier advertises the price of new service as exclusive only of "taxes and governmental surcharges, if any."  (Exhibit 12.)

115.    Contrary to its on-line representations, Defendants do not charge and do not intend to charge the advertised prices with the addition only of **governmentally** imposed taxes and surcharges.  Instead, Defendants also intend to impose the "HSI surcharge" in addition to these amounts.  As detailed herein, Frontier also intends to impose a variety of other taxes and fees which are inapplicable, and which Frontier knows are inapplicable.

> ## CLASS ACTION ALLEGATIONS

116.    Plaintiffs reallege and incorporate by reference the above paragraphs as if fully set forth herein.

117.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.  The Class is defined as follows: All individuals anywhere in the United States who have received internet service from Defendants and who:

1) Were charged  federal tax in connection with their receipt of internet service; and/or
2) Were charged state or local taxes in connection with their receipt of internet service; and/or
3) Were charged USF Fees in connection with any portion of their bills other than the interstate telecommunications portion; and/or
4) Were charged 911 fees, TAP, Telerelay or other similar state telephone related fees in connection with their receipt of internet service; and/or
5) Were charged an HSI Surcharge; and/or
6) Received telephone bills that failed to clearly specify the identity of the carrier on whose behalf the charges were being imposed.

118.    Plaintiffs reserve the right to further divide the Class into state or service combination subclasses, as appropriate.

119.    The individuals in the Class are so numerous that joinder of all members is impracticable.

120.    There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members, including, but not limited to:

a.   Whether Frontier's conduct constituted a breach of contract;
b.   Whether Frontier's conduct violated the Communications Act;
c.   Whether Frontier's conduct violated the Internet Tax Freedom Act;
d.   Whether Frontier's conduct constituted fraud;
e.   Whether Frontier's conduct violated Minnesota's Consumer Fraud Act;
f.   Whether Frontier's conduct violated Minnesota's Uniform Deceptive Trade Practices Act;

g. Whether Frontier's conduct violated Minnesota's False Statements in Advertising Act;

h. Whether Frontier's conduct violated New York's Deceptive Acts and Practices law;

i. Whether Frontier's conduct resulted in unjust enrichment;

j. The nature of Frontier's policies and practices as they relate to the collection of federal tax;

k. The nature of Frontier's policies and practices as they relate to the collection of USF Fees;

l. The nature of Frontier's policies and practices as they relate to the collection of state and local tax;

m. The nature of Frontier's policies and practices as they relate to the collection of 911 fees, TELERELAY and TAP fees;

n. The nature of Frontier's policies and practices as they relate to the collection of HSI fees;

o. The proper measure of damages owed to Plaintiffs and members of the Class.

121.    Plaintiffs' claims are typical of those of the Class.  Plaintiffs, like other members of the Class, were improperly subjected to taxes, fees, and surcharges that were misrepresented as being imposed by the government but in fact were not.

122.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in consumer class action litigation.

123.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Frontier.

124.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Frontier has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

125. This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other methods for the fair and efficient adjudication of this action.

126. Plaintiffs intend to send notice to all members of the Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

127. The above paragraphs are incorporated by reference as if fully set forth herein.

128. Each Plaintiff, from the inception of service, was subject to Frontier's standard Terms and Conditions of Service.  At all relevant times, those Terms and Conditions have specified that customers are responsible for paying only the base price, plus any "taxes imposed" and "surcharges, fees and assessments" imposed in connection with the service that such customers receive.

129. In direct violation of its agreements with Plaintiffs and members of the Class, Frontier required Plaintiffs and other Class members to pay state, local and federal taxes and fees, including the USF Fee, 911 Fees and TAP/TELERELAY fees,  and the HSI surcharge, that were not contemplated by Plaintiffs' contracts or included within its terms.

130.     Frontier's contractual agreements, including its "Terms and Conditions," are subject to an implied duty of good faith and fair dealing.

131.     Frontier breached this duty of good faith and fair dealing by dishonestly imposing unlawful, deceptive and/or misleading charges on customers in bad faith.

132.     Defendants' conduct had the effect of depriving Plaintiffs of receiving the benefits they were supposed to receive pursuant to their agreements with Frontier.

