EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Clint Rasschaert, Ed Risch, Pamela Schiller, Verna Schuna, Eric Gedrose, and Justin Short, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| Frontier Communications Corporation, Frontier Communications of America, Inc., Frontier Communications of Minnesota, Citizens Telecommunications Company of Minnesota, LLC, and Citizens Telecommunications Company of New York, | ) ) ) ) ) ) ) | Case No. 11-cv-02963-DWF-JSM |
| Defendants. | ) ) | |

## TAX CLASS ACTION SETTLEMENT AGREEMENT

## TAX CLASS ACTION SETTLEMENT AGREEMENT

This Tax Class Action Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into as of November 8, 2012, and is between the Tax Class Plaintiffs (as defined in Section 1.18 below), on behalf of themselves and the Settlement Tax Class (as defined in Section 1.3 below), and Frontier (as defined in Section 1.8 below), by and through the undersigned for Frontier and the undersigned Tax Class Plaintiffs and Settlement Tax Class Counsel (as defined in Section 1.14 below) for the Settlement Tax Class. This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all released rights and claims, as set forth below, subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, the Tax Class Plaintiffs filed the class action captioned *Rasschaert v. Frontier Communications Corp.*, No. 11-cv-2963 DWF/JSM, in the U.S. District Court for the District of Minnesota ("the Action");

WHEREAS, the Tax Class Plaintiffs allege in the Action that Frontier charges its customers in Minnesota for state and local taxes on Internet access service in violation of the Internet Tax Freedom Act, 47 U.S.C. §151, and Minnesota law;

WHEREAS, Frontier has denied, and continues to deny, any wrongdoing, and any and all allegations that Tax Class Plaintiffs or Settlement Tax Class Members have suffered any damage whatsoever, have been harmed in any way, or are entitled to any relief as a result of any conduct on the part of Frontier as alleged in the Action;

WHEREAS, Settlement Tax Class Counsel have conducted a thorough investigation and evaluation of the facts and law relating to the matters set forth in the Action; and

WHEREAS, the Tax Class Plaintiffs and Frontier desire to avoid the further expense of litigation and to settle and voluntarily compromise any and all claims or causes of action between them that have arisen or that may arise in the future which in any way relate to Tax Class Plaintiffs' claims or the facts alleged in the Action individually and on behalf of the Settlement Tax Class;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and conditions contained herein, and with the intention of being legally bound thereby, each of the above parties hereto do covenant and agree as follows:

## 1. DEFINITIONS

The following definitions apply in this Agreement.

1.1. "Action" means *Rasschaert v. Frontier Communications Corp.*, No. 11-cv-2963 DWF/JSM (D. Minn.).

1.2. "Class Notice," which shall be in substantially the same form as Exhibits 1-2, means the Court-approved form of notice to the Settlement Class of (i) certification of the Settlement Class, (ii) preliminary approval of the Settlement Agreement, (iii) scheduling of the Final Approval Hearing, and (iv) options available to Settlement Class Members.

1.3.   "Court" means the United States District Court for the District of Minnesota, in which the Action is pending and to which presentation of this Settlement Agreement for judicial review and approval will be made.

1.4.   "Current Customers" means those Settlement Tax Class Members who are customers of Frontier at the time notice is sent to the Settlement Tax Class pursuant to the Preliminary Approval Order.

1.5.   "Effective Date" means the date when the order finally approving the Settlement becomes a "Final Order" as defined by section 1.6 below.

1.6.   "Escrow Fund" means the funds in the account established pursuant to this Agreement.

1.6.   "Final Order" means the termination of the Action with respect to the claims released in this Agreement after the occurrence of each of the following events:

1.6.1.   This Tax Class Action Settlement Agreement is approved in all respects by the Court without material modification unless expressly agreed to by Frontier and the Tax Class Plaintiffs; and

1.6.2.   An order and final judgment of dismissal with prejudice with respect to the claims covered by this Agreement is entered by the Court against the Tax Class Plaintiffs and all of the Settlement Class Members who do not opt out as provided in Rule 23 of the Federal Rules of Civil Procedure and the time for the filing of any appeals has expired or, if there are appeals, approval of the settlement and judgment has been affirmed in all respects by the appellate court of last resort to which such appeals have been taken and such affirmances are no longer subject to further appeal or review.

1.7.   "Former Customers" means those Settlement Tax Class Members who are not Current Customers (as defined by section 1.4 above).

1.8.   "Frontier" means Frontier Communications Corporation, Frontier Communications of America, Inc., Frontier Communications of Minnesota, Inc., Citizens Telecommunications of Company of Minnesota, LLC, and Citizens Telecommunications Company of New York, LLC, and all of their predecessors and successors in interest, and any of their parents, members, subsidiaries, divisions, affiliates, officers, directors, employees, trustees, principals, attorneys, agents, representatives, vendors, shareholders, partners, and any other person acting on their behalf or on behalf of those in privity with Frontier or Settlement Tax Class Members.

1.9.   "Internet Taxes" means state or local taxes charged in connection with Internet access service, which were collected by Frontier from its customers and paid to the state of Minnesota.

1.10.   "Preliminary Approval Order" means the order of the Court preliminarily approving this Tax Class Action Settlement Agreement.

1.11.   "Publication Notice", means the Court-approved form of publication notice to the Tax Settlement Class.

1.12.   "Settlement Administrator" means Kurtzman Carson Consultants, LLC ("KCC") or such other qualified and competent entity chosen by the Settling Parties and authorized by the Court to undertake the tasks set forth in this Agreement.

1.13.   "Settlement Tax Class" means the class defined in Section 7 of this Agreement, which the Settling Parties have agreed herein to seek to have certified by the Court solely for purposes of approving this Settlement Agreement.

1.14.   "Settlement Tax Class Counsel" means the law firm Nichols Kaster, PLLP.

1.15.   "Settlement Tax Class Member" means any person falling within the definition of the Settlement Tax Class defined in section 7.

1.16.   "Settling Parties" means the Tax Class Plaintiffs and Frontier.

1.17.   "Tax Claims" means all legal claims that are alleged or could have been alleged in the Complaint in the Action relating to the collection of state or local taxes by Frontier in connection with customers' receipt of Internet access service in the state of Minnesota, by Tax Class Plaintiffs and the members of the Settlement Tax Class against Frontier.

1.18.   "Tax Class Plaintiffs" means Clint Rasschaert, Ed Risch, Verna Schuna, Eric Gedrose, and Justin Short.

## TERMS AND CONDITIONS OF SETTLEMENT

2.   **Plaintiffs' Allegations.** The Tax Class Plaintiffs have brought the Action as a class action under Rule 23 of the Federal Rules of Civil Procedure. They allege, among other things, that Frontier charged certain Internet Taxes to its customers in violation of ITFA, the Minnesota Consumer Fraud Act, Minn. Stat. §§ 325F.69 *et seq.*, the Minnesota Uniform Deceptive Trade Practices Act, *id.* §§ 325D.44 *et seq.*, the Minnesota False Statements in Advertising Act, *id.* §§ 325F.67 *et seq.*,  and various Minnesota common law doctrines, and seek damages, declaratory and injunctive relief, and costs and

attorneys' fees. Frontier denies the Tax Class Plaintiffs' allegations and specifically denies any wrongdoing or liability to the Tax Class Plaintiffs and the Settlement Class. Frontier also possesses a number of defenses to the claims asserted as well as defenses to certification of a class, including arbitration agreements with individual Tax Class Plaintiffs and Settlement Tax Class Members that require arbitration of disputes on an individual basis. For purposes of settlement only, and as part of this Agreement, Frontier agrees not to assert these defenses to the Tax Class Plaintiffs' claims.

3. **Negotiations.** Settlement negotiations have taken place between Settlement Tax Class Counsel and Frontier's counsel. This Agreement, which is subject to the approval of the Court, contains all the terms of the Settlement agreed to between Frontier and the Tax Class Plaintiffs individually and on behalf of the Settlement Tax Class.

4. **Benefits of Settling the Action.** Tax Class Plaintiffs believe that the Tax Claims asserted by them in the Action have merit and that there is evidence to support the Tax Claims. Tax Class Plaintiffs, however, recognize and acknowledge the expense and length of continued litigation and legal proceedings necessary to prosecute the Tax Claims against Frontier through trial and through any appeals. Tax Class Plaintiffs also recognize and have taken into account the uncertain outcome and risks associated with litigation and class actions in general, and the Action in particular, as well as the difficulties and delays inherent in any such litigation. The Tax Class Plaintiffs are also mindful of the potential problems of proof and the possible defenses to class certification, as well as to the remedies they seek. As a result, the Tax Class Plaintiffs believe that the Settlement set forth in this Agreement provides substantial benefits to Settlement Tax

Class Members. The Tax Class Plaintiffs and Settlement Tax Class Counsel have therefore determined that the Settlement, as set forth in this Agreement, is fair, reasonable, adequate and in the best interests of the Tax Settlement Class.

5. **No Admission of Liability.** By entering into this Agreement, the Settling Parties agree that Frontier is not admitting any liability to the Tax Class Plaintiffs, the Settlement Tax Class, or any other person or entity, and Frontier expressly denies all such liability.  Frontier's sole motivation for entering into this Settlement Agreement is to dispose expeditiously of the Tax Claims asserted in the Action by settlement and compromise rather than incur the expense, uncertainty, and inconvenience of protracted litigation. No portion of this Agreement may be admitted into evidence in any action, except as required to enforce this Agreement.  In particular, no portion of this Agreement may be admitted into evidence with respect to the claims or defenses asserted in the Action other than the Tax Claims or with respect to whether those other claims may appropriately be pursued on a class-wide basis.  Nor may any statements made or actions taken by either Settling Party in furtherance of this Agreement constitute or be used as an admission of, or evidence of, the validity or invalidity of any released claims or of any wrongdoing or liability of Frontier.   In addition, neither this Agreement nor any statements made or actions taken in connection with this Agreement may be deemed to be a waiver of Frontier's right to seek to enforce any arbitration agreements in other cases, against persons who opt out of the settlement, or with respect to any other claims in this Action (including, but not limited to, claims challenging Frontier's High Speed Internet surcharge).   Similarly, neither this Agreement nor any statements made or

actions taken in connection with this Agreement may be deemed to be a waiver of Tax Class Plaintiffs' or Settlement Tax Class Members' rights to challenge any arbitration agreements in other cases involving Frontier or with respect to any other claims in this Action (including, but not limited to, claims challenging Frontier's High Speed Internet surcharge).

6. **Scope of Settlement.** The settlement of Settlement Tax Class members' claims will result in the release of, and the entry of a final judgment of dismissal with prejudice on, the Tax Claims asserted in the Action.

In order to clarify the nature and existence of the remaining claims in this Action, following preliminary approval, two new Complaints shall be filed in this matter, one of which shall consist of the Tax Claims only, and the other of which shall exclude the Tax Claims. The Complaints that shall be filed are attached hereto as Exhibits 3 and 4.

Without waiving any rights—including the right to move to dismiss those claims and/or to seek to compel arbitration of those claims on an individual basis—Frontier stipulates to the filing of those Complaints and to the severance of the Tax Claims from the remainder of the claims in the Action. Litigation shall proceed as to the non-tax claims set forth in Exhibit 4 without regard to this Settlement.

7. **Settlement Class.** To resolve the Tax Claims, the Settling Parties agree to certification of a class—for purposes of settlement and no other purpose—that consists of the following persons:

> All individuals or entities who received Internet service from Frontier in Minnesota and who were charged state or local taxes in connection with their

receipt of Internet access service at any time from October 11, 2005 until the discontinuation of the collection of the Minnesota taxes pursuant to Section 8.1 of this Settlement.

Excluded from the Settlement Tax Class are: (i) Frontier, any entity in which Frontier has a controlling interest or which has a controlling interest in Frontier, and Frontier's legal representatives, predecessors, successors, and assigns; (ii) governmental entities; and (iii) the Court presiding over any motion to approve the settlement.

If the settlement is not finalized for any reason, the certification of this Settlement Tax Class will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action.

8.      **Consideration for Settlement.**  In consideration for the release of the Tax Claims, the Settling Parties agree to the following:

8.1.    **Frontier to Cease Challenged Practice**.   Upon entry of the Preliminary Approval Order, Frontier agrees to cease collecting Internet Taxes from Minnesota customers as soon as practicable and no later than sixty (60) days after the date of the Preliminary Approval Order.  Frontier reserves the right to reinstate collecting Internet Taxes if (1) the Settlement provided herein is not approved by the Court in accordance with this Settlement Agreement and does not become subject to a Final Order; or (2) federal, Minnesota, or local laws (including statutes, regulations, and administrative decisions), or the interpretation of those authorities, specifically require, authorize, or permit Frontier to collect and remit the challenged taxes.

8.2.   **Frontier to File Refund Claims**.  On behalf of the Settlement Tax Class, Frontier will file (at its own expense) a claim or claims with the Minnesota Department of Revenue seeking refund of all Internet Taxes collected during the class period.  Frontier will seek interest with respect to the refund claims.  Frontier reserves the right to file protective refund claims at any time, even if the Court has not yet ruled on a motion for preliminary or final approval of the settlement.  Frontier intends to file refund claims as soon as practicable after entry of the Preliminary Approval Order.  In any event, if the Court grants final approval of the settlement, Frontier must file the refund claims no later than seven (7) days after the date of the order granting final approval of the settlement, and if it is necessary to file amended claims to exclude any customers who opt out of the Settlement Tax Class, Frontier must file the amended claims no later than forty-five (45) days after the court grants final approval of the settlement.[1]  In connection with the filing of these refund claims, the Tax Class Plaintiffs and the Settlement Tax Class consent to Frontier's filing of the refund claims and to the payment of refunds or the issuance of tax credits to Frontier in accordance with the terms of this Agreement.

8.3   **Procedures for Filing and Prosecuting Refund Claims.**

8.3.1.  *Refund Procedural Requirements.*  Frontier will seek a refund (or refunds) covering Internet Taxes collected from October 11, 2005 to the date on which Frontier ceases collection.  Within sixty (60) days after entry of the Preliminary Approval Order, Frontier shall provide to Settlement Tax Class Counsel a draft refund

---

[1] This time period may be extended without judicial approval if the Settling Parties believe an extension is reasonably necessary.  In any event, Frontier shall file any amended claims within 90 days after the Court grants final approval of the settlement.

claim.[2]  Within 10 days thereafter, Settlement Tax Class Counsel shall notify Frontier of any disagreements regarding the draft refund claim.   Settlement Tax Class Counsel further agree to assist Frontier in obtaining from the Minnesota Department of Revenue an agreement that any obligation that Frontier has to credit customers' accounts or return refunded taxes to customers is satisfied by the terms of the Settlement Agreement.

   8.3.2. *Prosecution of Refund Claims.*   Once Frontier has filed the refund claim, Frontier will notify Settlement Tax Class Counsel of all communications with the Minnesota Department of Revenue regarding the claims for refunds.  Frontier will respond to inquiries from the Minnesota Department of Revenue regarding the claims for refunds.  At the request of Settlement Tax Class Counsel, Frontier will consult with such counsel with respect to any such inquiry or response.  Settlement Tax Class Counsel will notify counsel for Frontier of all communications with the Minnesota Department of Revenue regarding the claims for and distribution of the refunds.

   If Frontier is notified of a denial, in whole or in part, of the refund claim, Frontier will promptly notify Settlement Tax Class Counsel, who will notify Frontier as to whether the Settlement Tax Class wants to appeal or otherwise contest the adverse ruling. Frontier shall have no obligation to advise Settlement Tax Class Counsel as to the procedural requirements for perfecting or pursuing such an appeal or challenge, but shall forward any information that the Minnesota Department of Revenue sends to Frontier to

---

[2] This time period may be extended without judicial approval if the Settling Parties believe an extension is reasonably necessary.  In any event, Frontier shall provide an initial draft of the refund claim to Settlement Tax Class Counsel within 90 days of entry of the Preliminary Approval Order.

Settlement Tax Class Counsel.  If Settlement Tax Class Counsel determines to appeal or contest an adverse ruling, Frontier shall do so, and Frontier and Settlement Tax Class Counsel shall select independent counsel to handle such appeal or contest.  Settlement Tax Class Counsel may prosecute any appeal on behalf of the Settlement Tax Class and/or appear as interveners in an appeal by Frontier.  Frontier shall have the right to review and comment on any filings or positions taken in any such appeal or challenge and the right to prohibit the assertion of any positions in such filings that are made in the name of Frontier and are inconsistent with the facts, contrary to law, or damaging to Frontier.  Any fees and expenses payable to any independent counsel shall be paid from any funds generated as a result of the appeal or challenge or, if the appeal or challenge is unsuccessful, by Settlement Tax Class Counsel.

Settlement Tax Class Counsel and Frontier may engage independent counsel to work on any appeal or contest of an adverse ruling by the Department of Revenue on a contingency fee basis, provided that any fee which purports to be payable to independent counsel out of any refund proceeds shall be subject to Court approval and that the total attorneys' fees sought in connection with this settlement, including the fees payable to both Settlement Tax Class Counsel **and** independent counsel, shall not exceed one-third of the value of the settlement as provided below in Section 12.

If the settling parties disagree on any aspect on the prosecution of an appeal or challenge, they will submit the dispute to the Court under its continuing jurisdiction.  Notwithstanding the foregoing, Frontier shall retain the right but not the obligation to

appeal, otherwise contest, or further prosecute an appeal of any adverse ruling or decision in the event that Settlement Tax Class Counsel declines to do so for any reason.

8.4. **Frontier's Assignment of Refunds.**  To the extent that the Minnesota Department of Revenue grants Frontier a refund in connection with the refund claims filed in accordance with this Settlement Agreement, Frontier shall assign all of its rights, title, and interest in the refund related to the Settlement Tax Class Members, subject to any claims or conditions that may be imposed on such refund—including conditions on the distribution of that refund—by the Minnesota Department of Revenue.  In accordance with this assignment, Frontier shall seek to have the refunded monies paid directly to the Settlement Administrator (who will hold refunded amounts on behalf of the Settlement Tax Class) by the Minnesota Department of Revenue.  All monies that are nonetheless received by Frontier relating to these refund claims that relate to Settlement Tax Class Members shall be transferred by Frontier to the Settlement Administrator within seven (7) business days of receipt.

