## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Clint Rasschaert, Ed Risch, Pamela Schiller, Verna Schuna, Eric Gedrose, and Justin Short, individually and on behalf of the putative Classes, | Court File No. 11-cv-02963 DWF/JSM |
| Plaintiffs, | |
| v. | |
| Frontier Communications Corporation, Frontier Communications of America, Inc., Frontier Communications of Minnesota, Citizens Telecommunications Company of Minnesota, LLC, and Citizens Telecommunications Company of New York, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND PLAINTIFF INCENTIVE AWARDS

In connection with the parties' Joint Motion for Final Approval of the Settlement, Plaintiffs move the Court to approve Class Counsel's requested fees and costs. This motion also requests approval of incentive awards to the Named Plaintiffs. Plaintiffs' requests should be granted for several reasons. First, this settlement is a great achievement for the Class; individual Class Members would not have been able to privately seek a refund of wrongfully collected taxes from the Minnesota Department of Revenue and this settlement avoids the need for individuals to file individualized claims for small amounts. Second, the potential recovery—$9,000,000—is a substantial sum

obtained on behalf of the Class.  If the refund request is granted in full, Class Members will have recovered 100% of their damages, plus interest.  Finally, there has only been one prior case venturing into this complicated area of law.  Class Counsel represented the Class on a contingent-fee basis, thus assuming the risk and the costs of litigating these claims and facing the real possibility of recovering nothing.  The risks undertaken by Class Counsel in filing this case were substantial both in light of the paucity of applicable legal authority and the risk that Class Members could have been compelled to arbitrate their tax claims on an individual basis.  Given the Court's post-settlement ruling on the arbitration issue (*Rasschaert v. Frontier Commcn's Corp.* ("Rasschaert II"), 2013 WL 1149549, at *5-8 (D. Minn. Mar. 19, 2013)) Class Counsel's achievement of a quick settlement conferred a tremendous benefit on the Class.

The Settlement Agreement allows Class Counsel to request payment of attorneys' fees in the amount of thirty-three percent (33%) of the total Escrow Fund and costs incurred in this litigation.  Class Counsel, by this motion, makes such a request for payment of attorneys' fees and costs in the amount of thirty-three percent (33%) of the total Escrow Fund.  Class counsel is not seeking an additional reimbursement for costs incurred in this litigation. Frontier takes no position on this request.  For the reasons set forth below, Plaintiffs respectfully request that the Court grant Plaintiffs' motion.

# I.   THE COURT SHOULD APPROVE AN AWARD OF ONE-THIRD OF THE COMMON FUND.

In light of the challenges posed and the risks taken in pursuing this litigation on a contingent-fee basis, and then successfully obtaining a significant recovery on behalf of

the Class, the requested fees are a reasonable award.  "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law . . . ."  Fed. R. Civ. P. 23(h).  Here, the parties' settlement, preliminarily approved by the Court, provides for Class Counsel to petition the Court for one-third of the total Escrow Fund as an award of attorneys' fees.  (ECF. No. 88 § 12.)  In addition, the Court-approved Notice that was sent to Class Members stated that Class Counsel could seek an award of 33% to be paid from the Escrow Fund.  (*Id.*, Exs. 1-2.)  The percentage sought is well within the range of reasonableness and should be approved.

"The award of attorney's fees in a class action settlement is committed to the discretion of the district court."  *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105 at *7 (D. Minn. Sept. 2006) (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)).  Courts typically calculate fees by one of two methods: (1) the lodestar method (i.e., multiplying the hours reasonably expended by a reasonable hourly rate and adjusting by a multiplier); or (2) awarding fees as a percentage of the total settlement amount.  *Id.* at *7 (citing *Petrovic*, 200 F.3d at 1157 and *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 244 (8th Cir. 1996)).