133.     Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

## SECOND CAUSE OF ACTION
## COMMUNICATIONS ACT, 47 U.S.C. § 201, *et. seq,*

134.     The above paragraphs are incorporated by reference as if fully set forth herein.

135.     Defendants violated the Communications Act by imposing charges which were unjust and unreasonable, and by failing to abide by applicable FCC regulations implementing the Communications Act and requiring Truth in Billing.

136.     Pursuant to 47 U.S.C. §§ 206-207, Plaintiffs have and assert a private cause of action for such violations.

137.     Plaintiffs Schiller, Schuna and Risch received telephone service from Defendants.  Their bills did not reflect the name and service provider associated with each charge for their telephone service.   Rather, the service provider was simply identified as "Frontier," Frontier Com of America" or "FCA."

138.    The name of the service provider is required to be included on customers'
phone bills by 47 C.F.R. § 64.2401(a)(1).

139.    "Frontier," "Frontier Com of America" and "FCA" are not the names of
specific legal entities.  A customer seeking to determine the identity of the corporation by
whom each charge was imposed would be unable to do so based on the language of his or
her bill, as no specific corporate entity is listed for each charge included thereon.

140.    The entity to whom Plaintiffs' bill payments are directed is described on
Plaintiffs' bills only as "Frontier" with a post office box address.  Many of Plaintiffs'
bills (but not all of them) indicate that questions about service or billing should be
directed to "Frontier's Business Office by Mail at 1398 S. Woodland Blvd., Deland, FL
37270."

141.    Frontier's bills also did not include a "brief, clear, non-misleading, plain
language description of the service or services rendered" which was "sufficiently clear in
presentation and specific enough in content so that customers can accurately assess that
the services for which they are billed correspond to those they have requested and
received, and that the costs assessed for those services conform to their understanding of
the price charged."  47 C.F.R. §64.2401 (b).

142.    Specifically, the "HSI surcharge" included on Plaintiffs' bills contained no
explanation on the bill whatsoever, was not identified as being related to any service
provided whatsoever, and was instead misleadingly explained on Frontier's Billing FAQs
as being a charge "required" or "authorized" by the government.

143.   As the FCC has recognized, "complaints received by the Commission indicate considerable consumer confusion with regard to various line item charges appearing on their monthly service bills that are assessed by carriers ostensibly to recover costs incurred as a result of specific government action." *In the Matter of Truth in Billing and Billing Format*, 14 F.C.C.R. 7492, (April 15, 1999).

144.   Frontier also violated the Communications Act by charging amounts for service which exceeded the amounts detailed in its tariffs.   47 U.S.C. § 203 forbids common carriers, such as Defendants, from imposing charges which exceed the amounts delineated in the tariffs filed with the FCC.   Defendants filed tariffs with the FCC regarding the prices they would charge in all jurisdictions for telephone service.   None of these tariffs included, or even mentioned, the inclusion or imposition of an HSI surcharge.

145.   Plaintiffs and members of the Class were damaged by Defendants' misleading and inaccurate bills because they were misled into believing that the amounts represented as due and owing on their bills were in fact due and owing and because they paid such amounts.

146.   Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.


### THIRD CAUSE OF ACTION
### INTERNET TAX FREEDOM ACT, 47 U.S.C. § 151, *et. seq.*

147.   The above paragraphs are incorporated by reference as if fully set forth herein.

148.   This claim arises from Frontier's ongoing violation of the Internet Tax Freedom Act, which explicitly exempts internet access from state or local taxes.

149.   Frontier is aware that it is not allowed to charge state tax on internet access, as evidenced by its willingness to refund Plaintiff Rasschaert's state taxes, and its willingness to eliminate state and local tax from Rasschaert's September bill.  However, in spite of this knowledge, Frontier has taken no steps to refund taxes unlawfully collected from its other customers, including Plaintiffs Risch, Schiller and Schuna.  Nor has Frontier ceased collection of such taxes from its other customers.

150.   Frontier's practice of collecting 911, TAP/TELERELAY and similar charges from individuals who did not have phone service also violated the Internet Tax Freedom Act as the Act only permits the collection of 911 fees insofar as such fees are collected from individuals "on a service used for access to 911 or E-911 services."  *See* Internet Tax Freedom Act § 1107(b), 47 U.S.C. § 151.