8.5. **Settlement Administrator and Escrow Fund**

8.5.1. The Settling Parties jointly select Kurtzman Carson Consultants, LLC ("KCC") as Settlement Administrator, who shall, among other responsibilities, open an account into which monies that are the proceeds of the refund actions shall be deposited.

8.5.2. The amounts deposited into the Settlement Administrator account, plus the interest thereon and any other income realized from those funds, shall constitute the Escrow Fund.

8.5.3. After receiving written notice from Frontier and Settlement Tax Class Counsel, the Settlement Administrator shall disburse amounts from the Escrow Fund pursuant to court order for: (i) the Settlement Administrator's own costs in administering the Escrow Fund (up to a maximum amount specified in the escrow agreement); (ii) payment of other reasonable costs of settlement administration; (iii) payment of any other cost or expense directed by the court; and (iv) payment of taxes (including any estimated taxes, interest or penalties) and tax-related fees and expenses. In no event shall the Settlement Administrator disburse funds from the Escrow Fund to itself, Frontier, Settlement Tax Class Counsel, or Settlement Tax Class Members except as directed by the court, including in accordance with Sections 8.5.4 and 8.5.5 below.

8.5.4. After receiving written notice from Settlement Tax Class Counsel of the Court's approval of a fee and expense award, the Settlement Administrator shall disburse amounts for the payment of attorneys' fees and expenses from the Escrow Fund in accordance with the Court's order.

8.5.5. After receiving notice from counsel for Frontier and Settlement Tax Class Counsel and as directed by the Court, the Settlement Administrator shall transfer all or part of Escrow Funds to Frontier for distribution in the form of credits to authorized recipients who are Settlement Tax Class Members who are customers of Frontier at the time of distribution, and shall issue checks to authorized recipients who are Settlement Tax Class Members who are not customers of Frontier at the time of distribution, in accordance with a plan for distribution approved by the Court.

8.6.    **Distribution of Net Settlement Fund.**

8.6.1. After deductions for approved reasonable expenses of the Settlement Administrator and for the approved attorneys' fees and expenses of Settlement Tax Class Counsel, the remaining funds shall be distributed to the members of the Settlement Tax Class.  In order to minimize the costs of settlement administration, no payments shall be made until such time as Settlement Tax Class Counsel concludes either that: (i) the refund payments to date represent the maximum realistically attainable recovery for Settlement Tax Class members; or (ii) any additional refund payments will be so delayed as to warrant an interim distribution.  Upon making either determination, Settlement Tax Class Counsel shall propose to the court that the Settlement Administrator make a distribution to the Settlement Tax Class Members, and upon entry of a final order approving that distribution (the "Distribution Order"), the Settlement Administrator shall make payments as directed in the Distribution Order.

8.6.2. Each Settlement Tax Class member shall receive a proportionate share of the Net Settlement fund.  The amount of each Settlement Tax Class member's proportionate share shall be estimated by Frontier based on Frontier's account records regarding members of the Settlement Tax Class from October 11, 2005 through the discontinuation of the collection of the Minnesota taxes pursuant to Section 8.1 of this Agreement.  All payments to Settlement Tax Class Members who are customers of Frontier at the time of distribution shall be in the form of a credit to their account that Frontier will make after the court issues a Distribution Order ordering the transfer of a portion of the Escrow Fund for distribution as credits.  All payments made to

Settlement Tax Class Members who are not customers at the time of distribution shall be made by check and mailed by the Settlement Administrator. The Settlement Administrator shall mail checks to the addresses contained in Frontier's records for the accounts associated with members of the Settlement Tax Class, as updated by the national change of address resources offered by the United States Postal Service, and as updated by any Settlement Class Member responding to the Class Notice disbursed as defined below in Section 9.

8.6.3. Each check issued to a Settlement Tax Class Member shall bear a legend that it will be void if not presented for payment within 180 days of issuance. In the event a Settlement Tax Class Member does not timely present either the initial check or a replacement check (as discussed in Section 8.6.4. below), any check(s) issued to that Settlement Tax Class Member shall be deemed a "Stale Item," and that Settlement Tax Class Member's claim shall be deemed extinguished. The Settlement Administrator shall not issue any Settlement Tax Class Member any replacement for a Stale Item.

8.6.4. In the event that a Settlement Tax Class Member reports to the Settlement Administrator that a settlement check has been lost, or that he or she is otherwise prevented from cashing said check within 180 days of issuance, the Settlement Administrator shall void the disbursed check and timely send the Settlement Tax Class Member a replacement check. The replacement check shall bear a legend that it will be void if not presented for payment within 180 days of issuance of the original check.

8.6.5.  In the event a check issued to a Settlement Tax Class Member is returned by the United States Postal Service to the Settlement Administrator as undeliverable as addressed but with a forwarding address, the Settlement Administrator shall promptly resend that check to the Settlement Tax Class Member at the address provided to it by the United States Postal Service on the returned envelope.  In the event a check is returned to the Settlement Administrator with no forwarding address (or if the forwarding address provided by the United States Postal Service has expired) (collectively, an "Undeliverable Item"), the Settlement Administrator shall perform one skip trace and re-mail the notice if the skip trace reveals a new address.  If the skip trace is unsuccessful, or if the mail is returned again after mailed to the address discovered in the skip trace, then the Settlement Administrator need not take any further action with respect thereto other than to note on its records that the check as addressed is undeliverable.

8.6.6.  The Settlement Administrator shall from time to time cause to be transferred from the Escrow Account the cash that is equal to the face amount of the Stale Items and Undeliverable Items to a subaccount created for that purpose (the "Escheat Account").  The Escheat Account shall be under the control of the Settlement Administrator, but the Settlement Administrator shall make no transfers from the Escheat Account without the prior approval of the Court.

8.6.7. In the event the Settlement Administrator receives any monies on account of taxes paid by an individual who elects to opt-out of the Settlement

Tax Class (an "Opt-Out Member"), the Settlement Administrator shall return those monies to the Minnesota Department of Revenue as soon as practicable.

               8.6.8.  Upon the Settlement Administrator determining that no further payments can be made to Settlement Tax Class Members and that all of the costs of administration and approved fees have been paid, the Settlement Administrator shall inform the Settling Parties of the amount of money left in the Escheat Account.  The parties shall then seek guidance from the Court as to whether (1) there should be a second distribution of funds, or (2) the remaining funds should be returned to the Minnesota Department of Revenue without a second distribution.  In the event there is a second distribution, any funds remaining after the second distribution shall be returned to the Minnesota Department of Revenue.

        8.7.  **Release of Claims.**

    Subject to and effective upon entry of a Final Order, the Tax Class Plaintiffs on their own behalf and on behalf of all Settlement Tax Class Members who do not opt out of the Settlement Tax Class, will release Frontier from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses,  costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that are alleged or could have been alleged in the Tax Complaint (attached as Exhibit 3) relating to Frontier's collection of state or local taxes in connection with customers' receipt of Internet access service in the state of Minnesota, by Tax Class Plaintiffs and the Settlement Tax Class Members against Frontier.

"Unknown" claims as released herein means any and all claims that any Tax Class Plaintiff or Settlement Tax Class Member does not know to exist against Frontier which, if known, might have affected his or her decision to enter into or to be bound by the terms of this Settlement.  The Tax Class Plaintiffs and the Settlement Tax Class Members acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all claims, known or unknown, derivative or direct, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, in law or equity, including, without limitation, claims that are alleged or could have been alleged in the operative Complaint, relating to Frontier's collection of state or local taxes in connection with customers' receipt of Internet access service in the state of Minnesota, by Tax Class Plaintiffs and the Settlement Tax Class Members against Frontier that they now have, ever had, or may have had as of the date the court grants final approval of the settlement.  The foregoing waiver includes, without limitation, an express waiver to the fullest extent permitted by law, by the Tax Class Plaintiffs and the Settlement Tax Class Members of any and all rights under California Civil Code § 1542 or any similar law of any other state or of the United States, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE**

**MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Settling Parties acknowledge, and the Settlement Tax Class Members shall be deemed by operation of the Final Order to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

9.   **Class Notice.**

9.1.   **Individual Statement or Mail Notice**.   Frontier or the Settlement Administrator will provide notice to Settlement Tax Class Members at Frontier's expense.  Such notice shall be in the form of Exhibit 1.

Notice shall be provided to Settlement Tax Class Members who are Current Customers at the address in Frontier's records.   Notice shall be provided to Settlement Tax Class Members who are Former Customers at the addresses in Frontier's records, as updated by the national change of address resources offered by the United States Postal Service.  In the event a direct mail notice is returned by the United States Postal Service as undeliverable as addressed but with a forwarding address, that notice shall be promptly resent to the Settlement Tax Class member at the address provided by the United States Postal Service on the returned envelope.  If the direct mail notice is returned with no forwarding address (or if the forwarding address provided by the United States Postal Service has expired) (collectively, an "Undeliverable Item"), further re-mailing of the notice shall not be required.

9.2.    **Publication Notice**. In addition to mailing, it is agreed, subject to approval of the Court, that Frontier will provide for the publication of a Publication Notice twice in the Star Tribune with content similar to the content of the short-form notice (attached as Exhibit 1).  Settlement Tax Class Counsel shall also create a Frontier Settlement Website.

9.3.    **Content of Notice**.  The content of the notice to Settlement Tax Class Members is attached hereto as Exhibit 1.  Subject to the Court's approval, Frontier will send Current Customers a copy of the notice in the form of a bill insert included in Frontier's monthly bill, and Frontier or the Settlement Administrator will send Former Customers notice in the form of a postcard sent by first-class mail or such other method as the Court deems appropriate.

9.4.    **Settlement Tax Class Website and 1-800 Number.**  Following entry of an order granting preliminary approval to the settlement, Settlement Tax Class Counsel shall establish a website with the particulars of the Settlement.  An automated 1-800 number shall also be created for Settlement Tax Class Members to obtain further, pre-recorded information on the Settlement.  Frontier and Settlement Tax Class Counsel shall jointly author the content for the website, which will contain information in the long-form notice attached as Exhibit 2, and the recording for the 1-800 number, which will provide class members with a means of obtaining a copy of the long-form notice attached as Exhibit 2.

9.5.    **CAFA Notices**.  Frontier shall comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), and provide notice in

accordance with the provisions of that statute. Frontier shall provide the required notice of the proposed settlement within no later than ten (10) days after the filing of the motion for preliminary approval of this Agreement. In no event shall the hearing date for final approval of this Settlement be held or any final approval order is issued, earlier than ninety (90) days after the date of the Preliminary Approval Order.

9.6.    **Court Authority Over Notice to Settlement Tax Class Members.** The Settling Parties agree that this Agreement will be publicly filed in the Court record in connection with the motion for preliminary approval.  The Settling Parties agree to keep the fact of settlement confidential until such time as the motion for preliminary approval is filed.  After that motion has been filed, Settlement Tax Class Counsel may change their website regarding this case to reflect the filing of the motion for preliminary approval. The website may also contain a link to a copy of this Agreement.  However, in recognition of the fact that the formal notice process in this case must be approved by the Court, and of the fact that the Agreement provides for notice by publication in the Star Tribune, Settlement Tax Class Counsel agrees that the precise content of the changes to their website shall be subject to Frontier's approval, which consent shall not be unreasonably withheld.  All other statements by Settlement Tax Class Counsel to third parties, with the exception of any communications with the Settlement Administrator or the counsel that Tax Class Plaintiffs may intend to retain in connection with any appeal in this matter, shall be limited to statements that "the Minnesota tax portion of case has [preliminarily] settled," that "a copy of the settlement agreement is available from the Court," and to the provision of the dates of upcoming court dates or deadlines.

Notwithstanding the foregoing, the Settling Parties may make public statements (1) to the Court, as necessary to obtain preliminary or final approval of the Settlement, or (2) as required by law. Settlement Tax Class Counsel may also make statements to government agencies or courts concerning the refund claims contemplated by the Settlement.

This provision shall not prohibit Settlement Tax Class Counsel from communicating with any member of the Settlement Tax Class or the Minnesota Department of Revenue regarding the Action or the Settlement; provided, however, that Settlement Tax Class Counsel, the Tax Class Plaintiffs, and Settlement Tax Class Members must comply with any stipulations concerning confidentiality or protective orders in communicating with such persons and will not disclose information that is not a part of the public record.

Settlement Tax Class Counsel and counsel for Frontier shall refrain from disparaging one another or taking any action designed or reasonably foreseeable to cause harm to the public perception of Frontier or Settlement Tax Class Counsel regarding any issue related in any way to the Minnesota tax claims or the Settlement, except that Frontier and its counsel retain the right to object to any request for an award of attorneys' fees, expenses, or incentive awards.  Nothing herein is intended to limit or waive the confidentiality of communications under the attorney-client privilege between Settlement Tax Class Counsel and their current clients and/or Settlement Tax Class Members, nor is anything herein intended to limit the ability of Settlement Tax Class Counsel to make truthful representations to judicial authorities regarding either its appointment as class counsel or the settlement of this matter.

10.     **Opt-Out Right and Frontier's Right to Terminate Settlement.**
Settlement Tax Class Counsel shall be responsible for receiving requests for exclusion
that are submitted in accordance with Class Notice, either directly or through the
Settlement Administrator.  Settlement Tax Class Counsel also shall be responsible for
promptly giving notice of the receipt of any such requests for exclusion by providing
complete copies thereof to counsel for Frontier.  If the number of Settlement Tax Class
Members who opt out exceeds five percent (5%) of the putative Settlement Tax Class,
then Frontier, in its sole discretion, will have the right to terminate the Settlement.
Frontier shall have twenty (20) days after the deadline for Settlement Tax Class Members
to opt out within which to exercise its right to terminate, by filing written notice of the
same with the Court.  In the event that the Settlement is terminated pursuant to this
section, the Settling Parties will be returned to the status quo ante as if no settlement had
been negotiated or entered into.

11.     **Administration**.   The settlement will be administered by a Settlement
Administrator as chosen by the Settling Parties and approved by the Court.

12.     **Attorneys' Fees and Incentive Payments.**  Settlement Tax Class Counsel
will petition the Court for an award of attorneys' fees and costs not to exceed one-third of
the value of the settlement to the Settlement Tax Class.  Settlement Tax Class Counsel
will also request approval of incentive awards for the Tax Class Plaintiffs, in an amount
not to exceed $2,500 for Plaintiff Rasschaert and $1,500 for all other Tax Class Plaintiffs.
The parties agree that attorneys' fees, costs and any incentive payments will be paid from

the proceeds in the Escrow Fund, subject to approval of the Court.  Frontier retains the

right to object to any request for attorneys' fees and/or incentive awards.

Settlement Tax Class Counsel retains the right to appeal any denial of attorneys'

fees, costs, or incentive awards.   However, any such appeal shall not delay the

administration of this settlement and shall not prevent payment of claims to members of

the Settlement Tax Class.  If the Court (or any court of appeals) awards Settlement Tax

Class Counsel fewer fees or costs than applied for, or if the Court (or any court of

appeals) awards Tax Class Plaintiffs less than the amount of the incentive awards applied

for, the denied fees, costs, or incentive awards shall revert to the Escheat Account

outlined in Section 8.6.6. *supra* and shall be distributed as outlined in Section 8.6.8.

13.    **Confidentiality and Return of Documents**.  The Settling Parties agree

that all information or documents in any form obtained from or provided by Frontier in

connection with the parties' settlement discussions and/or this Term Sheet ("Confidential

Documents") are confidential, with the exception of the following:

1.  customer bills in which the customer is a Tax Class Plaintiff or a person
    represented by Nichols Kaster, PLLP;

2.  customer bills on which the customer's identifying information has been
    redacted; or

3.  publicly available information, such as Frontier's terms of service.

Confidential Documents shall not be disclosed to third parties, and may be used

only for purposes of effectuating this Settlement Agreement and no other purpose.

Following execution of this Agreement, Settlement Tax Class Counsel shall retain one

copy of the Confidential Documents for seven years after Frontier's performance of all obligations under the Agreement, to be used, if necessary, to defend against any malpractice or similar action. Settlement Tax Class Counsel shall not use these Confidential Documents for any other purposes, and shall destroy them seven years after Frontier's performance of all obligations under this Agreement.   Prior to using Confidential Documents to defend against any malpractice or similar action, Settlement Tax Class Counsel shall provide notice to Frontier in writing directed to:

>Office of the General Counsel
>Frontier Communications Corp.
>2378 Wilshire Blvd.
>Mound, MN 55364

Settlement Tax Class Counsel shall destroy all additional copies of Confidential Documents within thirty-five (35) days after Frontier's performance of all obligations under the Settlement.

14.   **Confirmatory Discovery.**   Frontier will provide Settlement Tax Class Counsel with a sworn declaration from a person with knowledge confirming the manner in which Frontier assessed its customers state and local taxes in connection with Internet access service during the applicable period.   The parties acknowledge Settlement Class Counsel has relied upon the contents of that declaration in reaching this settlement.

15.   **Court Submission.** Settlement Class Counsel and Frontier's counsel will submit this Agreement and the exhibits hereto, along with such other supporting papers as may be appropriate, to the Court for preliminary approval of this Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure. If the Court declines to grant

preliminary approval of this Settlement Agreement and to order notice of hearing with respect to the proposed Settlement Class, or if the Court declines to grant final approval to the foregoing after such notice and hearing, this Agreement will terminate as soon as the Court enters an order unconditionally and finally adjudicating that this Settlement Agreement will not be approved.