Here, Class Counsel requests that the Court apply the commonly-used and "well-established" percentage-of-the-fund method.  *See Jensen v. Minnesota Dept. of Human Services*, 2011 WL 6178845, *2 (D. Minn. Dec. 5, 2011) (Frank, J.); *Yarrington v. Solvay Pharms. Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984) and *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005)).  The percentage-of-the-fund method is

especially appropriate here, because Plaintiffs' Counsel's fee will rise and fall with the amount of the refund.  Accordingly, Counsel's interests are directly aligned with the class in the pursuit of the refund.  When considering a reasonable percentage of the common fund to award as attorneys' fees, the lodestar method can serve as a cross-check.  *See Petrovic*, 200 F.3d at 1157.

### A.  Class Counsel Is Requesting a Reasonable Percentage of the Recovery.

This District has used several factors to guide inquiries into the reasonableness of requested fees: "(1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel was exposed, (3) the difficulty and novelty of the legal and factual issues of the case, (4) the skill of the lawyers, both plaintiffs' and defendants', (5) the time and labor involved, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases." *Yarrington*, 697 F. Supp. 2d at 1062.  Analysis of these factors supports the requested award.

### 1.  Class Counsel Achieved a Substantial Settlement on Behalf of Plaintiffs in This Litigation.

When determining the reasonableness of attorneys' fees, "the most critical factor is the degree of success obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Wheeler v. Mo. Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003); *In re Xcel*, 364 F. Supp. 2d at 994.  Here, Class Counsel achieved a remarkable settlement, whereby the Class has the opportunity to recover all of the taxes they were charged plus interest, while Frontier bears the costs of preparing the refund applications to the Minnesota Department of Revenue.  The recovery is especially significant because the statutory procedure for

recovering erroneously-collected sales taxes would likely bar all individual class members from recovering sales tax payments by filing individual refund requests with the Department of Revenue.  *See* Minn. Stat. § 289A.50 Subd. 2a. (requiring, *inter alia*, that "the purchaser is currently registered or was registered during the period of the claim, to collect and remit the sales tax or to remit the use tax").   Accordingly, absent an agreement from Frontier to file for a refund, Class Members' only chance at individual recoveries would have been through filing individual lawsuits.  Given the relatively small per-person refund amounts at stake, this Court's recent ruling on the enforceability of Frontier's arbitration provision (Rasschaert II, 2013 WL 1149549, at *5-8), and the risks involved in bringing these claims (*see* ECF Nos. 46, 56, 65), it is unlikely that Class Members would, or could find counsel to represent them individually in arbitration proceedings related to this issue.  (Helland Decl. ¶ 3.)  In this case, the settlement has achieved what individuals would likely be unable to achieve on their own--getting an agreement from Frontier, as the third-party collector, to file for refunds of the taxes covered by this settlement.

Moreover, in addition to this monetary relief, Class Members who are still Frontier customers benefit from Frontier's agreement to cease collecting Minnesota sales taxes on Internet access services.  In negotiating the settlement, Class Counsel considered the risks associated with a lengthy trial, as well as likely appeals and post-trial motions.  As an alternative to this path of uncertain litigation, the proposed settlement confers substantial and immediate benefits to the Plaintiffs.

### 2.   Class Counsel Undertook Considerable Risk in Litigating this Case.

Class Counsel took this case on a contingency fee basis, risking the possibility that they would recover nothing for their time and resources spent litigating the case. (Helland Decl. ¶ 4.)  At the time the Complaint was filed, there was no guarantee that settlement would be reached or that the outcome of litigation would be successful.  (*Id.*) There were two potential impediments to recovery that made recovery incredibly challenging.  The first was the purported arbitration clause in Frontier's customer related documents.  In light of this Court's ruling to compel arbitration with regard to Plaintiffs' residual claims (Rasschaert II, 2013 WL 1149549, at *5-8), the danger of Class Counsel not being able to recoup the expenses they put forward to litigate this case was very real. Rather than being a case where Counsel faced a high likelihood of recovery from the outset, Counsel needed to adeptly litigate the case in order to secure any recovery for the Class.