151.   Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

## FOURTH CAUSE OF ACTION
## FRAUD

152.   Plaintiffs and the Class incorporate the above paragraphs by reference as if fully set forth herein.

153.    Plaintiffs were subject to misrepresentations by Frontier that were made to them in Frontier's advertisements, on their bills, on their online services descriptions, and during their initial calls with Defendants' representatives.  Specifically:

    a.  Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Defendants was subject to federal tax when in fact it was not;

    b.  Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Defendants was subject to state and local tax when in fact it was not;

    c.  Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Defendants was subject to a USF recovery charge when in fact it was not because his bills contained no portion which was attributable to interstate telecommunications;

    d.  Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Defendants was subject to 911 fees, TAP, Telerelay and 911/Telecom Charges when in fact it was not because Rasschaert did not receive any service from Frontier which was "capable of originating a 911 emergency telephone call" pursuant to the requirements of Minn. Stat. § 403.11 subd. 1.

    e.  Plaintiff Rasschaert's bills from Frontier, in combination with the explanations of charges offered on Defendant's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal

requirements" or was "authorized by local, state or federal agencies." (Exhibits 4, 8.)  This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body.

    f.   Frontier misrepresented the total price of Plaintiff Rasschaert's service as well because it represented that the total monthly service price would be $54.99, when in reality, the total monthly service price was $55.99, as a result of Defendants' imposition of the HSI surcharge.   This misrepresentation was included in the on-line advertisements Plaintff Rasschaert viewed before calling customer service, all of which indicated that the total service charge for stand-alone high speed DSL internet service was $54.99.

154.   Plaintiff Schuna was subject to misrepresentations by Frontier. Specifically:

    a.   Plaintiff Schuna's bills from Frontier indicated that all of her service charges (including charges for internet access) were subject to state and local tax when in fact they were not;

    b.   Plaintiff Schuna's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies."  (Exhibits 7, 8.)   This

explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body.

c. The customer service representative who spoke to Plaintiff Schuna's son when he signed her up for internet service misrepresented the total price of Plaintiff Schuna's service as well because that person did not disclose that the HSI surcharge would be added on to the stated price of the service.

155. Plaintiff Risch was subject to misrepresentations by Frontier.  Specifically:

a. Plaintiff Risch's bills from Defendants indicated that all of his service charges (including charges for internet access) were subject to state and local tax when in fact they were not;

b. Plaintiff Risch's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was  either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies."  (Exhibits 5, 8.)  This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body.

c. The customer service representative who spoke to Plaintiff Risch when he signed up for internet service misrepresented the total price of Plaintiff Risch's service because that person represented that the total monthly service price would be less than it actually was.

156. Plaintiff Schiller was subject to misrepresentations by Frontier. Specifically:

a.  Plaintiff Schiller's bills from Frontier indicated that all of her service charges (including charges for internet service) were subject to state and local tax when in fact they were not;

b.  Plaintiff Schiller's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies."  (Exhibits 6, 8.)  This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body.

157.    The above misrepresentations were typical of the type of misrepresentations made by Frontier to other Class members.  Specifically:

a.  Members of the Class received bills from Frontier indicating that the transactions they engaged in with Defendants were subject to federal tax when in fact they were not;

b.  Members of the Class received bills from Frontier indicating that the transactions they engaged in with Frontier were subject to state and local tax when in fact they were not;

c.  Members of the Class received bills from Frontier indicating that the transactions they engaged in with Frontier were subject to a USF recovery charge when in fact the transactions were not subject to such charges because the charges were levied on portions of their bills which were not attributable to interstate telecommunications;

d.  Members of the Class received bills from Frontier indicating that the
transactions they engaged in with Frontier were subject to 911 fees, TAP,
Telerelay and 911/Telecom Charges when in fact they were not subject to
these charges because many class members did not receive any service
from Frontier which were met the requirements for the collection of such
charges.[2]

e.  Members of the Class received bills from Frontier, which in combination
with the explanations of charges offered on Frontier's website, indicated
that the "HSI Surcharge" was either "mandated by state, local and/or