16.     **Final Judgment**. The Settling Parties agree that the settlement provided herein is expressly conditioned upon dismissal with prejudice of the Tax Claims in the Action and, upon final distribution of the Settlement Fund, entry of a Final Order dismissing the Tax Claims with prejudice.

17.     **Frontier's Right to Set Aside Settlement.**  Frontier shall have the right to set aside or rescind this Agreement, in the good faith exercise of its discretion, if any of the following events occur:

17.1. Opt-Outs. Opt-outs from Settlement Tax Class Members represent more than five percent (5%) of the Settlement Tax Class, as described in section 10 above;

17.2. Objection(s) to Settlement Sustained. If any objections to the proposed settlement are sustained;

17.3. Modification(s) by the Court. If there are any material modifications to this Agreement, including exhibits, by the Court, by any other court, or by any tribunal, agency, entity, or person;

17.4.  Opt-Outs of a Class.  The Settling Parties agree that pursuant to settled law and under this Agreement, no Settlement Class Member possesses the right to

opt out both himself or herself and an entire putative class of Settlement Class Members from the Settlement. If any court nevertheless affords this right to any Settlement Class Member, Frontier shall have the right to set aside or rescind this Agreement.

In the event Frontier exercises its discretion to set aside the Settlement, this Agreement and all negotiations, proceedings, documents prepared, and statements made in connection herewith shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission or confession by the Settling Parties of any fact, matter, or proposition of law, and shall not be used in any manner for any purpose, and all parties to the Actions shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.  In such event, the parties to the Actions shall move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement.

18.   **Integration Clause.** This Settlement Agreement contains a full, complete, and integrated statement of each and every term and provision agreed to by and among the Settling Parties and supersedes any prior writings or agreements (written or oral) between or among the Settling Parties, which prior agreements may no longer be relied upon for any purpose. This Settlement Agreement shall not be orally modified in any respect and can be modified only by the written agreement of the Settling Parties supported by acknowledged written consideration. In the event a dispute arises between the Settling Parties over the meaning or intent of this Agreement, the Settling Parties agree that prior drafts, notes, memoranda, discussions or any other oral communications or documents regarding the negotiations, meaning or intent of this Agreement shall not be

offered or admitted into evidence. Tax Class Plaintiffs and Settlement Tax Class Counsel acknowledge that, in entering into this Settlement Agreement, they have not relied upon any representations, statements, actions, or inaction by Frontier or its counsel that are not expressly set forth herein.  Frontier acknowledges that, in entering into this Settlement Agreement, it has not relied upon any representations, statements, actions, or inaction by Tax Class Plaintiffs and/or Settlement Tax Class Counsel that are not expressly set forth herein.

19. **Headings.** Headings contained in this Agreement are for convenience of reference only and are not intended to alter or vary the construction and meaning of this Agreement.

20. **Governing Law.** To the extent not governed by the Federal Rules of Civil Procedure, the contractual terms of this Agreement shall be interpreted and enforced in accordance with the substantive law of the State of Minnesota, except to the extent preempted or superseded by federal law.

21. **Mutual Interpretation.** The Settling Parties agree and stipulate that this Agreement was negotiated on an "arms-length" basis between parties of equal bargaining power. Also, the Agreement has been drafted jointly by Settlement Tax Class Counsel and counsel for Frontier. Accordingly, this Agreement shall be neutral and no ambiguity shall be construed in favor of or against any of the Settling Parties.

22. **Counterpart Execution.** This Agreement may be executed in any number of counterparts and will be binding when it has been executed and delivered by the last signatory hereto. A facsimile signature shall be deemed to constitute an original signature

for purposes of this Agreement. After execution of counterparts by each designated signatory, Frontier agrees to furnish each party with a composite conformed copy of this Agreement reflecting all counterpart signatures.

23. **Binding Upon Successors.** This Agreement shall be binding upon and inure to the benefit of the Settling Parties hereof and their representatives, heirs, successors, and assigns.

24. **Severability.** In the event any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions if the Settling Parties and their counsel mutually elect by written stipulation to be filed with the Court within twenty (20) days to proceed as if such invalid, illegal, or unenforceable provisions had never been included in this Agreement.

25. **Continuing Jurisdiction.** Without affecting the finality of the Final Judgment, the Court shall retain continuing jurisdiction over the Action and the Settling Parties, including all members of the Settlement Tax Class, the administration and enforcement of the Settlement, and the benefits to the Settlement Tax Class hereunder, including for such purposes as supervising the implementation, enforcement, construction, and interpretation of this Settlement Agreement, the Preliminary Approval Order, and the Final Judgment, and hearing and determining an application by Settlement Tax Class Counsel for an award of attorneys' fees, expenses, and incentive awards for the Tax Class Plaintiffs. Any dispute or controversies arising with respect to the interpretation,

enforcement, or implementation of the Settlement Agreement shall be presented by motion to the Court, exclusively.

30. **Warranty of Counsel.** Settlement Tax Class Counsel unconditionally represent and warrant that they are fully authorized to execute and deliver this Agreement on behalf of the Tax Class Plaintiffs.


Dated: November 8, 2012                 Respectfully submitted,

                                        By _____
                                        E. Michelle Drake (#0387366)
                                        Rebekah L. Bailey (#0389599)
                                        Anna Prakash (#0351365)
                                        4600 IDS Center
                                        80 South 8th Street
                                        Minneapolis, MN 55402
                                        Telephone (612) 256-3200
                                        Fax (612) 338-4878

                                        *Settlement Tax Class Counsel*

Dated: November 8, 2012                 Respectfully submitted,

                                        By _____
                                        Archis A. Parasharami
                                        Kevin Ranlett
                                        MAYER BROWN LLP
                                        1999 K Street, N.W.
                                        Washington, DC  20006-1101
                                        (202) 263-3000
                                        (202) 263-3300 – Facsimile

                                        *Attorneys for Defendants Frontier*
                                        *Communications Corporation, Frontier*
                                        *Communications of America, Inc.,*
                                        *Frontier Communications of Minnesota,*
                                        *Citizens Telecommunications Company*
                                        *of Minnesota, LLC, and Citizens*

enforcement, or implementation of the Settlement Agreement shall be presented by motion to the Court, exclusively.

30. **Warranty of Counsel.** Settlement Tax Class Counsel unconditionally represent and warrant that they are fully authorized to execute and deliver this Agreement on behalf of the Tax Class Plaintiffs.

Dated: November 8, 2012

Respectfully submitted,

By _E. Michelle Drake_

E. Michelle Drake (#0387366)
Rebekah L. Bailey (#0389599)
Anna Prakash (#0351365)
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone (612) 256-3200
Fax (612) 338-4878

*Settlement Tax Class Counsel*

Dated: November 8, 2012

Respectfully submitted,

By _____

Archis A. Parasharami
Kevin Ranlett
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
(202) 263-3300 – Facsimile

*Attorneys for Defendants Frontier Communications Corporation, Frontier Communications of America, Inc., Frontier Communications of Minnesota, Citizens Telecommunications Company of Minnesota, LLC, and Citizens*

Dated: November 8 , 2012

Respectfully submitted,

By _____

Name: ANDREW CRAIN

Title: SVP AND GENERAL COUNSEL

Frontier Communications Corp.


Dated: November __, 2012

Respectfully submitted,

By _____

Clint Rasschaert

Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By _____

Ed Risch

Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By _____

Verna Schuna

Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By _____

Eric Gedrose

Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By _____

Justin Short

Tax Class Plaintiff

Dated: November __, 2012                    Respectfully submitted,

                                            By _____
                                            Name: _____
                                            Title:_____
                                            Frontier Communications Corp.


Dated: November 8, 2012                     Respectfully submitted,

                                            By _____
                                            Clint Rasschaert
                                            Tax Class Plaintiff


Dated: November __, 2012                     Respectfully submitted,

                                            By _____
                                            Ed Risch
                                            Tax Class Plaintiff


Dated: November __, 2012                     Respectfully submitted,

                                            By _____
                                            Verna Schuna
                                            Tax Class Plaintiff


Dated: November __, 2012                     Respectfully submitted,

                                            By _____
                                            Eric Gedrose
                                            Tax Class Plaintiff


Dated: November __, 2012                     Respectfully submitted,

                                            By _____
                                            Justin Short
                                            Tax Class Plaintiff

Dated: November __, 2012                    Respectfully submitted,

By _____
Name: _____
Title: _____
Frontier Communications Corp.


Dated: November __, 2012                    Respectfully submitted,

By _____
Clint Rasschaert
Tax Class Plaintiff


Dated: November 8, 2012                     Respectfully submitted,

By _____
Ed Risch
Tax Class Plaintiff


Dated: November __, 2012                    Respectfully submitted,

By _____
Verna Schuna
Tax Class Plaintiff


Dated: November __, 2012                    Respectfully submitted,

By _____
Eric Gedrose
Tax Class Plaintiff


Dated: November __, 2012                    Respectfully submitted,

By _____
Justin Short
Tax Class Plaintiff

Dated: November __, 2012                    Respectfully submitted,

                                            By _____
                                            Name: _____
                                            Title:_____
                                            Frontier Communications Corp.


Dated: November __, 2012                    Respectfully submitted,

                                            By _____
                                            Clint Rasschaert
                                            Tax Class Plaintiff


Dated: November __, 2012                    Respectfully submitted,

                                            By _____
                                            Ed Risch
                                            Tax Class Plaintiff


Dated: November 9, 2012                     Respectfully submitted,

                                            By *Verna Schuna*
                                            Verna Schuna
                                            Tax Class Plaintiff


Dated: November __, 2012                    Respectfully submitted,

                                            By _____
                                            Eric Gedrose
                                            Tax Class Plaintiff


Dated: November __, 2012                    Respectfully submitted,

                                            By _____
                                            Justin Short
                                            Tax Class Plaintiff

Dated: November \_\_, 2012

Respectfully submitted,

By_____
Name: _____
Title:_____
Frontier Communications Corp.

Dated: November \_\_, 2012

Respectfully submitted,

By_____
Clint Rasschaert
Tax Class Plaintiff

Dated: November \_\_, 2012

Respectfully submitted,

By_____
Ed Risch
Tax Class Plaintiff

Dated: November \_\_, 2012

Respectfully submitted,

By_____
Verna Schuna
Tax Class Plaintiff

Dated: November 13, 2012

Respectfully submitted,

By_____
Eric Gedrose
Tax Class Plaintiff

Dated: November \_\_, 2012

Respectfully submitted,

By_____
Justin Short
Tax Class Plaintiff

-33-

Dated: November __, 2012

Respectfully submitted,

By_____
Name: _____
Title:_____
Frontier Communications Corp.


Dated: November __, 2012

Respectfully submitted,

By_____
Clint Rasschaert
Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By_____
Ed Risch
Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By_____
Verna Schuna
Tax Class Plaintiff


Dated: November __, 2012

Respectfully submitted,

By_____
Eric Gedrose
Tax Class Plaintiff


Dated: November _8_, 2012

Respectfully submitted,

By_____
Justin Short
Tax Class Plaintiff

Exhibit 1

United States District Court, District of Minnesota
*Rasschaert v. Frontier Communications Corp.*
Case No. 11-cv-02963 DWF/JSM

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT.
YOUR LEGAL RIGHTS MIGHT BE AFFECTED BY THIS SETTLEMENT.
PLEASE READ THIS NOTICE CAREFULLY.**

You received this card or bill insert because Frontier's records reflect that you are or were a customer of Frontier and were charged Minnesota state and/or local taxes on amounts paid for Internet services.  A class action lawsuit alleges that Frontier collected these taxes in violation of the federal Internet Tax Freedom Act and Minnesota law.  Frontier denies any wrongdoing.  A settlement of the lawsuit has been reached.  Under the proposed settlement, **you may be entitled to benefits.**

**You can learn more about the settlement at www.xxxxxxxxx.com or by calling 1-800-xxx-xxxx.**

To read a more detailed description of the terms of the proposed Settlement and to read the full Notice of Proposed Class Action Settlement, which more fully describes your rights, please visit www.xxxxxxx.com or call 1-800-xxx-xxxx.  If you wish to receive benefits under the Settlement, you do not need to take any action.  If the Settlement is approved by the Court, any legal action you may have against Frontier related to the challenged taxes will be released.  If you do not wish to be bound by the terms of this Settlement, you must exclude yourself from the Settlement.  You may formally object to the Settlement.  Visit www.xxxxxx.com for information on how to do so.

Exhibit 2

**United States District Court, District of Minnesota**
*Rasschaert v. Frontier Communications Corp.*
**Case No. 11-cv-02963 DWF/JSM**

# NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT, AND HEARING

*A court authorized this notice. This is not a solicitation from a lawyer.*

- If you paid Minnesota state or local taxes ("Internet Taxes") to Frontier on amounts paid for receipt of Internet services on bills issued on or after October 11, 2005 you may be eligible to receive benefits from a class action settlement.

- The settlement resolves a class action lawsuit in which the plaintiffs allege that Frontier's charging Minnesota customers for Internet Taxes violates the federal Internet Tax Freedom Act and Minnesota law.

- The two sides disagree about whether Frontier's conduct was proper, whether Frontier would be liable if the taxes were improperly charged, and if so, the extent of any such liability. The parties have agreed to resolve the lawsuit by a settlement.

- Your legal rights are affected. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Remain in the Settlement Class** | If you wish to receive benefits under the Settlement, you do not need to take any action at this time. |
| **Exclude Yourself** | Get no benefit. This is the only option that allows you to ever be part of any other lawsuit against Frontier about the legal claims being resolved in this settlement. |
| **Object** | Write to the Court about why you don't like the settlement. |
| **Go To A Hearing** | Ask to speak in Court about the fairness of the settlement. |

- Your rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court still has to decide whether to approve this settlement, which may take some time. Please be patient.

QUESTIONS?
VISIT WWW.XXXXXXXXX.COM OR
CALL 1-800-XXX-XXXX

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** .................................................................................................. 3
    1.    Why did I get this notice package? ................................................... 3
    2.    What is the lawsuit about? ................................................................ 3
    3.    Why is this case a class action? ...................................................... 4
    4.    Why is there a settlement? .............................................................. 4

**WHO IS IN THE SETTLEMENT** ............................................................................... 4
    5.    How do I know if I am part of the settlement? .................................. 4
    6.    I'm still not sure if I am included .................................................... 5

**THE SETTLEMENT BENEFITS – WHAT YOU GET** .................................................. 5
    7.    What does the settlement provide? ................................................. 5

**HOW YOU RECEIVE SETTLEMENT BENEFITS** ..................................................... 6
    8.    How can I get a benefit? ................................................................. 6
    9.    When would I get my benefit? ......................................................... 6
    10.   What am I giving up to get a benefit or stay in the class? .................. 6

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................ 7
    11.   How do I get out of the settlement? ................................................. 7
    12.   If I don't exclude myself, can I sue Frontier for the same thing later? ................. 8
    13.   If I exclude myself, can I get benefits from this settlement? ................................ 8

**THE LAWYERS REPRESENTING YOU** ................................................................... 8
    14.   Do I have a lawyer in this case? ...................................................... 8
    15.   How will the lawyers be paid? ......................................................... 9

**OBJECTING TO THE SETTLEMENT** ...................................................................... 9
    16.   How do I tell the Court that I don't like the settlement? ...................... 9
    17.   What's the difference between objecting and excluding? ..................... 10

**THE COURT'S FAIRNESS HEARING** ................................................................... 10
    18.   When and where will the Court decide whether to approve the settlement? ........ 10
    19.   Do I have to come to the hearing? ................................................... 10
    20.   May I speak at the hearing? ............................................................ 11

**GETTING MORE INFORMATION** ........................................................................... 11
    21.   Are there more details about the settlement? .................................... 11

**QUESTIONS?**
VISIT WWW.XXXXXXXXXX.COM OR
CALL 1-800-XXX-XXXX

22.    How do I get more information?............................................................ 11

# BASIC INFORMATION

## 1.  Why did I get this notice package?

You are receiving this notice because you have been identified as a potential member of a Settlement Class consisting of:

> All persons or entities who received Internet service from Frontier in Minnesota and who were charged state or local taxes in connection with their receive of Internet service at any time from October 11, 2005 until the discontinuation of the collection of the Minnesota taxes pursuant to the Settlement Agreement.

> Excluded from the class are (i) Frontier, any entity in which Frontier has a controlling interest or which has a controlling interest in Frontier, and Frontier's legal representatives, predecessors, successors and assigns; (ii) governmental entities; and (iii) the Court presiding over any motion to approve this Settlement Agreement.

As such, the Court sent you this Notice because you have a right to know about a proposed settlement of class action lawsuits, and about all of your options, before the Court decides whether to approve the settlement.  If the Court approves the settlement, and objections or appeals relating to that settlement are resolved, the benefits provided for by the settlement will be available to Settlement Class members.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the cases is the United States District Court for the District of Minnesota, and the case is known as *Rasschaert v. Frontier Communications Corp.*, Case No. 11-cv-02963-DWF-JSM.  The persons who sued are called the Plaintiffs, and Frontier Communications Corporation, Frontier Communications of America, Inc., Frontier Communications of Minnesota, Citizens Telecommunications Company of Minnesota, LLC, and Citizens Telecommunications Company of New York (collectively, "Frontier") are the Defendants.

## 2.  What is the lawsuit about?

Plaintiffs allege (among other things) that Frontier charges Minnesota customers who receive Internet services for state or local taxes on amounts paid for Internet services in violation of the Internet Tax Freedom Act, 47 U.S.C. § 151, and Minnesota law.  The Plaintiffs allege that Frontier is liable for damages to the Class and seek an injunction against the challenged conduct.

Frontier believes that the Plaintiffs' factual and legal allegations in the lawsuits are incorrect and specifically denies all liability to the Plaintiffs and the Settlement Class. In the lawsuits, Frontier has denied the Plaintiffs' allegations and raised a number of defenses to the claims asserted.