Second, even absent the arbitration issue, the paucity of case law on the merits of Plaintiffs' claims further highlights that success in this case—and, consequently, Class Counsel's ability to recover fees—was not a forgone conclusion.  (*See infra* Sec. 3, *see also* ECF Nos. 46, 56, 65.)  This is notable and weighs in favor of the requested award. *See In re Xcel Energy*, 364 F. Supp. 2d at 994 ("Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees.").

### 3.   The Legal and Factual Issues are Difficult and Complex.

For the reasons laid out in the accompanying Motion for Final Settlement Approval and *In re AT&T Mobility Wireless Data Services Sales Tax Litig.* 789 F. Supp.

2d 935, 959 (N.D. Ill. 2011), the legal and factual issues in this case are complex and difficult, and thus support the requested fee award.

First, *In re AT&T Mobility* is the only other case of which Plaintiffs are aware that has dealt with claims similar enough to be of any assistance. Second, Frontier has several defenses, including contractual arbitration provisions that could have barred Plaintiffs' recovery in court. *See Id.* at 962 (citing *Fensterstock v. Educ. Fin. Partners*, 611 F.3d 124, 129 (2d Cir. 2010)). This Court's ruling that the arbitration provisions compel the Plaintiffs to arbitrate their non-settling claims reinforces the quality of Counsel's work to achieve this settlement. Finally, the actual recovery process itself is difficult and complex. Maneuvering the state refund statutes to achieve the maximum recovery for the Tax Settlement Class under Plaintiffs' theory of recovery is challenging and it supports the requested attorneys' fees award.

> **4. Class Counsel is Highly Skilled and Experienced in Complex Class Action Litigation.**

The skill and experience of both parties' counsel supports the requested award. The qualifications of Class Counsel are set forth in the accompanying Declaration of Matthew Helland. (Helland Decl., Ex. A.) Nichols Kaster, PLLP has experience in nationwide class action litigation in consumer and employment law cases. The firm's resume is attached as Exhibit A. Moreover, Frontier is a formidable publicly traded

company with hundreds of millions of dollars in resources[1], and is represented by one of the largest international defense firms in the world.[2]   Class Counsel's experience and recognition of the importance of reaching a settlement in this matter was essential to the successful prosecution of Plaintiffs' claims, and to the settlement reached, in light of the experience and skill of Defense Counsel and their willingness to mount a vigorous defense.  These facts weigh in favor of awarding the requested fees.

### 5.  Class Counsel Expended Extensive Time and Effort Litigating this Case on Behalf of Plaintiffs.

Since this case was filed, Class Counsel and their support staff have spent over 1,364 hours litigating this case and working towards settlement. Specifically, over the course of the last seventeen months, Class Counsel and their support staff have, among other things, (1) initially investigated potential claims in this case; (2) drafted the Complaint and several amendments thereto; (3) met with the Named Plaintiffs in person and by phone numerous times; (4) briefed the viability of the tax claims in response to a motion to dismiss (ECF No. 56) ; (5) met and spoken with defense counsel on numerous occasions, both in person and by phone; (6) drafted discovery in advance of mediation; (7) prepared for and attended mediation; (8) performed detailed damage calculations; (9) researched and built their arguments for class certification; (10) conducted informal fact

---

[1] Listed on NYSE as FTR and reporting $5.01 billion in sales in the last 12 months. http://investing.money.msn.com/investments/stock-price?symbol=US:FTR&ocid=en-us_bingiaquotebtn.

[2] In 2012, Mayer Brown was the 14th highest grossing law firm in the United States, http://www.americanlawyer.com/PubArticleTAL.jsp?id=1202549382505, and 19th in the world, http://www.americanlawyer.com/PubArticleTAL.jsp?id=1202571228982.

discovery; (11) reviewed the refund filing requests; (12) consulted with Frontier's tax counsel about numerous aspects of the refund process; (13) hired expert tax consulting counsel to advise Class Counsel on how best to position Frontier's claim for refund and to provide advice with respect to the refund process. (Helland Decl. at ¶ 5.) Class Counsel's work on the Tax Settlement portion this case to date has resulted in a current lodestar of approximately $407,000 and costs of approximately $17,000. (*Id.*)