---

[2] ALA. CODE §§ 11-98-5, 11-98-1 (allowing collection of fees from any person "who is provided exchange telephone service"); ARIZ. REV. STAT. ANN. §§ 42-5251, 42-5152 (applying to persons with telecommunication services that use 911 for emergency calls); CAL. REV. & TAX. CODE § 41136 (applying to intrastate telephone communication services and VoIP services); FLA. STAT. § 365.172, (collecting fees from voice communication services "which actually provide[] access to E911 services"); GA. CODE ANN. § 46-5-134 (imposing fee on telephone subscriber of any telephone service in an area served by the 911 emergency system); IDAHO CODE §§ 31-4802, 31-4804 (charging fee to users of a telephone line or equivalent "that provides access to a consolidated emergency communications system"); IOWA CODE §§ 34A.2, 34A.7 (applying the fee to exchange access lines that have "the ability to access dial tone and reach a public safety answering point"); IND. CODE ANN. §§ 36-8-16-3, 36-8-16-5 (applying fees to users of telephone access servicers); MINN. STAT. § 403.11 (applying fees to users of telecommunication services that are capable of originating a 911 emergency call and basing fee on number of telephone lines); MONT. CODE ANN. § 10-4-202(1) (expressly excluding any services that the state is prohibited from taxing under federal or state law); NEB. REV. STAT. § 86-457(1) (charging fee on "active telephone numbers"); N.M. STAT. ANN. §§ 63-9D-3C, 63-9D-5 (charging fee for telephone service "has the capability to reach the local public safety agencies by dialing 911"); N.Y. COUNTY LAW §§ 301, 303 (charging fee to telephone and VoIP services); N.C. GEN. STAT. ANN. § 62A-43(a) (applying fee to "active voice communications service connection that is capable of accessing the 911 system."); 35 PA. CONS. STAT. ANN. § 5307(a)(1) (charging fee to suppliers of "local exchange telephone service"); TENN. CODE ANN. § 7-86-103(16), § 7-86-108(a)(1)(A) (charging fee to telecommunication users who are provided 911 services); WASH. REV. CODE ANN. §§ 82.14B(4), (11), 82.14B.040(1) (limiting application of fee to services "which can directly access a public safety answering point" or "telephone service line which connects to a subscriber's main telephone").

federal requirements" or was "authorized by local, state or federal agencies." (Exhibit 8.) This explanation is not true because the HSI surcharge is neither mandated by any state local or federal requirement, nor is it specifically authorized by any agency or government body.

f. Members of the class who viewed Frontier's online advertisements or who signed up for service based on internet advertisements were subject to misrepresentations about the price of Frontier's high speed internet services because the monthly service prices that were represented and quoted to them did routinely did not include the amount of the HSI surcharge, despite the fact that the charge was routinely imposed on customers and, by any reasonable understanding of the term "price" or "monthly service charges," should have been included in the quotes and advertisements regarding Frontier's prices and charges. These misrepresentations were included in Frontier's on-line advertisements, yet none of Frontier's ads included this surcharge in the advertised price.

158.    Plaintiffs Rasschaert, Risch, Schiller and Schuna reasonably relied on Frontier's representations about the amounts they owed and about the nature of the charges that they were required to pay in paying their bills to Frontier.

159.    Frontier's misrepresentations were knowing and intentional.

160.    Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

## FIFTH CAUSE OF ACTION
## MINNESOTA CONSUMER FRAUD ACT

161.     The above paragraphs are incorporated by reference as if fully set forth herein.

162.     Minn. Stat. § 325F.69, subd. 1 provides that:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

163.     Frontier engaged in and continues to engage in fraud, misrepresentations, false promises and misleading statements as set forth in Paragraphs 154-158 herein.

164.     Defendants engaged in such misrepresentations with the intent that Plaintiffs and Class members would rely on such misrepresentations in connection with the purchase of services from Defendants, and with the intention that Plaintiffs and Class members would pay the misrepresented and misleading charges.

165.     The vindication of the Minnesota Plaintiffs' claims and the claims of the other Minnesota Class members will benefit the public at large. Frontier's advertisements were broadly and publicly disseminated on the internet. Frontier's practice of misrepresenting that various taxes, fees and surcharges are imposed by or authorized by a government agency implies that taxes are higher than they actually are, and there is a significant public interest in ensuring that companies do not cloak

their own pricing decisions in the garb of governmental authority. Finally, the interests of thousands of Minnesota consumers are implicated in this action.