This Notice does not imply that there has been any finding of any violation of the law by Frontier or that recovery could be had in a certain amount. Although the Court has authorized Notice to be given of the proposed settlement, this Notice does not express the opinion of the Court on the merits of the claims or defenses asserted by either side in the lawsuits.

### 3. Why is this case a class action?

Class actions are lawsuits in which the claims and rights of many people are decided in a single court proceeding. Representative Plaintiffs ("Class Representatives") are named in the lawsuit to assert the claims of the entire class of similarly situated people. Class actions provide a vehicle whereby people with similar claims are treated alike. In a class action, the court is guardian of class interests and supervises the prosecution of the class claims by Settlement Class Counsel to assure that the representation is adequate. Class members are not individually responsible for the costs or fees of counsel, which are subject to court award.

### 4. Why is there a settlement?

The Court did not decide in favor of the Class Representatives or Frontier. Settlement Class Counsel have investigated the facts and applicable law regarding the Class Representatives' claims and Frontier's defenses. The parties have engaged in lengthy and "arms-length" negotiations in reaching this settlement. The Class Representatives and Settlement Class Counsel believe that the proposed settlement is fair, reasonable and adequate and in the best interests of the class. Both sides agree that, by settling, Frontier is not admitting any liability or that it did anything wrong, but both sides want to avoid the uncertainties and expense of further litigation.

# Who Is In The Settlement

To see if you will get a benefit from this settlement, you first have to determine if you are a Class Member.

### 5. How do I know if I am part of the settlement?

You are a part of the settlement if you are or were a Minnesota customer of Frontier who received Internet service and paid state or local taxes for receipt of that service on bills issued on or after October 11, 2005.

Excluded from the class are (i) Frontier, any entity in which Frontier has a controlling interest or which has a controlling interest in Frontier, and Frontier's legal representatives, predecessors, successors and assigns; (ii) governmental entities; and (iii) the Court presiding over any motion to approve this Settlement Agreement.

**6.  I'm still not sure if I am included.**

If you are still not sure whether you are included, you can ask for free help.  You can visit www.xxxxxxxx.com for more information.

# The Settlement Benefits—What You Get

**7.  What does the settlement provide?**

If you determine that you are a member of the class, you may receive benefits under the Settlement.  The Settlement provides:

Subject to a future law, regulation or ruling requiring, authorizing, or permitting collection of Internet Taxes from Minnesota customers, Frontier will cease charging the Internet Taxes as set forth in the Settlement Agreement.  Frontier, on behalf of the Settlement Class, but at Frontier's expense, shall prepare and process refund claims for filing with the Minnesota Department of Revenue seeking a refund (with interest) of the Internet Taxes collected by Frontier from the Settlement Class and paid by Frontier to the Minnesota Department of Revenue.  Frontier will file the refund claims.  As part of the Settlement, Frontier has assigned any rights, title, and interest it may have in such refunds to the Settlement Class.

Payments to Settlement Class members will be made when the Minnesota Department of Revenue has issued a refund.  Settlement Class Members each will receive his or her pro rata share of the net proceeds of the refund action, based on estimated amounts paid in Internet Taxes, after deduction of Court approved costs, expenses, and attorneys' fees and Class Representative Compensation.

All payments to Settlement Class Members who are customers of Frontier at the time of distribution shall be in the form of a credit to their account with Frontier.  All payments made to Settlement Tax Class Members who are not customers at the time of distribution shall be made by check.

# How You Receive Settlement Benefits

**8.  How can I get a benefit?**

To qualify for and receive benefits, you do not need to do anything.  Your interest as a member of the Settlement Class will be represented by the Class Representatives and Settlement Class Counsel.  You will be bound by any judgment approving or disapproving the Settlement.  If the Settlement is approved, the Settlement Administrator will send you any monies that you are entitled to under the Settlement.

If you change your address, you must mail a notification of your new address to the Settlement Administrator.

**9.  When would I get my benefit?**

The Court will hold a hearing on **[date on or after February 13, 2013]** to decide whether to approve the Settlement.  If the Settlement is approved, there may be appeals.  Payments to Settlement Class members will be made after the Settlement is finally approved and after the Minnesota Department of Revenue issues a refund.  This may take some time, so please be patient.

**10.  What am I giving up to get a benefit or stay in the class?**

Upon the Court's approval of the settlement, the class members who do not exclude themselves will release and forever discharge Frontier Communications Corporation, Frontier Communications of America, Inc., Frontier Communications of Minnesota, Inc., Citizens Telecommunications of Company of Minnesota, LLC, and Citizens Telecommunications Company of New York, LLC (collectively, "Frontier"), and all of their predecessors and successors in interest, and any of their parents, members, subsidiaries, divisions, affiliates, officers, directors, employees, trustees, principals, attorneys, agents, representatives, vendors, shareholders, partners, and any other person acting on their behalf or on behalf of those in privity Frontier, from any and all claims, demands, debts, liabilities, actions, causes of action of every kind and nature, obligations, damages, losses,  costs, whether known or unknown, actual or potential, suspected or unsuspected, direct or indirect, contingent or fixed, that are alleged or could have been alleged in the operative Complaint, relating to Frontier's collection of state or local taxes in connection with customers' receipt of Internet service in the state of Minnesota, by Plaintiffs and the Settlement Class Members against Frontier.

"Unknown" claims as released herein means any and all claims that any member of the Settlement Class does not know to exist against Frontier which, if known, might have affected his or her decision to enter into or to be bound by the terms of this Settlement.  The Plaintiffs and the members of the Settlement Class acknowledge that they may hereafter discover facts in

addition to or different from those that they now know or believe to be true concerning the subject matter of this release, but nevertheless fully, finally, and forever settle and release any and all claims, known or unknown, derivative or direct, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, in law or equity, including, without limitation, claims that have been asserted or could have been asserted in the operative Complaint, relating to Frontier's collection of state or local taxes in connection with customers' receipt of Internet service in the state of Minnesota, by Plaintiffs and the Settlement Class Members against Frontier that they now have, ever had, or may have had as of the date the court grants final approval of the settlement. The foregoing waiver includes, without limitation, an express waiver to the fullest extent permitted by law, by the Plaintiffs and the Settlement Class members of any and all rights under California Civil Code § 1542 or any similar law of any other state or of the United States, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MIGHT HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

In order to file a separate action asserting any of the settled claims, you must exclude yourself from the settlement.

# Excluding Yourself From The Settlement

**11. How do I get out of the settlement?**

If you choose to be excluded from the Settlement Class, you will not be bound by any judgment or other final disposition of the lawsuits. You will retain any claims against Frontier you might have. To request exclusion, you must state in writing your desire to be excluded from the Settlement Class. You must sign your request for exclusion personally or by legal counsel. Your request must include: (1) your full name, current address, and address when you were charged Internet Taxes by Frontier; (2) your signature; and (3) a specific statement that "I want to be excluded from the Settlement Class." **The request for exclusion must be sent by first class mail, postmarked on or before _____ __, 2013**, addressed to:

> Frontier Tax Settlement Administrator
> P.O. Box _____
> _____, ___ 00000-0000

**If the request is not postmarked on or before _____ __, 2013, your request for exclusion will be invalid,** and you will be included in the Settlement Class automatically. If you do not request exclusion, you will be bound by the terms of the settlement approved by the Court, including without limitation, the judgment ultimately rendered in the cases, and you will be

barred from bringing any claims which arise out of or relate in any way to Frontier charging you Internet Taxes.

**12.  If I don't exclude myself, can I sue Frontier for the same thing later?**

No.  Unless you exclude yourself, you give up any right to sue Frontier for the claims that this settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that case immediately.

**13.  If I exclude myself, can I get benefits from this settlement?**

No.  If you exclude yourself, you are not part of the Settlement.

# The Lawyers Representing You

**14.  Do I have a lawyer in this case?**

The Court has appointed Clint Rasschaert, Ed Risch, Verna Schuna, Eric Gedrose, and Justin Short as Class Representatives.  The Court has appointed the following attorneys as Settlement Class Counsel:

> E. Michelle Drake
> Rebekah L. Bailey
> Anna Prakash
> Nichols Kaster, PLLP
> 4600 IDS Center
> 80 South 8th Street
> Minneapolis, MN 55402
>
> Matthew C. Helland
> Nichols Kaster, PLLP
> One Embarcadero Center
> Suite 720
> San Francisco, CA 94111

Settlement Class Counsel represent the interests of the Settlement Class.  You may hire your own attorney to advise you, but if you hire your own attorney, you will be responsible for paying that attorney's fees.

## 15.  How will the lawyers be paid?

Settlement Class Counsel will apply to the Court for an award of reasonable attorneys' fees and expenses and Class Representatives' compensation.

Settlement Class Counsel plan on seeking an order approving attorneys' fees that reflect the results obtained and the work and effort required finally to obtain recoveries for the Settlement Class, and will seek such recovery from the funds obtained for the Settlement Class.  Settlement Class Counsel agree that they will seek a fee no greater than one-third of the amounts refunded by the Minnesota Department of Revenue to the Settlement Class.  Settlement Class Counsel also will seek reimbursement for their reasonable out-of-pocket expenses incurred in pursuing this litigation on behalf of the Settlement Class from funds obtained for the Settlement Class under the Settlement Agreement.  Finally, Settlement Class Counsel will seek compensation to the Class Representatives in an amount not to exceed $2,500 for Class Representative Rasschaert and $1,500 for any other representative from the funds obtained for the Settlement Class.

# Objecting To The Settlement

## 16.  How do I tell the Court that I don't like the settlement?

You can object to any aspect of the proposed settlement by filing and serving a written objection. You must sign your objection personally or by legal counsel.  Your objection must state your full name, current address and address when you were charged Internet Taxes by Frontier.  You must also provide copies of any documents you intend to rely upon, the names and addresses of any witnesses who will appear at the hearing, and the name of any counsel representing you.  Your deposition may be taken in order to determine the grounds for your objection.  The deposition must be limited to topics relating to the objection.  Your objection must state why you object to the proposed settlement and any reasons supporting your position.

If you intend to appear in person or through your own attorney at the _____ __, 2013 Fairness Hearing described in Paragraph 18 below, you must include with your objection a notice of your intention to appear at the hearing.

**You must mail any objection, along with any notice of intent to appear, postmarked on or before _____ __, 2013**, to Settlement Class Counsel and counsel for Frontier.  These documents should be mailed to Settlement Class Counsel at:

> E. Michelle Drake
> Rebekah L. Bailey
> Anna Prakash
> Nichols Kaster, PLLP
> 4600 IDS Center
> 80 South 8th Street

**QUESTIONS?**
VISIT WWW.XXXXXXXXXX.COM OR
CALL 1-800-XXX-XXXX

Minneapolis, MN 55402

These documents should be mailed to counsel representing Frontier at:

> Archis A. Parasharami
> Kevin Ranlett
> Mayer Brown LLP
> 1999 K Street, N.W.
> Washington, DC 20006

Any Settlement Class member who does not file and serve an objection in the time and manner described above will not be permitted to raise that objection later.

**17.  What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the lawsuits no longer affect you.

# The Court's Fairness Hearing

**18.  When and where will the Court decide whether to approve the settlement?**

There will be a hearing to consider approval of the proposed settlement on _____ __, 2012, beginning at __ :__ __ a.m., at the United States District Court for the District of Minnesota, United States Courthouse, Courtroom 7C, 316 North Robert Street, Saint Paul, MN 55101.  The hearing may be postponed to a later date without further notice.  The purpose of the hearing is to determine the fairness, reasonableness, and adequacy of the terms of settlement; whether the Settlement Class is adequately represented by the Class Representatives and Settlement Class Counsel; and whether an order and final judgment should be entered approving the proposed settlement.  The Court also will consider Settlement Class Counsel's application for an award of attorneys' fees and expenses and Class Representatives' compensation.

You will be represented at the hearing on the fairness of the settlement by Settlement Class Counsel, unless you choose to enter an appearance in person or through your own counsel.  The appearance of your own attorney is not necessary to participate in the hearing on the fairness of the settlement.

**19.  Do I have to come to the hearing?**

No.  Settlement Class Counsel will represent the Class at the hearing, but you are welcome to come at your own expense.  If you send any objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

**20.  May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send with your objection a notice of intention to appear at the hearing as described in paragraph 16 above.  You cannot speak at the hearing if you excluded yourself.

# Getting More Information

**21.  Are there more details about the settlement?**

This Notice is only a summary.  For a more detailed statement of the matters involved in the lawsuits or the Settlement, you may refer to the papers filed in this case during regular business hours at the office of the Clerk of the Court, United States District Court for the District of Minnesota, Warren E. Berger Federal Building and United States Courthouse, 316 North Robert Street, Saint Paul, MN 55101.  File:  *Rasschaert v. Frontier Communications Corp.*, Case No. 11-cv-02963 DWF/JSM.  The full Settlement Agreement and the pleadings filed in the cases is available on www.xxxxxx.com or can be requested, in writing, from Settlement Class Counsel identified in Paragraph 14 above.

**22.  How do I get more information?**

You can visit www.xxxx.com, or write Settlement Class Counsel at the address provided in paragraph 14 above.  **Please do not contact the court for information.**

Dated:  _____  __, 2012          Honorable Donovan W. Frank
                                  United States District Judge

QUESTIONS?
VISIT WWW.XXXXXXXXXX.COM OR
CALL 1-800-XXX-XXXX

Exhibit 3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Clint Rasschaert, Ed Risch, Verna Schuna,
Eric Gedrose, and Justin Short, individually
and on behalf of the putative Classes,

        Plaintiffs,

v.

Frontier Communications Corporation,
Frontier Communications of America, Inc.,
Frontier Communications of Minnesota,
and Citizens Telecommunications
Company of Minnesota, LLC,

        Defendants.

## CLASS ACTION COMPLAINT
## (JURY TRIAL DEMANDED)

Court File No. _____

Plaintiffs Clint Rasschaert ("Rasschaert"), Edward Risch ("Risch"), Verna Schuna ("Schuna"), Eric Gedrose ("Gedrose") and Justin Short ("Short") (collectively, "Plaintiffs"), by their attorneys, Nichols Kaster, PLLP, bring this action for damages and other legal and equitable relief against Defendants Frontier Communications Corporation, Frontier Communications of America Inc., Frontier Communications of Minnesota, and Citizens Telecommunications Company of Minnesota, LLC, (collectively operating and referred to herein as "Frontier" for the purpose of this Complaint).  Plaintiffs state the following for their claims against Defendants:

## INTRODUCTION

1.     This case is about Frontier's illegal treatment of its customers through the collection of taxes which Frontier is forbidden from collecting pursuant to its contractual

obligations, the Internet Tax Freedom Act, and state law.

2.      Frontier provides Internet service and local and long distance phone service in non-urban areas.

3.      Frontier charges state, and local taxes on Internet services even though such taxes are explicitly prohibited by the federal Internet Tax Freedom Act (ITFA), 47 U.S.C. § 151 *et seq.*, state law, and thus not authorized in its customer contracts.

4.      Frontier's conduct is illegal and wrong.  By filing this Complaint, Plaintiffs seek to stop Frontier's unlawful conduct, and to recover unlawfully and illegally collected amounts on behalf of themselves and other putative class members.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are citizens of different states, Plaintiffs have alleged a class action, and the amount in controversy exceeds $5 million.

6.      Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Minnesota and because a substantial part of the events at issue in this lawsuit took place in Minnesota.

## PARTIES

**Plaintiffs**

7.      Plaintiff Clint Rasschaert is an individual residing in Minnetrista, Minnesota.

8.      Plaintiff Ed Risch is an individual residing in Farmington, Minnesota.

2

9.     Plaintiff Verna Schuna is an individual residing in Scandia, Minnesota. Plaintiff Schuna is seventy-two years old.

10.     Plaintiff Eric Gedrose is an individual residing in Belle Plaine, Minnesota.

11.     Plaintiff Justin Short is an individual residing in Lakeville, Minnesota.

**Defendants**

12.     Defendant Frontier Communications Corporation ("Frontier Corporation") is a publicly-traded corporation that maintains headquarters in Stamford, Connecticut and was incorporated in Delaware.   Frontier Corporation's principal place of business is Three High Ridge Park, Stamford, CT 06905.

13.     Defendant Frontier Communications of America, Inc. ("Frontier America") is a Delaware corporation and is a competitive local exchange carrier ("CLEC") providing local telephone and other telecommunications services to rural communities in parts of New York.  Frontier America's principal place of business is Three High Ridge Park. Stamford, CT 06905.

14.     Frontier America also provides long distance services as a reseller to customers of all of the Frontier Corporation's subsidiary incumbent local exchange carriers ("ILECs") throughout the United States.

15.     Frontier America was known as "Citizens Telecommunications Company" prior to March 31, 2003, on which date Citizens Telecommunications Company changed its name to Frontier Communications of America, Inc.

16.     Defendant Frontier Communications of Minnesota, Inc. ("Frontier Minnesota") is a Domestic corporation with its principal place of business in Three High

Ridge Park Stamford, CT 06905. Defendants allege that Frontier Minnesota was the service provider for Plaintiffs Risch, Gedrose, and Short.

17.     Defendant Citizens Telecommunications Company of Minnesota, LLC ("Citizens-MN") is a Delaware limited liability company and is the incumbent local exchange carrier ("ILEC") as defined by 47 U.S.C. § 251 (h), providing local telephone and other telecommunications services to rural communities in parts of Minnesota. Citizens-MN's principal place of business is Three High Ridge Park Stamford, CT 06905.

18.     Frontier America, Frontier Minnesota, and Citizens-MN are wholly-owned subsidiaries of Frontier Corporation.

## FACTUAL ALLEGATIONS

**Defendants' Corporate Organization**

19.     Frontier Corporation is a communications company providing services predominantly to rural areas and small and medium-sized towns and cities.

20.     Frontier Corporation was incorporated in the state of Delaware in 1935, originally under the name of Citizens Utilities Company, and was known as Citizens Communications Company from 2000 until July 31, 2008.