But this is only half of the story—Class Counsel has more work ahead. Class Counsel continues to be involved in the ongoing attempt to recover refunds from the Minnesota Department of Revenue. They are committed to appeal Minnesota Department of Revenue refusals to refund taxes if necessary. Class Counsel has also retained outside tax counsel to assist it in the refund process; Class Counsel is committed to pay for this outside expertise regardless of whether any refund occurs and regardless of whether Class Counsel ultimately receives any fee award whatsoever. (Helland Decl. ¶ 6.) Class Counsel dedicated extensive time and put forth great effort into this litigation, the work is not yet done, the recovery remains uncertain, and Class Counsel is committed to continuing to expend resources and time in order to pursue relief for the Class. Moreover, if fees are awarded on a percentage-of-the-fund method, Class Counsel's interests will be directly aligned with the interests of the class: seeking the maximum possible refund. This factor weighs strongly in favor of fee approval.

### 6. There is No Opposition to the Requested Fee Award.

Following the Court's order granting preliminary approval, the Settlement Administrator mailed the Court-approved Class Notices to the Settlement Class Members

who are former customers of Frontier on January 8, 2013.  (Declaration of Lacey Racines ¶ 11.)  Between January 8, 2013, and February 7, 2013, Frontier provided notice of the proposed settlement in this case to its existing customers in Minnesota by sending notice to its customers.  (Declaration of Cassandra Guinness ¶ 3.)  For Frontier Minnesota customers that receive a paper bill copy by mail, the notice was included in the bill mailed to the customer.  (*Id.*)  For Frontier Minnesota customers that receive an electronic bill, the notice was included in an email sent to the customer's email address associated with the electronic bill.  (*Id.*)  Ony six Settlement Class Members have requested to be excluded from the settlement and no one objected.  (Racines Decl. ¶¶ 16-17, Ex. G.)

The fee arrangement was disclosed in this Notice, was accessible through the records contained on the settlement website, was included in the publication notice in the Star Tribune, and was accessible through the phone line the Settlement Administrator established to answer questions about the settlement.  The complete absence of any objection to the settlement strongly supports approving the requested attorneys' fee.  *See In re Xcel Energy*, 364 F. Supp. 2d at 996 ("The court considers both the number and quality of objections when determining how a class has reacted to an attorney fee request.") (citing *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (the lack of objections is "strong evidence of the propriety and acceptability" of fee request) and *In re SmithKline Beckman Corp. Sec. Litig.,* 751 F.Supp. 525, 533 (E.D. Pa. 1990) (considering the absence of serious objection to counsel's fee request)).

### 7. The Requested Fees are Comparable to Fees Awarded in Similar Cases.

Class Counsel's requested fees of 33% are reasonable. "In this Circuit, courts have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington*, 697 F. Supp. 2d at 1064-1065 (internal citations and quotations omitted) (collecting cases and granting award of 33% of a $16,500,000 settlement fund); *Jensen*, 2011 WL 6178845 at *2 (Frank, J.) (awarding one-third fee award). In *Jensen*, this Court noted that a "one-third contingent fee is a fair and reasonable fee considering the complexity of the issues and the substantial efforts of Settlement Class Counsel in this matter, and considering the significant benefits the Settlement affords to the Class[.]" And such an award comports with others Nichols Kaster has received in this District. *See, e.g.*, *Burch v. Qwest Comm. Int'l*, No. 06-CV-3523 (D. Minn. Sept. 14, 2012) (Davis, CJ.) (awarding Nichols Kaster a fee of 33% of the common fund, and inclusive of costs, 44.8% of the common fund of $4.7 million).