166.     Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

### SIXTH CAUSE OF ACTION
### (MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT)

167.     The above paragraphs are incorporated by reference as if fully set forth herein.

168.     Minn. Stat. § 325D.44, subd. 1 provides, in relevant part, that:

Subdivision 1. A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

*        *        *

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(9) advertises goods or services with intent not to sell them as advertised;

 (13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

169.     In misrepresenting that its surcharges were governmentally imposed, and in misrepresenting the nature and amount of taxes owed, Frontier caused a likelihood of confusion or of misunderstanding and misrepresented that certain charges were approved by the government when they were not, in violation of the above provisions.

170.     Frontier also advertised goods or services with intent not to sell them at the advertised prices, and made false or misleading statements concerning its prices, as described above.

171.     Frontier's representations regarding state and local tax, USF contributions, 911/TELECOM/TAP fees, federal tax, and the so-called HSI Surcharge are likely to (and did) confuse its customers and create a misunderstanding that customers were legally required to remit payment for such charges, dissuading them from challenging the fees' legitimacy.

172.     Frontier engaged in this deceptive conduct willfully and knowingly.

173.     Minn. Stat. § 325F.71, subd. 2 imposes a supplemental civil penalty on persons whose conduct constitutes deceptive trade practice, consumer fraud or false advertising when that alleged "conduct is perpetrated against one or more senior citizens or disabled persons[.]"

174.     Plaintiff Schuna is a "senior citizen" within the meaning of the Senior Citizens and Disabled Persons statute because she is over the age of 62.

175.     Plaintiff Schuna and other senior citizen members of the Putative Class, because of their age, are more vulnerable to Defendants' deceptive and misleading conduct and suffered economic damages as a result of such conduct.

176.     Defendants engaged in this deceptive conduct willfully and knowingly.

177.     Defendants knew or should have known that their conduct was directed to one or more senior citizens.

178.     Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

## SEVENTH CAUSE OF ACTION
## (MINNESOTA FALSE STATEMENTS IN ADVERTISING ACT)

179.     The above paragraphs are incorporated by reference as if fully set forth herein.

180.     Minn. Stat. § 325F.67 makes it unlawful for any person or business to sell to the public any good or service, or "induce the public in any manner to enter into any obligation relating thereto," by making, publishing, disseminating, circulating, or placing before the public, directly or indirectly, "any advertisement of any sort . . . [that] contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading[.]"

181.     Frontier violated Minn. Stat § 325F.67 by making false and misleading representations about the terms upon which it would offer service, including but not limited to making false representations to Plaintiffs and other

Minnesota Class members about the price for the services they would receive and about the nature of the taxes and surcharges that would be imposed on them.

182.     Pursuant to Minn. Stat. Minn. Stat. § 8.31, subd. 3a, Plaintiffs and the Minnesota Class members may pursue a private cause of action based on Frontier's violation of § 325F.67.

183.     The vindication of the Minnesota Plaintiffs' claims and the claims of the other Minnesota Class members will benefit the public at large.   There is a significant public interest in discouraging false, deceptive and misleading advertising. Frontier has already acquired more than 200,000 Minnesota access service customers, and Frontier broadly and publicly disseminates its advertising on the Internet, making it likely that thousands more Minnesota residents will fall victim to Frontier's deceptive and misleading advertising.

184.     Plaintiffs and the Putative Class members have suffered damages and monetary loss as a result of Frontier's false, deceptive and misleading advertising.

185.     Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.


**EIGHTH CAUSE OF ACTION**
**DECEPTIVE ACTS AND PRACTICES**
**(N.Y. Gen. Bus. Law § 349, et seq.)**

186.     Plaintiffs and the putative class allege and incorporate by reference the allegations in the preceding paragraphs.

187.     New York General Law section 349(a) declares unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

188.     By its actions as alleged herein, Frontier is engaged in consumer-oriented acts and practices.

189.     In this capacity, Frontier has deceived and misled New York telephone and/or internet service consumers in a material way.

190.     Frontier includes a variety of unauthorized, unlawful, and misleading charges on its bills in an attempt to increase the overall cost for telephone or internet service beyond its advertised prices.