21.     In combination with its subsidiaries, including Frontier America and Citizens-MN, Frontier Corporation offers a variety of voice, data, Internet, and television services and products, some that are available *a la carte*, and others that are available as bundled or packaged solutions.

22.     On July 1, 2010, Frontier Corporation acquired the defined assets and

4

liabilities of the local exchange business and related landline activities of Verizon Communications Inc. ("Verizon").

23.    As of December 31, 2010, Frontier Communications Corporation, through its subsidiaries, including Frontier America and Citizens-MN, operated as an ILEC in 27 states.

24.    As of December 31, 2010, Frontier Corporation had over 7.4 million access lines and high speed Internet subscribers.

25.    Frontier Corporation is identified as the copyright holder on the website www.frontier.com.

26.    The website www.frontier.com is a primary source of new customers for Frontier Corporation and its subsidiaries, including Frontier America and Citizens-MN.

27.    Customers seeking to speak with someone in order to set up service with Frontier, or to request assistance with an existing account are directed to call toll free numbers listed on the website www.frontier.com.

28.    Frontier America and Citizens-MN do not operate their own independent customer websites, nor do they operate their own independent customer service centers or call centers.  Rather, these functions are outsourced, coordinated and centralized through Frontier Corporation.

29.    Frontier Corporation has numerous job postings on its website, including job postings for positions in sales, marketing, and analysis.

30.    Frontier Corporation is responsible for all of its subsidiaries' compliance with applicable tax laws, and controls the taxation policies that those subsidiaries employ.

Frontier Corporation was recently advertising on its website for a Vice President of Tax to work in its Stamford, CT office.

31.     Frontier Corporation is also responsible for customer billing for its subsidiaries, including Frontier America and Citizens-MN.  Frontier Corporation recently advertised on its website for a Billing Specialist and a Residential Sales and Service Consultant.  The job duties in each of these positions include interacting with customers regarding their bills.  The job duties of the Residential Sales and Service Consultant include quoting prices to customers.

32.     Frontier Corporation employs uniform billing software and uniform billing practices for all Frontier customers throughout the United States.  Frontier's billing practices do not vary based on the customer's location.

33.     Frontier Corporation owns the trademarked service mark "Frontier" associated with the provision of "Internet connectivity services, namely, providing telecommunication connections to the Internet, transmission of video, image, voice, audio, text and data via wired and wireless computer networks; providing multiple user access to the Internet and to Intranets; providing high speed access to a global computer information network; high speed Internet services; electronic mail and messaging services."  Frontier Corporation also owns the other trademarks associated with Frontier's business and public presentation of its image.  Both Frontier America and Citizens benefit from the use of these trademarked service marks.

34.     Frontier America is the company currently listed at the top of the "General

Terms and Conditions of Service" on the website www.frontier.com.[1]

35.     The long distance terms and conditions also refer to Frontier America.

36.     The high speed Internet terms and conditions refer only to "Frontier."

37.     The books and records of Frontier Corporation, Frontier America, and Citizens-MN all allow the companies to reasonably identify the charges imposed on customers for Internet access, even when charges are stated on a customer's bill as a single charge imposed for bundled services.

38.     All of the ILEC subsidiaries of Frontier Corporation, including Frontier America, receive customer referrals from the same website, namely www.frontier.com, and receive customers via toll free numbers listed on the above website.

39.     Frontier America has appeared as a consumer creditor in Bankruptcy Court when people to whom Frontier provides Internet and/or phone service have filed for Bankruptcy protection.

**Plaintiff Rasschaert**

40.     Plaintiff Rasschaert subscribed to Frontier's stand-alone DSL high speed Internet service in February 2010.

41.     Before subscribing, Rasschaert viewed Frontier's online advertisements, all of which indicated that the total service charge for stand-alone, high-speed, DSL Internet service was $54.99.

42.     Rasschaert subscribed over the telephone, and when he did, he was quoted

---

[1] On information and belief, the portions of the Terms and Conditions cited and relied upon herein have not changed throughout the duration of Plaintiffs' service.

$54.99 per month for Frontier's Internet service.  Frontier did not quote him any additional charges or fees in connection with his receipt of internet services.

43.    Prior to September 2011, Rasschaert's bills always included charges for state and local tax.

44.    Copies of Rasschaert's bills are attached here to as Exhibit 1.

**Plaintiff Risch**

45.    Plaintiff Risch subscribed to Frontier phone and Internet service in approximately 2005.  In approximately 2010, Risch "bundled" his telephone and internet services with satellite television from the Dish Network.

46.    Risch subscribed to Frontier's services over the telephone.  In 2010, he was quoted $99.99 per month for the bundle.  Frontier did not quote him any additional charges or fees in connection with his receipt of internet services.

47.    Risch's statements separate the state tax charged for Frontier services from the state tax charged for Dish Network services.

48.    The state tax amounts calculated for Risch are larger than the taxes that would have been charged to Risch if his Internet service was not included in the base upon which the taxes were calculated.

49.    Risch relied on Frontier's bills to inform him of the amounts he owed.

50.    Copies of Risch's bills are attached hereto as Exhibit 2.

**Plaintiff Schuna**

51.    Plaintiff Schuna has had phone service with Frontier and its predecessor companies for at least the past six years.

8

52.     Schuna's account is currently listed in the name of her husband, Dale Schuna.   Mr. Schuna passed away in 2010.   Plaintiff Schuna has assumed the responsibility for paying the bills associated with the account.

53.     Schuna lives on a fixed income.

54.     Schuna's son assisted her with adding Internet service to her account in approximately July 2010.

55.     Frontier has produced documents indicating that, days after signing up for Frontier Internet service, Schuna clicked "I agree" electronically to Frontier's Terms and Conditions.

56.     Schuna's bills have always included charges for state and local tax.

57.     Schuna relied on her bills to inform her of the amount she owed.

58.     Copies of Schuna's bills are attached hereto as Exhibit 4.

**Plaintiff Gedrose**

59.     Plaintiff Gedrose signed up for "stand alone" Internet service with Frontier in approximately December 2010.

60.     Gedrose subscribed over the telephone, and when he did, he was quoted $54.99 per month for Frontier's Internet service.   Frontier did not quote him any additional charges or fees in connection with his receipt of services.

61.     Subsequent to this conversation, Frontier locked Gedrose into a one-year term contract and set his contract to automatically renew in December of 2011.   Frontier notified Gedrose of his year commitment in his billing statements.

62.     Gedrose's bills always included charges for state and local tax.

63.     Copies of Gedrose's bills are attached hereto as Exhibit 5.

**Plaintiff Short**

64.     Plaintiff Short signed up for phone and Internet service with Frontier in approximately August 2004.

65.     Short terminated his service with Frontier in approximately November 2010.

66.     Short subscribed over the telephone, and when he did, he was quoted a reduced rate for telephone and phone service in exchange for entering into a two-year commitment with Frontier.  The quoted price did not include additional taxes, charges, fees, or surcharges.  Short accepted Frontier's offer and entered into a two-year contract with Frontier.  As part of the two-year commitment, Short was subject to a substantial "early termination fee" that he would have to pay if he terminated his relationship with Frontier before the commitment expired.

67.     Short's bills have always included charges for state and local tax.

68.     Short relied on his bills to inform him of the amount he owed.

69.     Copies of Short's bills are attached hereto as Exhibit 6.

**Improper Collection of State and Local Taxes**

70.     Internet service is not subject to tax by local and state authorities under the federal Internet Tax Freedom Act (ITFA), 47 U.S.C. § 151 *et seq.*

71.     As the Minnesota Department of Revenue recently wrote, "Internet access charges are not taxable.  Charges to access the Internet are not taxable when they are separately stated from other taxable charges.  Charges for telephone line access used only

for Internet access are not taxable." *See* Minn. Dep't of Rev., *Sales Tax Fact 119: Telecommunications, Cable Television, Direct Satellite and Related Services* (Nov. 2011), *available at*, http://taxes.state.mn.us/sales/Documents/publications_fact_sheets _by_name_content_BAT_1100137.pdf (last visited Feb. 27, 2012).

**Frontier's Knowing and Intentional Continuing Violation of the Law**

72.     Prior to August 2, 2011, Plaintiff Rasschaert complained to Frontier about Frontier's assessment of state tax on his bill.  Rasschaert specifically mentioned the Internet Tax freedom Act in his communications with Frontier.

73.     Rasschaert's complaints were directed to Scott Bohler ("Bohler"), a Frontier employee whose title is "Manager, Government and External Affairs." On August 2, 2011, Rasschaert sent Bohler a written email cataloging his complaints.

74.     On August 2, 2011 Rasschaert also inquired of Bohler as to the "official business entity name" for Frontier in Minnesota.

75.     On August 3, 2011, Bohler responded that, "The operating company here in Hennepin County area [sic] is Citizens Telecommunications Company of Minnesota, LLC."

76.     On August 4, 2011, Bohler informed Rasschaert that Rasschaert's account had been credited in the amount of $96.48.  This credit was represented as being "for sales taxes paid" by Rasschaert.

77.     In that same email, Bohler, represented to Rasschaert that "Going forward, changes have been made so that sales tax will not apply."

78.     While Frontier removed state tax from Rasschaert's September bill,

Frontier has continued to charge its other customers, including Risch and Schuna, state and local tax on Internet service.

79.     Frontier is aware of the fraudulent nature of its conduct and made these misrepresentations knowingly.  Frontier is well aware of the distinction between information services and telecommunications services, and is aware that the latter are not subject to state/local taxation.  For example, in its most recent 10-K filing with the SEC, Frontier Corporation noted "At the federal level, the FCC generally exercises jurisdiction over facilities and services of common carriers, such as our company, **to the extent those facilities are used to provide, originate or terminate interstate or international telecommunications services**." (emphasis added).

80.     Frontier has also participated in, and commented on, various aspects of the FCC's conduct and proposed rules, and as a sophisticated and large telecommunications company, employs full time staff and legal counsel to assist it in complying with the FCC's regulations and orders, as well as full time staff and legal counsel to assist it in complying with various tax and accounting laws.  It is inconceivable that Frontier would be unaware of the Internet Tax Freedom Act and/or unaware of the FCC's consistent policy refusing to regulate and/or impose restrictions on information services.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

82.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.

83.     Plaintiffs seek to certify a class defined as: All Minnesota residents who have received Internet service from Frontier and who were charged state and/or local taxes in connection with their receipt of Internet service.

84.     The Class consists of a subclass of Frontier customers who have no written contract with Frontier, and who did not affirmatively assent to Frontier's Terms and Conditions at the inception of a contractual period, and is represented by Plaintiffs Rasschaert, Gedrose and Short ("Phone Sign-up Subclass").

85.     The Class also consists of a subclass of Frontier customers who affirmatively accepted Frontier's Terms and Conditions at the inception of a contractual period, and is represented by Plaintiff Schuna ("The Terms & Conditions Subclass").

86.     The individuals in the Classes are so numerous that joinder of all members is impracticable.

87.     There are questions of law and fact common to the Classes that predominate over any questions solely affecting individual members, including, but not limited to:

    a.     Whether Frontier breached its contracts;

    b.     Whether Frontier committed fraud;

    c.     Whether Frontier's conduct violates Minnesota's Consumer Fraud Act;

    d.     Whether Frontier's conduct violates Minnesota's Uniform Deceptive Trade Practices Act;

    e.     Whether Frontier's conduct violates Minnesota's False Statements in Advertising Act;

    f.     The nature of Frontier's policies and practices as they relate

to the collection of state and local taxes; and

g.     The proper measure of damages owed to Plaintiffs and members of the Classes.

88.     Plaintiffs' claims are typical of those of the Class.  Plaintiffs, like other members of the Class, were improperly subjected to taxes that were misrepresented as being imposed by the government but in fact were not.  Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in consumer class action litigation.

89.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Frontier.

90.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Frontier has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

91.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other methods for the fair and efficient adjudication of this action.

92.     Plaintiffs intend to send notice to all members of the Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

## COUNT ONE

**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs Rasschaert, Gedrose and Short and the Phone Sign-Up Subclass)**

93.     The above paragraphs are incorporated by reference as if fully set forth herein.

94.     Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass contracted with Frontier for Internet service without entering into a written contract or otherwise assenting to Frontier's written Terms and Conditions.

95.     Under these contracts, the parties continued doing business for a specified term, and faced an early termination fee if the customer wished to cease service before the end of the term.

96.     In agreeing to provide Internet services, Frontier owed Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass an implied duty of good faith and fair dealing.

97.     At the time of formation, Frontier did not inform Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass of its intent to impose an taxes that were not in fact owed.

98.     Nonetheless, after entering into a binding term contract, Frontier imposed state and local taxes on Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass.

99.     Frontier breached its contract with Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass through imposing non-existent taxes which had the effect of raising the price of service above the price to which the parties agreed.

100.    Frontier also breached its duty of good faith and fair dealing by dishonestly

15

imposing nonexistent taxes on customers in bad faith.

101.    Frontier's conduct had the effect of depriving Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass of receiving the benefits they were supposed to receive pursuant to their agreements with Frontier, namely the receipt of services at the agreed-upon price.

102.    Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

**COUNT TWO**

**BREACH OF CONTRACT**
**(On Behalf of Plaintiff Schuna and the Terms & Conditions Subclass)**

103.    The above paragraphs are incorporated by reference as if fully set forth herein.

104.    Plaintiff Schuna, and the Terms & Conditions Subclass affirmatively accepted Frontier's standard Terms and Conditions of Service.

105.    At all relevant times, those Terms and Conditions have specified that customers are responsible for paying only the base price, plus any "taxes imposed" and "surcharges, fees and assessments" imposed in connection with the service that such customers receive.

106.    Under this language, Frontier agreed to only charge its customers for those taxes "imposed," which excludes taxes prohibited, and/or not imposed under state law.

107.    In direct violation of these Terms and Conditions, Frontier required Plaintiffs Schuna and the Terms & Conditions Subclass to pay state and taxes that were

16

not imposed by law, and thus not contemplated by the Terms and Conditions or Frontier's tariffs.

108.   Frontier's contractual agreements are subject to an implied duty of good faith and fair dealing.

109.   Frontier breached this duty of good faith and fair dealing by dishonestly imposing undisclosed, unlawful, deceptive, and/or misleading charges on customers in bad faith.

110.   Frontier's conduct had the effect of depriving Plaintiffs Schuna and the Terms & Conditions Subclass of receiving the benefits they were supposed to receive pursuant to their agreements with Frontier.

111.   Plaintiffs Schuna and the Terms & Conditions Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT THREE

### INTERNET TAX FREEDOM ACT, 47 U.S.C. § 151, *et. seq.*
### (On Behalf of Plaintiffs and the Classes)

112.   The above paragraphs are incorporated by reference as if fully set forth herein.

113.   This claim arises from Frontier's ongoing violation of the Internet Tax Freedom Act, which explicitly exempts internet access from state or local taxes.

114.   Frontier is aware that it is not allowed to charge state tax on internet access, as evidenced by its willingness to refund Plaintiff Rasschaert's state taxes, and its willingness to eliminate state and local tax from Rasschaert's September bill.  However,

in spite of this knowledge, Frontier has taken no steps to refund taxes unlawfully collected from its other customers, including Plaintiffs Risch and Schuna. Nor has Frontier ceased collection of such taxes from its other customers.

115. Plaintiffs and the Classes were injured by Defendants' unlawful actions and are therefore entitled to relief as set forth below.

## COUNT FOUR

### FRAUD
### (On Behalf of Plaintiffs and the Classes)

116. The above paragraphs are incorporated by reference as if fully set forth herein.

117. Plaintiffs were subject to misrepresentations by Frontier that were made to them in Frontier's advertisements, on their bills, on their online services descriptions, and during their initial calls with Frontier's representatives. Specifically, Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Frontier was subject to state and local tax when in fact it was not.

118. Plaintiff Risch was also subject to misrepresentations by Frontier. Specifically, Plaintiff Risch's bills from Frontier indicated that all of his service charges (including charges for Internet access) were subject to state and local tax when in fact they were not.

119. Plaintiff Schuna was also subject to misrepresentations by Frontier. Specifically, Plaintiff Schuna's bills from Frontier indicated that all of her service charges (including charges for Internet access) were subject to state and local tax when in

fact they were not.

120.   Plaintiff Gedrose was also subject to misrepresentations by Frontier. Specifically, Plaintiff Gedrose's bills from Frontier indicated that all of his service charges (including charges for Internet access) were subject to state and local tax when in fact they were not.

121.   Plaintiff Short was also subject to misrepresentations by Frontier. Specifically, Plaintiff Short's bills from Frontier indicated that all of his service charges (including charges for Internet service) were subject to state and local tax when in fact they were not.

122.   The above misrepresentations were typical of the type of misrepresentations made by Frontier to other class members.  Members of the Classes received bills from Frontier indicating that the transactions they engaged in with Frontier were subject to state and local tax when in fact they were not.

123.   Frontier's misrepresentations were knowing and intentional.

124.   In continuously paying their bills, Plaintiffs and the Class reasonably and justifiably relied on Frontier's intentional misrepresentations about the amounts they owed and about the nature of the charges that they were required to pay.

125.   As a direct result of Frontier's unlawful actions, Plaintiffs and the Class were injured and are therefore entitled to relief as set forth below.

## COUNT FIVE

**MINNESOTA CONSUMER FRAUD ACT**
**Minn. Stat. § 325F.69,** *et seq.*
**(On Behalf of Plaintiffs and the Class)**

126.   The above paragraphs are incorporated by reference as if fully set forth herein.

127.   Minn. Stat. § 325F.69, subd. 1 provides:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

128.   Frontier engaged in and continues to engage in fraud, misrepresentations, false promises and misleading statements as set forth in Paragraphs 117-122 herein.

129.   Frontier engaged in such misrepresentations with the intent that Plaintiffs and the Classes would rely on such misrepresentations in connection with the purchase of services from Frontier, and with the intention that they would pay the misrepresented and misleading charges.