Here, Class Counsel's request award in this class action falls directly in line with fees awarded in similar cases and Counsel does not seek an additional award of costs; the same percentage award as in *Jensen* is therefore reasonable and warranted. Moreover, this case does not constitute a "megafund." And, even if it did, courts in this District have still awarded fees up to 25%. *E.g.*, *In re Xcel Energy*, 364 F. Supp. 2d at 993-94 (25% of an $80 million fund). The amount at stake is smaller is this case; Class Counsel estimates the maximum refund to be approximately $9,000,000. (Helland Decl. at ¶ 7.) This total potential recovery is between that available in *Jensen* ($3 million) and

*Yarrington* ($80 million), but is much closer to that obtained in *Jensen.* Given the additional uncertainty in this case, as well as Class Counsel's ongoing commitment to expend time and money to continue to pursue the refund, this case warrants the same fee award given in *Jensen*. And because it is far from a megafund, it deserves a greater reward than that in *In re Xcel Energy*. Thirty-three percent is the appropriate award in light of the factors explained above and similar cases in this District.

###   B.  Class Counsel's Request for Attorneys' Fees is Also Reasonable Under the Lodestar Cross-Check.

The Eighth Circuit has held that the lodestar approach is "***sometimes*** warranted to double check the results of the percentage of the fund method." *Petrovic*, 200 F.3d at 1157 (emphasis added). A lodestar cross-check is not warranted here. First, the unique nature of this case—where parties must apply to the Minnesota Department of Revenue for a refund of taxes collected by a third party, where Class Counsel's work is not yet complete, and where Class Counsel is sure to expend additional money in order to secure the refund—renders the cross-check inappropriate because the work is not yet complete. Class Counsel's current lodestar does not accurately represent the work Class Counsel's will ultimately have done on this case. But even if did, there is also no ascertainable amount for the Escrow Fund from which a 33% award can be determined so as to perform an actual cross-check. While the *requested* refund is approximately $9,000,000, there is no guarantee that the full requested amount will be approved. Through agreement or otherwise, that amount may be reduced. Indeed, the prospect for a less than complete refund being awarded is specifically acknowledged in the Settlement

Agreement.  (ECF No. 88 § 8.3.2.)  While the prospect of a full recovery exists, it is uncertain.  Second, in light of the arbitration provision in Plaintiffs' contracts and this Court's ruling that it compels individual arbitration as to the remaining claims Plaintiffs have asserted against Frontier, reaching a class-wide settlement prior to hearing on the motion to compel arbitration was invaluable to the Class.  To then evaluate the fee award by analyzing the hours expended is inappropriate as any further time spent on litigation— that is, the work that generates the lodestar—could have been immensely detrimental to the Class.

All that said, the requested amount is reasonable in light of the limited cross-check that can be done given the attendant circumstances here.  At the outset, such an analysis is done only as a cross-check, and "need entail neither mathematical precision nor bean counting but instead is determined by considering the unique circumstances of each case."  *In re Xcel*, 364 F. Supp. 2d at 999.  As part of the cross-check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.  *Petrovic*, 200 F.3d at 1157.  The lodestar may then be increased by a multiplier, which "need not fall within any pre-defined range, as long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases."  *In re Xcel*, 364 F. Supp. 2d 999 (finding a multiplier of 4.7 reasonable) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 n.17 (3rd Cir. 2005)); s*ee, e.g.*, *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (retired Judge Rosenbaum found "a multiplier of nearly 6.5 . . . appropriate under *Grunin*.").

Here, applying the lodestar cross-check as accurately as possible confirms that Class Counsel's requested fee is reasonable.  Class Counsel devoted over 1,364 hours, resulting in a lodestar value of approximately $407,000 and costs of approximately $17,000 in total costs.[3]  (Helland Decl. ¶ 5.)  Applied to the maximum potential recovery of $9,000,000, the largest multiplier that could be applied is 7.  Again, it is important to remember that more work lies ahead for Class Counsel.  Given that, and given precedent in this District for awarding fees based on a multiplier of up to 6.5, Counsel's request is reasonable.  For all the reasons detailed above, the anticipated actual lodestar in order to achieve a recovery, and the possibility of achieving a total refund of less than the maximum, could work together to substantially reduce the actual multiplier.  This fact, when considered with the risk of this litigation, its complexity, and the benefits obtained for the Settlement Class in such a recovery, warrants approval of Class Counsel's request.[4]