191.     Frontier's illegitimate charges include:

a)   Charging and collecting county and state tax on the internet service portion of its customers' bills, in direct violation of the Internet Tax Freedom Act;

b)   Charging a State 911 Service Fee for internet-only customers in spite of the fact that customers are unable to call 911 from the internet;

c)   Charging an "HSI Surcharge" with no explanation of what the charge is and in the absence of any contractual or regulatory authority to impose such a charge;

d)   Charging a Universal Service Fund surcharge to internet-only customers when internet service is expressly exempt from this charge; and

e) Charging a Federal Tax on internet service when no such tax exists or applies to internet service.

192.    These representations misleadingly suggest to prospective customers that these taxes, fees, surcharges, and other additional charges are legitimate, and that they are required or authorized by some government or regulatory body.

193.    The deceptive and misleading character of these charges is magnified by Frontier's website, which deceptively leads its customers to believe that all of the various fees appearing on their bills are either mandated or authorized by some governmental entity when, in fact, they are not so authorized, and some are even expressly prohibited.

194.    Frontier's advertisements for new service are similarly misleading in that they state monthly service in terms which are advertised as excluding only "taxes and governmental surcharges, if any."

195.    Frontier does not disclose the self-imposed nature of its HSI surcharges in its advertisements for stand-alone high speed internet service.  In fact, the first time that customers learn of these charges is when they receive their bill.

196.    Defendants engage in this false, deceptive, and misleading conduct with the intent to lure prospective customers into signing or maintaining service with Frontier.

197.    Frontier knew, or in the exercise of reasonable care should have reasonably known, that these statements would be misleading and deceptive to the reasonable consumer.

198.     A reasonable consumer would likely be deceived by these false, misleading, and deceptive charges, and would likely be induced into contracting with and/or remitting payment to Frontier because of these statements.

199.     Plaintiffs and the Class were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

## NINTH CAUSE OF ACTION
## (UNJUST ENRICHMENT—IN THE ALTERNATIVE)

200.     The above paragraphs are incorporated by reference as if fully set forth herein.

201.     To the extent Defendants' conduct was not circumscribed by contract, and/or to the extent any contractual provisions offered in Defendants' defense are found to be unconscionable, or otherwise unenforceable, Defendants received an impermissible and unearned financial gain by imposing unauthorized fees on their customers.

202.     The unauthorized, deceptive, and misleading HSI surcharges imposed on Plaintiffs provided Plaintiffs with no additional benefit, and were charged without Plaintiffs' consent or any contractual or governmental authority.

203.     Defendants systematically and pervasively charged other members of the Putative Class these unauthorized, deceptive and misleading charges, and as a result was further unjustly enriched.

204.     To the extent any fees or taxes purported to have been collected on behalf of the government were not actually remitted to the government, Defendants have been unjustly enriched.

205.     It would be inequitable for Defendants to retain profits, benefits, and other compensation from the practices alleged herein.   Thus, Plaintiffs and the Putative Class are entitled to restitution and other appropriate relief.

### **PRAYER FOR RELIEF**

1.     WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class, pray for judgment against Defendants as follows:

a)     Certifying this action as a class action on behalf of the putative Class;

b)     Designating Plaintiffs as Class Representatives;

c)     Appointing Nichols Kaster, PLLP as class counsel and lead counsel for the Class;

d)     Declaring that the practices complained of herein are unlawful;

e)     Awarding actual damages and restitution;

f)     Awarding treble damages; civil penalties, and statutory damages;

g)     Awarding pre-judgment and post-judgment interest as provided by law;

h)     Awarding attorneys' fees and costs, 47 U.S.C. § 206; Minn.

Stat. § 8.31, subd.3a; Minn. Stat. § 325D.45, subd. 2; Minn. Stat. § 325F.71, subd. 4; N.Y. C.P.L.R. 8101; N.Y. Bus. Law. §349(h); and

i)   Granting such equitable relief as the Court may deem just and proper, including but not limited to injunctive relief requiring Defendants to cease their unlawful practices and to cooperate with Plaintiffs in securing refunds of any taxes illegally collected from Plaintiffs and other Class members which were remitted to governmental authorities;

j)   Awarding any further and additional relief to which Plaintiffs and the putative Class may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated:  October 11, 2011

NICHOLS KASTER, PLLP

E. Michelle Drake (#0387366)
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 338-4878

ATTORNEY FOR PLAINTIFF