130.   The vindication of the Plaintiffs' claims and the claims of the other Class members will benefit the public at large.   Frontier's advertisements were broadly and publicly disseminated on the Internet.  Frontier's practice of misrepresenting that various taxes are imposed by or authorized by a government agency implies that taxes are higher than they actually are, and there is a significant public interest in ensuring that companies do not cloak their own pricing decisions in the garb of governmental authority.  There is also a significant public interest in ensuring that Frontier is accurately advertising the

20

price of its Internet service to the public.  Finally, the interests of thousands of Minnesota consumers are implicated in this action.

131.   Plaintiffs and the Classes were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT SIX

### MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT
### Minn. Stat. § 325D.44, *et seq.*
### (On Behalf of Plaintiffs and the Class)

132.   The above paragraphs are incorporated by reference as if fully set forth herein.

133.   Minn. Stat. § 325D.44, subd. 1, provides, in relevant part:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . .
(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; . . .
(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . .
(9) advertises goods or services with intent not to sell them as advertised; . . .
(13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

134.   In misrepresenting the nature and amount of taxes owed, Frontier caused a likelihood of confusion or of misunderstanding and misrepresented that certain charges were approved by the government when they were not, in violation of the above provisions.

135.   Frontier also advertised goods or services with intent not to sell them at the

advertised prices, and made false or misleading statements concerning its prices, as described above.

136.   Frontier's representations regarding state and local tax are likely to (and did) confuse its customers and create a misunderstanding that customers were legally required to remit payment for such charges, dissuading them from challenging the fees' legitimacy.

137.   Frontier engaged in this deceptive conduct willfully and knowingly.

138.   Minn. Stat. § 325F.71, subd. 2 imposes a supplemental civil penalty on persons whose conduct constitutes deceptive trade practice, consumer fraud or false advertising when that alleged "conduct is perpetrated against one or more senior citizens or disabled persons[.]"

139.   Plaintiff Schuna is a "senior citizen" within the meaning of the Senior Citizens and Disabled Persons statute because she is over the age of 62.

140.   Plaintiff Schuna and other senior citizen members of the Class, because of their age, are more vulnerable to Frontier's deceptive and misleading conduct and suffered economic damages as a result of such conduct.

141.   Frontier engaged in this deceptive conduct willfully and knowingly.

142.   Frontier knew or should have known that their conduct was directed to one or more senior citizens.

143.   Plaintiffs and members of the Classes were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT SEVEN

**MINNESOTA FALSE STATEMENTS IN ADVERTISING ACT**
**Minn. Stat. § 325F.67, *et seq.***
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Subclass)**

144.    The above paragraphs are incorporated by reference as if fully set forth herein.

145.    Minn. Stat. § 325F.67 makes it unlawful for any person or business to sell to the public any good or service, or "induce the public in any manner to enter into any obligation relating thereto," by making, publishing, disseminating, circulating, or placing before the public, directly or indirectly, "any advertisement of any sort . . . [that] contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading[.]"

146.    Frontier violated Minn. Stat § 325F.67 by making false and misleading representations about the terms upon which it would offer service, including but not limited to making false representations to Plaintiffs and the Classes about the price for the services they would receive and about the nature of the taxes that would be imposed on them.

147.    Pursuant to Minn. Stat. Minn. Stat. § 8.31, subd. 3a, Plaintiffs and the Classes may pursue a private cause of action based on Frontier's violation of § 325F.67.

148.    The vindication of the Plaintiffs' claims and the claims of the Classes will benefit the public at large.  There is a significant public interest in discouraging false, deceptive and misleading advertising.  Frontier has already acquired more than 200,000 Minnesota access service customers, and Frontier broadly and publicly disseminates its

advertising on the Internet, making it likely that thousands more Minnesota residents will fall victim to Frontier's deceptive and misleading advertising. There is also a significant public interest in ensuring that the rates charged by Frontier equal those included in its filed tariffs.

149. Plaintiffs and the Classes have suffered damages and monetary loss as a result of Frontier's false, deceptive and misleading advertising.

150. Plaintiffs and the Classes were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## PRAYER FOR RELIEF

151. WHEREFORE, Plaintiffs, on behalf of themselves and the putative Classes, pray for judgment against Defendants as follows:

A. Certifying this action as a Class action on behalf of the putative Classes;

B. Designating Plaintiffs as Class Representatives;

C. Appointing Nichols Kaster, PLLP, as Class Counsel and lead Counsel for the Classes;

D. Declaring that the practices complained of herein are unlawful;

E. Awarding actual damages and restitution;

F. Awarding treble damages; civil penalties, and statutory damages;

G. Awarding pre-judgment and post-judgment interest as provided by law;

H. Awarding attorneys' fees and costs, 47 U.S.C. § 206; Minn. Stat. § 8.31, subd.3a; Minn. Stat. § 325D.45, subd. 2; Minn. Stat. § 325F.71, subd. 4; and

I.     Granting such equitable relief as the Court may deem just and proper, including but not limited to injunctive relief requiring Defendants to cease their unlawful practices and to cooperate with Plaintiffs in securing refunds of any taxes illegally collected from Plaintiffs and other Class members which were remitted to governmental authorities; and

J.     Awarding any further and additional relief to which Plaintiffs and the putative Classes may be entitled.

## DEMAND FOR JURY TRIAL

152.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Respectfully Submitted,

Dated:                                  NICHOLS KASTER, PLLP

_____
E. Michelle Drake (#0387366)
Rebekah L. Bailey (#0389599)
Anna Prakash (#0351365)
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 338-4878
drake@nka.com
bailey@nka.com
aprakash@nka.com

NICHOLS KASTER, LLP
Matthew C. Helland (#346214)
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone (415) 277-7235
Tax (415) 277-7238
Helland@nka.com

ATTORNEYS FOR PLAINTIFFS

Exhibit 4

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Clint Rasschaert, Ed Risch, Pamela
Schiller, Verna Schuna, Eric Gedrose, and
Justin Short, individually and on behalf of
the putative Classes,

        Plaintiffs,

v.

Frontier Communications Corporation,
Frontier Communications of America, Inc.,
Frontier Communications of Minnesota,
Citizens Telecommunications Company of
Minnesota, LLC, and Citizens
Telecommunications Company of New
York,

        Defendants.

**THIRD AMENDED
CLASS ACTION COMPLAINT
(JURY TRIAL DEMANDED)**

Court File No. 11-cv-02963 DWF/JSM

---

Plaintiffs Clint Rasschaert ("Rasschaert"), Edward Risch ("Risch"), Pamela Schiller ("Schiller"), Verna Schuna ("Schuna"), Eric Gedrose ("Gedrose") and Justin Short ("Short") (collectively, "Plaintiffs"), by their attorneys, Nichols Kaster, PLLP, bring this action for damages and other legal and equitable relief against Defendants Frontier Communications Corporation, Frontier Communications of America Inc., Frontier Communications of Minnesota, Citizens Telecommunications Company of Minnesota, LLC, and Citizens Telecommunications Company of New York (collectively operating and referred to herein as "Frontier" for the purpose of this Complaint). Plaintiffs state the following for their claims against Defendants:

## INTRODUCTION

1.      This case is about Frontier's illegal treatment of its customers through the imposition of fees and charges which Frontier is forbidden from collecting pursuant to its contractual obligations  and state law.

2.      Frontier provides Internet service and local and long distance phone service in non-urban areas.

3.      In connection with its Internet services, Frontier imposes on its customers a previously undisclosed "HSI surcharge" above and beyond its regular price for Internet service.  The prices Frontier advertises on-line and tells its customers they will pay when they sign-up for service over the telephone do not include the HSI surcharge.  Frontier customers who agree to long-term contracts where the price is locked in for a period of time (and where the customer is subject to an early termination fee) are not quoted prices that include the HSI surcharge.  Frontier subsequently includes this surcharge despite the fact that Frontier represents in writing that all surcharges on customers' bills are either governmentally required or specifically authorized by government agencies.  The HSI surcharge is neither, and instead it is merely a junk fee, which serves only to increase prices above advertised prices under the false and misleading guise of governmental authority.

4.      Lastly, Frontier imposes a variety of other inapplicable charges and fees, such as 911 fees and Universal Service Fees ("USF"), on its customers despite the fact that Internet usage is exempt from these fees and/or that Internet-only customers do not have access to the services for which the fees are collected.

5.      Frontier's conduct is illegal and wrong.  By filing this Complaint, Plaintiffs seek to stop Frontier's unlawful conduct, and to recover unlawfully and illegally collected amounts on behalf of themselves and other putative class members.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are citizens of different states, Plaintiffs have alleged a class action, and the amount in controversy exceeds $5 million.[1]

7.      Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Minnesota and because a substantial part of the events at issue in this lawsuit took place in Minnesota.

## PARTIES

**Plaintiffs**

8.      Plaintiff Clint Rasschaert is an individual residing in Minnetrista, Minnesota.

9.      Plaintiff Ed Risch is an individual residing in Farmington, Minnesota.

10.      Plaintiff Pamela Schiller is an individual residing in Chester, New York.

---

[1] According to Frontier's Press Release for the 2011 Fourth Quarter and Full Year Results, the Company had 3,413,700 customers as of December 31, 2011.  *Available at* http://phx.corporate-ir.net/phoenix.zhtml?c=66508&p=irol-newsArticle_Print&ID=166 2192&highlight= (last visited Feb. 27, 2012).  Given this, it is clear that this class action more than satisfies the monetary jurisdictional requirement.  To illustrate, a one-dollar HSI surcharge imposed for a one-year period easily meets the five million dollar threshold.  This is met without considering: the HSI surcharges imposed at a rate greater than one dollar, damages incurred by the contractually unauthorized federal, state, and local taxes charged, and the depth of the applicable statutory periods.

11.     Plaintiff Verna Schuna is an individual residing in Scandia, Minnesota. Plaintiff Schuna is seventy-two years old.

12.     Plaintiff Eric Gedrose is an individual residing in Belle Plaine, Minnesota.

13.     Plaintiff Justin Short is an individual residing in Lakeville, Minnesota.

**Defendants**

14.     Defendant Frontier Communications Corporation ("Frontier Corporation") is a publicly-traded corporation that maintains headquarters in Stamford, Connecticut and was incorporated in Delaware.  Frontier Corporation's principal place of business is Three High Ridge Park, Stamford, CT 06905.

15.     Defendant Frontier Communications of America, Inc. ("Frontier America") is a Delaware corporation and is a competitive local exchange carrier ("CLEC") providing local telephone and other telecommunications services to rural communities in parts of New York.  Frontier America's principal place of business is Three High Ridge Park. Stamford, CT 06905.

16.     Frontier America also provides long distance services as a reseller to customers of all of the Frontier Corporation's subsidiary incumbent local exchange carriers ("ILECs") throughout the United States.

17.     Frontier America was known as "Citizens Telecommunications Company" prior to March 31, 2003, on which date Citizens Telecommunications Company changed its name to Frontier Communications of America, Inc.

18.     Defendant Frontier Communications of Minnesota, Inc. ("Frontier Minnesota") is a Domestic corporation with its principal place of business in Three High

Ridge Park Stamford, CT  06905.  Defendants allege that Frontier Minnesota was the service provider for Plaintiffs Risch, Gedrose, and Short.

19.     Defendant Citizens Telecommunications Company of Minnesota, LLC ("Citizens-MN") is a Delaware limited liability company and is the incumbent local exchange carrier ("ILEC") as defined by 47 U.S.C. § 251 (h), providing local telephone and other telecommunications services to rural communities in parts of Minnesota. Citizens-MN's principal place of business is Three High Ridge Park Stamford, CT 06905.

20.     Defendant Citizens Telecommunications Company of New York, Inc. ("Citizens-NY") is a New York corporation with its principal place of business in Three High Ridge Park Stamford, CT  06905.  Defendants allege that Citizens-NY was the service provided for Plaintiff Schiller.

21.     Frontier America, Frontier Minnesota, Citizens-MN, and Citizens-NY are wholly-owned subsidiaries of Frontier Corporation.

## FACTUAL ALLEGATIONS

**Defendants' Corporate Organization**

22.     Frontier Corporation is a communications company providing services predominantly to rural areas and small and medium-sized towns and cities.

23.     Frontier Corporation was incorporated in the state of Delaware in 1935, originally under the name of Citizens Utilities Company, and was known as Citizens Communications Company from 2000 until July 31, 2008.

24.     In combination with its subsidiaries, including Frontier America and

Citizens-MN, Frontier Corporation offers a variety of voice, data, Internet, and television services and products, some that are available *a la carte*, and others that are available as bundled or packaged solutions.

25.     On July 1, 2010, Frontier Corporation acquired the defined assets and liabilities of the local exchange business and related landline activities of Verizon Communications Inc. ("Verizon").

26.     As of December 31, 2010, Frontier Communications Corporation, through its subsidiaries, including Frontier America and Citizens-MN, operated as an ILEC in 27 states.

27.     As of December 31, 2010, Frontier Corporation had over 7.4 million access lines and high speed Internet subscribers.

28.     Frontier Corporation is identified as the copyright holder on the website www.frontier.com.

29.     The website www.frontier.com is a primary source of new customers for Frontier Corporation and its subsidiaries, including Frontier America and Citizens-MN.

30.     Customers seeking to speak with someone in order to set up service with Frontier, or to request assistance with an existing account are directed to call toll free numbers listed on the website www.frontier.com.

31.     Frontier America and Citizens-MN do not operate their own independent customer websites, nor do they operate their own independent customer service centers or call centers. Rather, these functions are outsourced, coordinated and centralized through Frontier Corporation.

32.     Frontier Corporation has numerous job postings on its website, including job postings for positions in sales, marketing, and analysis.

33.     Frontier Corporation is responsible for all of its subsidiaries' compliance with applicable tax laws, and controls the taxation policies that those subsidiaries employ. Frontier Corporation was recently advertising on its website for a Vice President of Tax to work in its Stamford, CT office.

34.     Frontier Corporation is also responsible for customer billing for its subsidiaries, including Frontier America and Citizens-MN.  Frontier Corporation recently advertised on its website for a Billing Specialist and a Residential Sales and Service Consultant.  The job duties in each of these positions include interacting with customers regarding their bills.  The job duties of the Residential Sales and Service Consultant include quoting prices to customers.

35.     Frontier Corporation employs uniform billing software and uniform billing practices for all Frontier customers throughout the United States.  Frontier's billing practices do not vary based on the customer's location.

36.     Frontier Corporation owns the trademarked service mark "Frontier" associated with the provision of "Internet connectivity services, namely, providing telecommunication connections to the Internet, transmission of video, image, voice, audio, text and data via wired and wireless computer networks; providing multiple user access to the Internet and to Intranets; providing high speed access to a global computer information network; high speed Internet services; electronic mail and messaging services."  Frontier Corporation also owns the other trademarks associated with Frontier's

business and public presentation of its image.   Both Frontier America and Citizens benefit from the use of these trademarked service marks.

37.     Frontier America is the company currently listed at the top of the "General Terms and Conditions of Service" on the website www.frontier.com.[2]

38.     The long distance terms and conditions also refer to Frontier America.

39.     The high speed Internet terms and conditions refer only to "Frontier."

40.     The books and records of Frontier Corporation, Frontier America, and Citizens-MN all allow the companies to reasonably identify the charges imposed on customers for Internet access, even when charges are stated on a customer's bill as a single charge imposed for bundled services.

41.     All of the ILEC subsidiaries of Frontier Corporation, including Frontier America, receive customer referrals from the same website, namely www.frontier.com, and receive customers via toll free numbers listed on the above website.

42.     Frontier America has appeared as a consumer creditor in Bankruptcy Court when people to whom Frontier provides Internet and/or phone service have filed for Bankruptcy protection.

**Plaintiff Rasschaert**

43.     Plaintiff Rasschaert subscribed to Frontier's stand-alone DSL high speed Internet service in February 2010.

44.     Before subscribing, Rasschaert viewed Frontier's online advertisements, all

---

[2] On information and belief, the portions of the Terms and Conditions cited and relied upon herein have not changed throughout the duration of Plaintiffs' service.

of which indicated that the total service charge for stand-alone, high-speed, DSL Internet service was $54.99.

45.     Rasschaert subscribed over the telephone, and when he did, he was quoted $54.99 per month for Frontier's Internet service.   Frontier did not quote him any additional charges or fees in connection with his receipt of internet services.

46.     Rasschaert's bills have always included charges for USF Contributions, 911/TELECOM/TAP fees, and an HSI Surcharge.

47.     Copies of Rasschaert's bills are attached here to as Exhibit 1.

**Plaintiff Risch**

48.     Plaintiff Risch subscribed to Frontier phone and Internet service in approximately 2005.  In approximately 2010, Risch "bundled" his telephone and internet services with satellite television from the Dish Network.

49.     Risch subscribed to Frontier's services over the telephone.  In 2010, he was quoted $99.99 per month for the bundle.  Frontier did not quote him any additional charges or fees in connection with his receipt of internet services.

50.     Risch's bills have always included charges for USF Contributions, 911/TELECOM/TAP fees, and an HSI Surcharge.

51.     Risch relied on Frontier's bills to inform him of the amounts he owed.

52.     Copies of Risch's bills are attached hereto as Exhibit 2.

**Plaintiff Schiller**

53.     Plaintiff Schiller has had Frontier phone service for at least the past six years.

54.    In approximately 2005, Schiller subscribed to Frontier's Internet service and had it bundled with her telephone service and the Dish Network television service.

55.    Frontier has produced documents indicating that, in approximately 2007, Schiller clicked "I agree" electronically to the version of Frontier's Terms and Conditions in effect at that time.

56.    Schiller renewed her bundle subscription in June 2011.  At the time she renewed, Frontier did not disclose that they would require her to pay an HSI surcharge in addition to the stated price of the service.