---

[3] Class Counsel has removed from the lodestar all time that relates solely to the non-tax claims asserted in this action.  However, the lodestar valuation does contain some work that pertains to both the settled tax claims and the remaining claims.  *See Ryther v. KARE 11*, 864 F. Supp. 1525, 1532 (D. Minn. 1994) (noting claims that "share common facts and involve related legal theories, the fee award cannot be mechanically based on the success and failure of those claims.")  Here, the claims were inextricably intertwined until the hearing on Defendant's Motion to Dismiss.  The work expended up to that point was focused on litigating the case as a whole, not the now separate claims.  This fact further supports the granting of a percentage-of-the-fund rather than conducting a lodestar analysis.

[4] If the Court is concerned about the multiplier being too high, Class Counsel respectfully requests that the Court either impose a multiplier cap on Counsel's fees, defer ruling on the motion until the amount of the refund is known, or impose a tiered fee structure, such that Class Counsel would receive a fixed percentage of any recovery up to a specific baseline refund amount, with declining percentages for amounts in excess of the baseline.

## II.      THE REQUESTED INCENTIVE PAYMENTS ARE REASONABLE.

As this District has noted, "[s]mall incentive awards, which serve as premiums to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Yarrington*, 697 F. Supp. 2d at 1068 (awarding $5,000 incentive payment to each named plaintiff).

Here, under the terms of the parties' Settlement Agreement, in addition to their individualized *pro rata* distributions from the settlement fund, Named Plaintiff Rasschaert may apply to receive an additional award of $2,500 in recognition of his service as Class Representative, and all other Named Plaintiffs may apply for $1,500 incentive payments.   (ECF No. 88 § 12.)   They are so applying through the instant motion.   These amounts are small, as compared to other enhancements which have been approved in this District.   *See Yarrington*, 697 F. Supp. 2d at 1068 (noting incentive awards ranging from $5,000 to $15,000).   Notably, neither Settlement Class Members— who were informed of the recognition awards through the Court-approved notice—nor Frontier – objects to these awards.   (Helland Decl. at ¶ 8.)

Most importantly, the Named Plaintiffs have conferred a substantial benefit on the Settlement Class by initiating the instant lawsuit, without which this settlement would not exist.   The Named Plaintiffs also provided valuable guidance and insight to Class Counsel as Counsel prepared and executed their investigation of claims and case strategy requests.   (Helland Decl. ¶ 9.)   Plaintiff Rasschaert has been especially involved in the litigation, having spoken with Class Counsel on dozens of occasions and having spearheaded the tax claims from the outset.   *Id.*   His critical role in initiating and helping

to monitor the litigation on behalf of all the Named Plaintiffs therefore warrants a larger individual enhancement.  In light of their efforts in reaching an excellent settlement for the Class and the modest amount they are seeking, *see Yarrington*, 697 F. Supp. 2d at 1068, the Court should grant the request for Named Plaintiffs to receive incentive awards of $2,500 and $1,500, respectively.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Class Counsel's Motion for Attorneys' Fees, Costs, and Plaintiff Incentive Payments, and enter an Order awarding Class Counsel one-third of the total refund amount achieved in fees and costs and awarding incentive payments for Named Plaintiff Rasschaert in the amount of $2,500 and $1,500 to the other Named Plaintiffs.


Dated:  April 5, 2013                         **NICHOLS KASTER, LLP**

                                              s/Matthew C. Helland
                                              Matthew C. Helland (#346214)
                                              One Embarcadero Center
                                              Suite 720
                                              San Francisco, CA 94111
                                              Telephone: 415.277.7238

                                              NICHOLS KASTER, PLLP
                                              E. Michelle Drake (#0387366)
                                              Rebekah L. Bailey (#0389599)
                                              Anna P. Prakash (#0351362)
                                              4600 IDS Center
                                              80 South 8th Street
                                              Minneapolis, MN  55402
                                              Telephone:  612.256.3200

                                              ATTORNEYS FOR PLAINTIFFS