57.    Schiller's bills have always included charges for USF Contributions, 911 fees, and an HSI Surcharge.

58.    Schiller relied on Frontier's bills to inform her of the amounts she owed.

59.    A copy of Schiller's most recent bill is attached hereto as Exhibit 3.

**Plaintiff Schuna**

60.    Plaintiff Schuna has had phone service with Frontier and its predecessor companies for at least the past six years.

61.    Schuna's account is currently listed in the name of her husband, Dale Schuna.   Mr. Schuna passed away in 2010.   Plaintiff Schuna has assumed the responsibility for paying the bills associated with the account.

62.    Schuna lives on a fixed income.

63.    Schuna's son assisted her with adding Internet service to her account in approximately July 2010.   At the time Schuna's son called to set up Frontier service for her, he was quoted a price for the addition of Internet service.  This price did not include

the $1.00 HSI surcharge which subsequently appeared on Schuna's bills.

64. Frontier has produced documents indicating that, days after signing up for Frontier Internet service, Schuna clicked "I agree" electronically to Frontier's Terms and Conditions.

65. Schuna's bills have always included charges for an HSI Surcharge.

66. Schuna relied on her bills to inform her of the amount she owed.

67. Copies of Schuna's bills are attached hereto as Exhibit 4.

**Plaintiff Gedrose**

68. Plaintiff Gedrose signed up for "stand alone" Internet service with Frontier in approximately December 2010.

69. Gedrose subscribed over the telephone, and when he did, he was quoted $54.99 per month for Frontier's Internet service. Frontier did not quote him any additional charges or fees in connection with his receipt of services.

70. Subsequent to this conversation, Frontier locked Gedrose into a one-year term contract and set his contract to automatically renew in December of 2011. Frontier notified Gedrose of his year commitment in his billing statements.

71. Gedrose's bills always included charges for USF Contributions, 911/TELECOM/TAP fees, and an HSI Surcharge.

72. Copies of Gedrose's bills are attached hereto as Exhibit 5.

**Plaintiff Short**

73. Plaintiff Short signed up for phone and Internet service with Frontier in approximately August 2004.

11

74.    Short terminated his service with Frontier in approximately November 2010.

75.    Short subscribed over the telephone, and when he did, he was quoted a reduced rate for telephone and phone service in exchange for entering into a two-year commitment with Frontier.  The quoted price did not include additional taxes, charges, fees, or surcharges.  Short accepted Frontier's offer and entered into a two-year contract with Frontier.  As part of the two-year commitment, Short was subject to a substantial "early termination fee" that he would have to pay if he terminated his relationship with Frontier before the commitment expired.

76.    Short's bills have always included charges for an HSI Surcharge.

77.    Short relied on his bills to inform him of the amount he owed.

78.    Short paid many of his bills using Frontier's online bill pay website.

79.    Copies of Short's bills are attached hereto as Exhibit 6.

**Improper and Undisclosed HSI Surcharge**

80.    All Plaintiffs were subject to HSI surcharges.

81.    The $1.00 or $1.50 HSI fee is not disclosed in any of Frontier's advertisements showing the price for Internet service, and is consistently excluded from the advertised price of Frontier's stand-alone and bundled Internet access offerings. Frontier advertises the price of new service as exclusive only of "taxes and governmental surcharges, if any."  (Ex. 7.)

82.    At all applicable times prior to the filing of Plaintiffs' original Complaint on October 11, 2011, Frontier's Billing FAQs indicated that the taxes and surcharges

listed on its bills are "Taxes and Surcharges [that] are mandated by state, local and/or federal requirements" or "authorized by local, state or federal agencies."  (Ex. 8.)

83.     At some time after the filing of Plaintiffs' Complaint on October 11, 2011, but before the filing of Plaintiffs' First Amended Complaint, Frontier amended its website FAQs to state "**Some** Taxes and Surcharges are mandated by state, local and/or federal requirements. **Other surcharges may be imposed by Frontier**.  Certain other miscellaneous expenses that are authorized by local, state or federal agencies are also listed here."   The changes to Frontier's previous statements are emphasized in bold herein.

84.     None of the terms and conditions posted on Frontier's website at any time during the duration of Plaintiffs' services have ever accurately identified the HSI surcharge.

85.     The scripts that Frontier provides to its service representatives include a service price which is stated exclusive of the HSI surcharge.  Frontier does not inform Plaintiffs of its HSI surcharge at the inception of their receipt of Frontier's Internet services.

86.     The first time any customer learns about the fee is when the customer receives a bill from Frontier for Internet services.

87.     Frontier's "HSI Surcharge" appeared on the section of Plaintiffs' bills entitled "State and Other Charges."

88.     The HSI Surcharge is not mandated by state, local and/or federal requirements.  Nor is it authorized by any local, state or federal agency or agencies.

89.     The HSI Surcharge is a classic example of what is commonly referred to as "partitioned pricing."   Partitioned pricing is intended to affect a consumer's purchase decision by swaying the consumer's evaluation and perception of the offer's value, making the offer seem more valuable than it is because the consumer's price sensitivity is keyed to the base price, not the total price, inclusive of surcharges.

90.     Partitioned pricing can be misleading if the information regarding the base price and surcharges are not honestly communicated.   *See* B. Burman & A. Biswas, *Partitioned Pricing: Can We Always Divide and Prosper?*, 38 J. Retailing 4, 423–36 (2007).

**Improper Imposition of Other Charges and Fees on Internet Customers**

91.     The Federal USF (Universal Service Fund) Recovery Charge was improperly imposed by Frontier on customers who received Internet service, as the FCC has explicitly ruled that revenue received for broadband Internet service is not subject to contributions to the Universal Service Fund.   Specifically, the FCC has ruled, "To calculate universal service contribution obligations, providers must report their revenues to USAC using the FCC Form 499, segregating their non-telecommunications revenues (such as revenues from sales of information services) from their telecommunications revenues[.]"   *In re Univ. Serv. Contribution Methodology*, 25 F.C.C.R. 4652, 4654 (2010).

92.     In calculating the USF charges that appeared on customers' bills, Frontier systematically failed to segregate Internet charges from telecommunications charges, thereby charging a USF contribution to the customer, which exceed the allowed amount.

93.     The 911 surcharge also was improperly collected by Frontier from Internet-only customers, as 911 surcharges may only be imposed on customers who actually receive services which are capable of originating a 911 call.  Plaintiff Rasschaert did not receive such service and therefore could not be required to pay this fee.

94.     The Telephone Access Program ("TAP") and Telecommunications Relay ("TELERELAY") surcharges also were improperly collected by Frontier from Plaintiff Rasschaert and other Internet-only customers, as Internet service is not subject to these surcharges.

95.     TAP and TELERELAY are both references to state mandated programs (also referred to as "TRS") that provide services to the deaf and hearing-impaired to allow them to use a telephone "relay call" service to place telephone calls to other non-communication-impaired persons.

96.     Individuals who receive only Internet service are not required to pay charges for these programs because they are not capable of originating a telecommunications relay call.  *See, e.g.*, Minn. Stat.  § 237.52.

97.     There is no exception to the Internet Tax Freedom Act for contributions to TAP or other similar programs.

**Frontier's Knowing and Intentional Continuing Violation of the Law**

98.     Prior to August 2, 2011, Plaintiff Rasschaert complained to Frontier about Frontier's assessment of various hidden fees and surcharges on his bill.

99.     Rasschaert's complaints were directed to Scott Bohler ("Bohler"), a Frontier employee whose title is "Manager, Government and External Affairs." On

15

August 2, 2011, Rasschaert sent Bohler a written email cataloging his complaints.

100.   On August 2, 2011 Rasschaert also inquired of Bohler as to the "official business entity name" for Frontier in Minnesota.

101.   On August 3, 2011, Bohler responded that, "The operating company here in Hennepin County area [sic] is Citizens Telecommunications Company of Minnesota, LLC."

102.   Rasschaert's paper bill for September also indicates that Frontier continues to charge him 911, TELERELAY and TAP surcharges.

103.   Rasschaert's September billing statement includes "current charges" of $57.88.  The page of the Rasschaert's bill which normally includes a full break down of all charges was, for September, notably different than previous bills.  It included no breakdown of Rasschaert's service charges, instead including only the total charges for service (on page 1 of 4) and a "Detail of Taxes and Other Charges" (on page 4 of 4). Page 3 of 4 of Rasschaert's September bill was blank.  (Ex. 1.)

104.   The "Detail of Taxes and other charges" included on page four of Rasschaert's September 2011 bill included the following amounts:

| Federal Tax | $0.03 |
|---|---|
| Federal USF Recovery Charge | $0.94 |
| 911/Telecom | $0.92 |
| HSI Surcharge | $1.00 |
| **Total Taxes and Other Charges** | **$2.89** |

105.   Presumably, the total charge amount of $57.88 on Rasschaert's September

2011 bill was the result of his being charged $54.99 for his standalone DSL service, as he had in previous months, as well as $2.89 for the taxes, fees and surcharges outlined above. However, from viewing the bill alone, there is no way to tell what the basis is for the total charge.

106. Viewing the "My Current Services" portion of Frontier's website for Rasschaert's account sheds no further light on the question of the origin or nature of Rasschaert's current charges as the charges detailed there bear little relation to those on Rasschaert's paper bill.

107. The on-line statement of "current services" for Rasschaert's account shows a completely different set of currently applicable charges and services.

108. Specifically, Frontier's website indicates that Rasschaert is being charged the following amounts for the following items per month, (Ex. 9):

| | |
|---|---|
| Standalone HSI Max | $26.48 |
| Access Line-Flat SAVE! | $22.01 |
| End User Access Line Surcharge | $6.50 |
| 911, TELERELAY, & TAP Surchg | $0.92 |
| **Total Monthly Charges** | **$55.91** |

109. Regardless of whether Rasschaert's current bill is $57.88 or $55.91, he is still being charged fees and charges which do not rightfully apply to his account.

110. To the extent the charges imposed on Rasschaert actually include any amount for an "end user access line surcharge," those charges are also in violation of the law and any applicable terms and conditions of service as no end user access line

17

surcharge may be imposed on a customer who only receives Internet service.

111.    Frontier is aware of the fraudulent nature of its conduct and made these misrepresentations knowingly.    Frontier is well aware of the distinction between information services and telecommunications services, and is aware that the latter are not subject to state/local taxation or USF contributions.  For example, in its most recent 10-K filing with the SEC, Frontier Corporation noted "At the federal level, the FCC generally exercises jurisdiction over facilities and services of common carriers, such as our company, **to the extent those facilities are used to provide, originate or terminate interstate or international telecommunications services**." (emphasis added).

112.    Frontier has also participated in, and commented on, various aspects of the FCC's conduct and proposed rules, and as a sophisticated and large telecommunications company, employs full time staff and legal counsel to assist it in complying with the FCC's regulations and orders, as well as full time staff and legal counsel to assist it in complying with various tax and accounting laws.  It is inconceivable that Frontier would be unaware of the Internet Tax Freedom Act and/or unaware of the FCC's consistent policy refusing to regulate and/or impose restrictions on information services.

## CLASS ACTION ALLEGATIONS

113.    Plaintiffs re-allege and incorporate by reference the above paragraphs as if fully set forth herein.

114.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23.

115.    Plaintiffs seek to certify two classes.

18

116.    First, the "**Internet Charges and Fees Class**" is defined as: All individuals anywhere in the United States who have received Internet service from Frontier and who:

1)  Were charged an HSI Surcharge; and/or
2)  Were charged USF Fees in connection with any portion of their bills other than the interstate telecommunications portion; and/or
3)  Were charged 911 fees, TAP, Telerelay or other similar state telephone related fees in connection with their receipt of Internet service.

117.    The Internet Charges & Fees Class as defined above consists of a subclass of Frontier customers who have no written contract with Frontier, and who did not affirmatively assent to Frontier's Terms and Conditions at the inception of a contractual period, and is represented by Plaintiffs Gedrose and Short ("Phone Sign-up Subclass").

118.    The Internet Charges & Fees Class as defined above consists of a subclass of Frontier customers who affirmatively accepted Frontier's Terms and Conditions at the inception of a contractual period, and is represented by Plaintiffs Schiller and Schuna ("The Terms & Conditions Subclass").

119.    The Internet Charges & Fees Class as defined above consists of a subclass of Frontier customers who have received Internet services in the State of Minnesota and is represented by Plaintiffs Rasschaert, Risch, Schuna, Gedrose, and Justin Short ("The Minnesota Subclass").

120.    The Internet Charges & Fees Class as defined above consists of a subclass of Frontier customers who have received Internet services in the State of New York and is represented by Plaintiff Schiller ("The New York Subclass").

121.    Plaintiffs reserve the right to further divide the Classes into state or service

19

combination subclasses, as appropriate.

122.     The individuals in the Classes are so numerous that joinder of all members is impracticable.

123.     There are questions of law and fact common to the Classes that predominate over any questions solely affecting individual members, including, but not limited to:

a.     Whether Frontier breached its contracts;

b.     Whether Frontier committed fraud;

c.     Whether Frontier's conduct violates Minnesota's Consumer Fraud Act;

d.     Whether Frontier's conduct violates Minnesota's Uniform Deceptive Trade Practices Act;

e.     Whether Frontier's conduct violates Minnesota's False Statements in Advertising Act;

f.     Whether Frontier's conduct violates New York's Deceptive Acts and Practices law;

g.     Whether Frontier's conduct results in unjust enrichment;

h.     The nature of Frontier's policies and practices as they relate to the collection of HSI fees;

i.     The nature of Frontier's policies and practices as they relate to the collection of USF Fees;

j.     The nature of Frontier's policies and practices as they relate to the collection of 911 fees, TELERELAY and TAP fees; and

k.     The proper measure of damages owed to Plaintiffs and members of the Classes.

124.     Plaintiffs' claims are typical of those of the Classes.  Plaintiffs, like other

members of the Internet Charges & Fees Class, were improperly subjected to fees and surcharges that were misrepresented as being imposed by the government but in fact were not.

125.    Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in consumer class action litigation.

126.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for Frontier.

127.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Frontier has acted on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as wholes.

128.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other methods for the fair and efficient adjudication of this action.

129.    Plaintiffs intend to send notice to all members of the Classes to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

## COUNT ONE

**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass)**

130.    The above paragraphs are incorporated by reference as if fully set forth herein.

131.    Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass contracted with Frontier for Internet service without entering into a written contract or otherwise assenting to Frontier's written Terms and Conditions.

132.    Under these contracts, the parties continued doing business for a specified term, and faced an early termination fee if the customer wished to cease service before the end of the term.

133.    In agreeing to provide Internet services, Frontier owed Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass an implied duty of good faith and fair dealing.

134.    At the time of formation, Frontier did not inform Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass of its intent to impose an "HSI Surcharge."

135.    Nonetheless, after entering into a binding term contract, Frontier imposed "HSI Surcharges" on Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass.

136.    Frontier breached its contract with Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass through imposing an undisclosed and unauthorized surcharge, which had the effect of raising the price of service above the price to which the parties agreed.

137.    Frontier also breached its duty of good faith and fair dealing by dishonestly imposing unlawful, deceptive and/or misleading HSI surcharges on customers in bad faith.

138.    Frontier's conduct had the effect of depriving Plaintiffs Gedrose and Short

and the Phone Sign-Up Subclass of receiving the benefits they were supposed to receive pursuant to their agreements with Frontier, namely the receipt of services at the agreed-upon price.

139.    Plaintiffs Gedrose and Short and the Phone Sign-Up Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT TWO

### BREACH OF CONTRACT
**(On Behalf of Plaintiffs Schiller and Schuna and the Terms & Conditions Subclass)**

140.    The above paragraphs are incorporated by reference as if fully set forth herein.

141.    Plaintiffs Schiller and Schuna, and the Terms & Conditions Subclass affirmatively accepted Frontier's standard Terms and Conditions of Service.

142.    At all relevant times, those Terms and Conditions have specified that customers are responsible for paying only the base price, plus any "taxes imposed" and "surcharges, fees and assessments" imposed in connection with the service that such customers receive.  The Terms and Conditions do not mention Frontier's HSI Surcharge.

143.    Under this language, Frontier agreed to only charge its customers for those taxes "imposed," which excludes taxes prohibited, and/or not imposed under state and federal law.

144.    In direct violation of these Terms and Conditions, Frontier required Plaintiffs Schiller and Schuna and the Terms & Conditions Subclass to pay fees, including the USF Fee, 911 Fees and TAP/TELERELAY fees, and the HSI surcharge,

that were not imposed by law, and thus not contemplated by the Terms and Conditions or Frontier's tariffs.

145.   Frontier's contractual agreements are subject to an implied duty of good faith and fair dealing.

146.   Frontier breached this duty of good faith and fair dealing by dishonestly imposing undisclosed, unlawful, deceptive, and/or misleading charges on customers in bad faith.

147.   Frontier's conduct had the effect of depriving Plaintiffs Schiller and Schuna and the Terms & Conditions Subclass of receiving the benefits they were supposed to receive pursuant to their agreements with Frontier.

148.   Plaintiffs Schiller and Schuna and the Terms & Conditions Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

**COUNT THREE**

**FRAUD**
**(On Behalf of Plaintiffs and the Internet Charges & Fees Class)**

149.   The above paragraphs are incorporated by reference as if fully set forth herein.

150.   Plaintiffs were subject to misrepresentations by Frontier that were made to them in Frontier's advertisements, on their bills, on their online services descriptions, and during their initial calls with Frontier's representatives.  Specifically:

      a.    Plaintiff Rasschaert's bills from Frontier, in combination with the explanations of charges offered on Frontier's website,

24

indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies."  (Exs. 1, 8.)   This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body;

b.      Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Frontier was subject to a USF recovery charge when in fact it was not because his bills contained no portion which was attributable to interstate telecommunications;

c.      Plaintiff Rasschaert's bills from Frontier indicated that the transaction he engaged in with Frontier was subject to 911 fees, TAP, Telerelay and 911/Telecom charges when in fact it was not because Rasschaert did not receive any service from Frontier which was "capable of originating a 911 emergency telephone call" pursuant to the requirements of Minn. Stat. § 403.11 subd. 1; and

d.      Frontier misrepresented the total price of Plaintiff Rasschaert's service as well because it represented that the total monthly service price would be $54.99, when in reality, the total monthly service price was $55.99, as a result of Frontier's imposition of the HSI surcharge.   This misrepresentation was included in the on-line advertisements Rasschaert viewed before calling customer service, all of which indicated that the total service charge for stand-alone high speed DSL Internet service was $54.99.

151.   Plaintiff Risch was subject to misrepresentations by Frontier.  Specifically:

a.      Plaintiff Risch's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies."   (Exs. 2, 8.)   This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body;

b.      The customer service representative who spoke to Plaintiff Risch when he signed up for Internet service misrepresented

25

the total price of Plaintiff Risch's service because that person represented that the total monthly service price would be less than it actually was.

152.   Plaintiff Schiller was subject to misrepresentations by Frontier. Specifically: Plaintiff Schiller's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies." (Exs. 3, 8.) This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body; and

153.   Plaintiff Schuna was subject to misrepresentations by Frontier. Specifically:

a.   Plaintiff Schuna's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies." (Exs. 4, 8.) This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body; and

b.   The customer service representative who spoke to Plaintiff Schuna's son when he signed her up for Internet service misrepresented the total price of Plaintiff Schuna's service as well because that person did not disclose that the HSI surcharge would be added on to the stated price of the service.

154.   Plaintiff Gedrose was subject to misrepresentations by Frontier. Specifically:

a.   Plaintiff Gedrose's bills from Frontier, in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by

26

state, local and/or federal requirements" or was "authorized by local, state or federal agencies."  (Exs. 5, 8.)  This explanation is not true because the HSI surcharge is neither mandated nor specifically authorized by any agency or government body;

b.  Plaintiff Gedrose's bills from Frontier indicated that the transaction he engaged in with Frontier Plaintiff Gedrose's bills from Frontier indicated that the transaction he engaged in with Frontier was subject to a USF recovery charge when in fact it was not because his bills contained no portion which was attributable to interstate telecommunications;

c.  Plaintiff Gedrose's bills from Frontier indicated that the transaction he engaged in with Frontier was subject to 911 fees, TAP, Telerelay and 911/Telecom Charges when in fact it was not because Gedrose did not receive any service from Frontier which was "capable of originating a 911 emergency telephone call" pursuant to the requirements of Minn. Stat. § 403.11 subd. 1; and

d.  Frontier misrepresented the total price of Plaintiff Gedrose's service as well because it represented to him during the phone call when he initiated service that the total monthly service price would be $54.99, when in reality, the total monthly service price was $55.99, as a result of Frontier's imposition of the HSI surcharge.  This misrepresentation was included in the on-line advertisements Plaintiff Gedrose viewed before calling customer service, all of which indicated that the total service charge for stand-alone high speed DSL Internet service was $54.99.

155.   Plaintiff Short was subject to misrepresentations by Frontier.  Specifically:

Plaintiff Short's bills from Frontier, in combination with the explanations of charges

offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated

by state, local and/or federal requirements" or was "authorized by local, state or federal

agencies."  (Exs. 6, 8.)  This explanation is not true because the HSI surcharge is neither

mandated nor specifically authorized by any agency or government body.

156.    The    above    misrepresentations    were    typical    of    the    type    of misrepresentations made by Frontier to other class members.  Specifically:

a.    Members of the Internet Charges & Fees Class received bills from Frontier, which in combination with the explanations of charges offered on Frontier's website, indicated that the "HSI Surcharge" was either "mandated by state, local and/or federal requirements" or was "authorized by local, state or federal agencies."  (Ex. 8.)  This explanation is not true because the HSI surcharge is neither mandated by any state local or federal requirement, nor is it specifically authorized by any agency or government body;

b.    Members of the Internet Charges & Fees Class, who viewed Frontier's online advertisements or who signed up for service based    on    Internet    advertisements    were    subject    to misrepresentations about the price of Frontier's high speed Internet services because the monthly service prices that were represented and quoted to them did routinely did not include the amount of the HSI surcharge, despite the fact that the charge was routinely imposed on customers and, by any reasonable understanding of the term "price" or "monthly service charges," should have been included in the quotes and advertisements    regarding    Frontier's    prices    and    charges. These misrepresentations were included in Frontier's on-line advertisements,    yet    none    of    Frontier's    ads    included    this surcharge in the advertised price;

c.    Internet Charges & Fees Members of the Internet Charges & Fees Class received bills from Frontier indicating that the transactions they engaged in with Frontier were subject to a USF recovery charge when in fact the transactions were not subject to such charges because the charges were levied on portions of their bills which were not attributable to interstate telecommunications; and

d.    Members of the Internet Charges & Fees Class received bills from Frontier indicating that the transactions they engaged in with Frontier were subject to 911 fees, TAP, Telerelay and 911/Telecom Charges when in fact they were not subject to these charges because many Class members did not receive any service from Frontier which were met the requirements

for the collection of such charges.[3]

157.   Frontier's misrepresentations were knowing and intentional.

158.   In continuously paying their bills, Plaintiffs and the Internet Charges & Fees Class reasonably and justifiably relied on Frontier's intentional misrepresentations about the amounts they owed and about the nature of the charges that they were required to pay.

159.   As a direct result of Frontier's unlawful actions, Plaintiffs and the Internet Charges & Fees Class were injured and are therefore entitled to relief as set forth below.

---

[3] Ala. Code §§ 11-98-5, 11-98-1 (allowing collection of fees from any person "who is provided exchange telephone service"); Ariz. Rev. Stat. Ann. §§ 42-5251, 42-5152 (applying to persons with telecommunication services that use 911 for emergency calls); Cal. Rev. & Tax. Code § 41136 (applying to intrastate telephone communication services and VoIP services); Fla. Stat. § 365.172, (collecting fees from voice communication services "which actually provide[] access to E911 services"); Ga. Code Ann. § 46-5-134 (imposing fee on telephone subscriber of any telephone service in an area served by the 911 emergency system); Idaho Code §§ 31-4802, 31-4804 (charging fee to users of a telephone line or equivalent "that provides access to a consolidated emergency communications system"); Iowa Code §§ 34A.2, 34A.7 (applying the fee to exchange access lines that have "the ability to access dial tone and reach a public safety answering point); Ind. Code Ann. §§ 36-8-16-3, 36-8-16-5 (applying fees to users of telephone access servicers); Minn. Stat. § 403.11 (applying fees to users of telecommunication services that are capable of originating a 911 emergency call and basing fee on number of telephone lines); Mont. Code Ann. § 10-4-202(1) (expressly excluding any services that the state is prohibited from taxing under federal or state law); Neb. Rev. Stat. § 86-457(1) (charging fee on "active telephone numbers"); N.M. Stat. Ann. §§ 63-9D-3C, 63-9D-5 (charging fee for telephone service "has the capability to reach the local public safety agencies by dialing 911"); N.Y. County Law §§ 301, 303 (charging fee to telephone and VoIP services); N.C. Gen. Stat. Ann. § 62A-43(a) (applying fee to "active voice communications service connection that is capable of accessing the 911 system."); 35 Pa. Cons. Stat. Ann. § 5307(a)(1) (charging fee to suppliers of "local exchange telephone service"); Tenn. Code Ann. § 7-86-103(16), § 7-86-108(a)(1)(A) (charging fee to telecommunication users who are provided 911 services); Wash. Rev. Code Ann. §§ 82.14B(4), (11), 82.14B.040(1) (limiting application of fee to services "which can directly access a public safety answering point" or "telephone service line which connects to a subscriber's main telephone").

## COUNT FOUR

**MINNESOTA CONSUMER FRAUD ACT**
**Minn. Stat. § 325F.69, *et seq.***
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Subclass)**

160.    The above paragraphs are incorporated by reference as if fully set forth

herein.

161.    Minn. Stat. § 325F.69, subd. 1 provides:

The act, use, or employment by any person of any fraud, false pretense,
false promise, misrepresentation, misleading statement or deceptive
practice, with the intent that others rely thereon in connection with the sale
of any merchandise, whether or not any person has in fact been misled,
deceived, or damaged thereby, is enjoinable as provided herein.

162.    Frontier engaged in and continues to engage in fraud, misrepresentations,

false promises and misleading statements as set forth in Paragraphs 150–155 herein.

163.    Frontier engaged in such misrepresentations with the intent that the

Minnesota Plaintiffs and the Minnesota Subclass would rely on such misrepresentations

in connection with the purchase of services from Frontier, and with the intention that they

would pay the misrepresented and misleading charges.

164.    The vindication of the Minnesota Plaintiffs' claims and the claims of the

other Minnesota Subclass members will benefit the public at large.    Frontier's

advertisements were broadly and publicly disseminated on the Internet.    Frontier's

practice of misrepresenting that fees and surcharges are imposed by or authorized by a

government agency implies that charges are higher than they actually are, and there is a

significant public interest in ensuring that companies do not cloak their own pricing

decisions in the garb of governmental authority.    There is also a significant public interest

in ensuring that Frontier is accurately advertising the price of its Internet service to the public.  Finally, the interests of thousands of Minnesota consumers are implicated in this action.

165.   The Minnesota Plaintiffs and the Minnesota Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT FIVE

**MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**Minn. Stat. § 325D.44,** *et seq.*
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Subclass)**

166.   The above paragraphs are incorporated by reference as if fully set forth herein.

167.   Minn. Stat. § 325D.44, subd. 1, provides, in relevant part:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: . . .
(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another; . . .
(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . .
(9) advertises goods or services with intent not to sell them as advertised; . . .
(13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

168.   In misrepresenting that its surcharges were governmentally imposed Frontier caused a likelihood of confusion or of misunderstanding and misrepresented that certain charges were approved by the government when they were not, in violation of the above provisions.

169.    Frontier also advertised goods or services with intent not to sell them at the advertised prices, and made false or misleading statements concerning its prices, as described above.

170.    Frontier's representations regarding USF contributions, 911/TELECOM/TAP fees and the so-called HSI Surcharge are likely to (and did) confuse its customers and create a misunderstanding that customers were legally required to remit payment for such charges, dissuading them from challenging the fees' legitimacy.

171.    Frontier engaged in this deceptive conduct willfully and knowingly.

172.    Minn. Stat. § 325F.71, subd. 2 imposes a supplemental civil penalty on persons whose conduct constitutes deceptive trade practice, consumer fraud or false advertising when that alleged "conduct is perpetrated against one or more senior citizens or disabled persons[.]"

173.    Plaintiff Schuna is a "senior citizen" within the meaning of the Senior Citizens and Disabled Persons statute because she is over the age of 62.

174.    Plaintiff Schuna and other senior citizen members of the Minnesota Subclass, because of their age, are more vulnerable to Frontier's deceptive and misleading conduct and suffered economic damages as a result of such conduct.

175.    Frontier engaged in this deceptive conduct willfully and knowingly.

176.    Frontier knew or should have known that their conduct was directed to one or more senior citizens.

177.    The Minnesota Plaintiffs and the Minnesota Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

<u>**COUNT SIX**</u>

**MINNESOTA FALSE STATEMENTS IN ADVERTISING ACT**
**Minn. Stat. § 325F.67,** *et seq.*
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Subclass)**

178.   The above paragraphs are incorporated by reference as if fully set forth herein.

179.   Minn. Stat. § 325F.67 makes it unlawful for any person or business to sell to the public any good or service, or "induce the public in any manner to enter into any obligation relating thereto," by making, publishing, disseminating, circulating, or placing before the public, directly or indirectly, "any advertisement of any sort . . . [that] contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading[.]"

180.   Frontier violated Minn. Stat § 325F.67 by making false and misleading representations about the terms upon which it would offer service, including but not limited to making false representations to the Minnesota Plaintiffs and the Minnesota Subclass about the price for the services they would receive and about the nature of the taxes and surcharges that would be imposed on them.

181.   Pursuant to Minn. Stat. Minn. Stat. § 8.31, subd. 3a, the Minnesota Plaintiffs and the Minnesota Subclass may pursue a private cause of action based on Frontier's violation of § 325F.67.

182.   The vindication of the Minnesota Plaintiffs' claims and the claims of the Minnesota Sublass will benefit the public at large.  There is a significant public interest in discouraging false, deceptive and misleading advertising.  Frontier has already acquired

more than 200,000 Minnesota access service customers, and Frontier broadly and publicly disseminates its advertising on the Internet, making it likely that thousands more Minnesota residents will fall victim to Frontier's deceptive and misleading advertising. There is also a significant public interest in ensuring that the rates charged by Frontier equal those included in its filed tariffs.

183.    The Minnesota Plaintiffs and the Minnesota Subclass have suffered damages and monetary loss as a result of Frontier's false, deceptive and misleading advertising.

184.    The Minnesota Plaintiffs and the Minnesota Subclass were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT SEVEN

### DECEPTIVE ACTS AND PRACTICES
### N.Y. Gen. Bus. Law § 349, *et seq.*
### (On Behalf of Plaintiff Schiller the New York Subclass)

185.    The above paragraphs are incorporated by reference as if fully set forth herein.

186.    The New York General Law section 349(a) declares unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

187.    By its actions as alleged herein, Frontier is engaged in consumer-oriented acts and practices.

188.    In this capacity, Frontier has deceived and misled New York telephone and/or Internet service consumers in a material way.

34

189.    Frontier includes a variety of unauthorized, unlawful, and misleading charges on its bills in an attempt to increase the overall cost for telephone or Internet service beyond its advertised prices.

190.    Frontier's illegitimate charges include charging an "HSI Surcharge" with no explanation of what the charge is and in the absence of any contractual or regulatory authority to impose such a charge; and

191.    These representations misleadingly suggest to prospective customers that these fees, surcharges, and other additional charges are legitimate, and that they are required or authorized by some government or regulatory body.

192.    The deceptive and misleading character of these charges is magnified by Frontier's website, which deceptively leads its customers to believe that all of the various fees appearing on their bills are either mandated or authorized by some governmental entity when, in fact, they are not so authorized, and some are even expressly prohibited.

193.    Frontier's advertisements for new service are similarly misleading in that they state monthly service in terms which are advertised as excluding only "taxes and governmental surcharges, if any."

194.    Frontier does not disclose the self-imposed nature of its HSI surcharges in its advertisements for stand-alone high speed Internet service.  In fact, the first time that customers learn of these charges is when they receive their bill.

195.    Frontier engages in this false, deceptive, and misleading conduct with the intent to lure prospective customers into signing or maintaining service with Frontier.

196.    Frontier knew, or in the exercise of reasonable care should have reasonably

known, that these statements would be misleading and deceptive to the reasonable consumer.

197.   A reasonable consumer would likely be deceived by these false, misleading, and deceptive charges, and would likely be induced into contracting with and/or remitting payment to Frontier because of these statements.

198.   Plaintiff Schiller and the New York Class were injured by Frontier's unlawful actions and are therefore entitled to relief as set forth below.

## COUNT EIGHT

### UNJUST ENRICHMENT
### In the Alternative
### (On Behalf of Plaintiffs and the Internet Charges & Fees Class)

199.   The above paragraphs are incorporated by reference as if fully set forth herein.

200.   To the extent Frontier's conduct was not circumscribed by contract, and/or to the extent any contractual provisions offered in Frontier's defense are found to be unconscionable, or otherwise unenforceable, Frontier received an impermissible and unearned financial gain by imposing unauthorized fees on their customers.

201.   The unauthorized, deceptive, and misleading HSI surcharges imposed on Plaintiffs and the Internet Charges & Fees Class provided them with no additional benefit, and Frontier charged Plaintiffs and the Internet Charges & Fees Class without their consent or any contractual or governmental authority.

202.   Frontier systematically and pervasively charged other members of the Class these unauthorized, deceptive and misleading charges, and as a result was further unjustly

enriched.

203.    To the extent any fees purported to have been collected on behalf of the government were not actually remitted to the government, Frontier has been unjustly enriched.

204.    It would be inequitable for Frontier to retain profits, benefits, and other compensation from the practices alleged herein.  Thus, Plaintiffs and the Internet Charges & Fees Class are entitled to restitution and other appropriate relief.

## PRAYER FOR RELIEF

205.    WHEREFORE, Plaintiffs, on behalf of themselves and the putative Classes, pray for judgment against Defendants as follows:

A.    Certifying this action as a Class action on behalf of the putative Classes;

B.    Designating Plaintiffs as Class Representatives;

C.    Appointing Nichols Kaster, PLLP, as Class Counsel and lead Counsel for the Classes;

D.    Declaring that the practices complained of herein are unlawful;

E.    Awarding actual damages and restitution;

F.    Awarding treble damages; civil penalties, and statutory damages;

G.    Awarding pre-judgment and post-judgment interest as provided by law;

H.    Awarding attorneys' fees and costs, 47 U.S.C. § 206; Minn. Stat. § 8.31, subd.3a; Minn. Stat. § 325D.45, subd. 2; Minn. Stat. § 325F.71, subd. 4; N.Y. C.P.L.R. 8101; N.Y. Bus. Law. §349(h); and

I.   Granting such equitable relief as the Court may deem just and proper, including but not limited to injunctive relief requiring Defendants to cease their unlawful practices; and

J.   Awarding any further and additional relief to which Plaintiffs and the putative Classes may be entitled.

## DEMAND FOR JURY TRIAL

206.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Respectfully Submitted,

Dated:                                          NICHOLS KASTER, PLLP

_____
E. Michelle Drake (#0387366)
Rebekah L. Bailey (#0389599)
Anna Prakash (#0351365)
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone (612) 256-3200
Fax (612) 338-4878
drake@nka.com
bailey@nka.com
aprakash@nka.com

NICHOLS KASTER, LLP
Matthew C. Helland (#346214)
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Telephone (415) 277-7235
Tax (415) 277-7238
Helland@nka.com

ATTORNEYS FOR PLAINTIFFS